UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **BARBARA ANTONUCCI,**<br>**Plaintiff,**<br><br>**v.**<br>**CHERRY HILL MANOR, et al.,**<br>**Defendants.** | **C.A. No. 03-481 ML** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL MORE RESPONSIVE DOCUMENT PRODUCTION**

## I. INTRODUCTION.

In October 2004, after nearly eighteen years of employment, Plaintiff Barbara Antonucci ("Plaintiff"), was fired from her job as staffing coordinator at Cherry Hill Manor. At the time, a new, younger Director of Nurses, Pamela Charron ("Charron"), had recently become her immediate supervisor. Shortly after Charron arrived, Plaintiff found herself out of a job at the age of sixty-three years old. She was accused of poor job performance. She was then replaced by a younger person, whom she trained, and who continued to perform the job consistent with that training. Among other things, even though Plaintiff's replacement performs the job in the same manner as Antonucci did, she has not been disciplined for any of the things Antonucci was disciplined for. In addition, the "new" job description Antonucci was required to follow was never given to her replacement. This lawsuit followed.

In October 2006, Plaintiff served her First Request for Production of Documents to Defendant. Defendant did not respond until about December 10, 2006. See Exhibit #1, *Defendant's Response to Plaintiff's First Request for Documents*. On or about January 15, 2007, Plaintiff began Rule 37 discussions with Defense counsel in an attempt to obtain further documents and a supplemental document response. This attempt, for the large part, has been unsuccessful.[1]

## II. Discussion

### *A. Documents That Are Still Needed*

***RESPONSE NO. 7:*** This request asks for documents that relate to Defendant's attempts to prevent and alleviate employment discrimination in the workplace. In response, Defendant has objected arguing that Plaintiff has not shown any "particularized need," and produced an employee handbook. All Plaintiff is asking at this point is if there are any documents evidencing any efforts to prevent age discrimination at Cherry Hill

---

[1]As noted above, Plaintiff sent Defendant a detailed rule 37 letter on January 15, setting forth specifically, what responses should be supplemented. Although Defendant has been given the opportunity, it has never indicated one way or the other, which additional categories of documents it intends to produce. The only exception is that during the week of February 12, Defendant indicated that it would supplement in response to Request #19 with a termination report.

Thus, Plaintiff has no way of knowing which particular documents will be produced and when. Discovery closure date is April 6, 2007. Plaintiff has conducted two depositions without these documents and has approximately three more to conduct. The lack of documents puts Plaintiff in a difficult position in terms of completing depositions.

Manor, during the time period of 2001 to 2006, that they be produced. If there are none, Plaintiff requests that be indicated in a supplemental response.

***RESPONSE NO. 6:*** This request asks for documents relating to Plaintiff in the possession of her former supervisors. Defendant responded only with respect to the Charron. One other previous supervisor, a former Director of Nurses named Celeste Harris is still employed by Defendant. In addition, this is someone that gave Plaintiff a written warning. Plaintiff is requesting that Defendant produce any documents that Ms. Harris might have relating to Plaintiff.

***RESPONSE NO. 8:*** This request asked for any documents relating to any investigation conducted relating to Plaintiff. Defendant has referred Plaintiff to its response to Request #2. Request #2 relates to Human Rights Commission documents. Plaintiff is asked for Defendant to indicate if there are any responsive documents (outside of any HRC-related potentially-privileged investigation). In addition, if there are any privileged documents, Defendant should produce a privilege log.

***RESPONSE NO. 13:*** This request called for the personnel file of Plaintiff's replacement, Donna Sweeting. Some documents were produced, and should be incorporated into a supplemental response. However, there was no 2006 evaluation of Ms. Sweeting in the file. According to Ms. Sweeting's deposition testimony, this document exists. Plaintiff is requesting that the document be produced. In addition, there were a number of blank pages within her personnel file, and Defendant has not answered whether that was intentional or not. If it was, Plaintiff requests a log be produced.

***__RESPONSE NO. 14__:*** This request calls for documents evidencing other complaints of age-discrimination. Plaintiff is asking for those documents from Cherry Hill Manor from 2000 to the present. In an age-discrimination case, it is obviously relevant if other employees had similar problems. For example, it could bolster Plaintiff's credibility and could be relevant to a punitive damages inquiry. Defendant has refused to produce these documents.

***__RESPONSE NO. 15:__*** Plaintiff was fired for alleged poor job performance in her capacity as staffing scheduler at Cherry Hill Manor. One of the things she did in her job was prepare monthly and daily schedules for nurses and other licensed personnel. Defendant claims Plaintiff was not preparing schedules properly and gave away too much bonus dollars (money paid to nurses to work extra shifts). As such, Plaintiff requested schedules, calendars, etc., that relate to work performed by Plaintiff from 2000 to the time she was fired, October 4, 2004.

Defendant produced Plaintiff's daily schedules from December 2003 to October 2004. None of Plaintiff's daily schedules were produced from January 2003 to November 2003. Having an entire year to compare with the year 2004 (the year Ms. Antonucci was terminated) is important to comparing Plaintiff's performance at the same time of year (where staffing patterns might be similar).

Defendant produced Plaintiff's monthly schedules for all of 2003, and most of 2004. However, no monthly schedules were produced for October 2004 and November 2004, even though two witnesses have testified that Plaintiff prepared these schedules and

these schedules would be critical to examine her performance at the time she was fired. In addition, no other documents evidencing her work were produced. If there are none, Defendant should indicate that. In addition, Defendant should incorporate, by Bates-stamp, any documents produced to date that are responsive to this request.

***RESPONSE NO. 16:***

This request calls for documents relied upon in preparing the position paper to the Commission. For example, if Defendant relied upon Plaintiff's two-week action plan, or December 2003 written warning, those documents would be identified and/or produced. Defendant has objected, based on privilege, and refused to respond. To the extent Defendant relied on non-privileged documents, they should be produced. If they have been produced, they should be identified.

***RESPONSE #29:***

This request calls for bonus documents. Bonus documents show the amount of bonuses, among other things, given out to personnel picking up extra shifts. Giving out an excessive amount of bonus dollars is one of the things that Defendant alleges contributed to Plaintiff's termination.

Plaintiff asked for bonus documents covering the period January 2003 to October 2005. This would give Plaintiff an opportunity to compare bonuses given during the same time periods, both during 2003 (when she was not disciplined), in 2004 (when she was disciplined, and 2005 (when bonuses were given by her replacement). Defendant produced documents only during the period March 2004 to December 2004. In addition,

although there are some e-mails from the months of October to December 2004, the attachments referenced (excel spreadsheets) were not included so Plaintiff cannot determine the actual bonuses given. In addition, no bonus documents were provided for the year 2005, to demonstrate what was given by her replacement. A bonus sheet for October 10, 2004 is also missing.

***REQUEST NO. 30:***

This request asks for monthly schedules from January 2004 to October 2005. Monthly schedules prepared from January 2004 to November 2004 (those prepared by Plaintiff) are referred to above in the discussion. No schedules have been produced which were drafted by Plaintiff's replacement. Sweeting testified that she destroyed at least some of her monthly schedules. It is unclear if she has made a meaningful search for any others. Defendant has an obligation to search for her schedules and produce any that exist during the relevant time period.

***REQUEST NO. 31:***

The only written document that Plaintiff received regarding her job performance from the DON that fired her was a two-week action plan. She was then fired about one month later. Before the two-week action plan, Plaintiff never was given any other written document pertaining to her job performance by Charron. Plaintiff requests any other two-week action plans given to other employees to compare her the level of discipline for the alleged offenses with the offenses committed by similarly-situated persons. Obviously,

the absence of any two-week action plans would be relevant as well. Defendant has refused to produce these documents.

***REQUEST NO. 32:***

Defendant has asserted that the staffing was particularly bad on the weekend of October 2 and 3rd, 2004, and that this led to Plaintiff's termination on Monday, October 4, 2004. Request #32 asks for the weekend schedule. Defendant turned over the daily sheets for this weekend, but no monthly schedule covering this time period. In addition, Defendant should identify the particular document it refers to, instead of referring to the Response #15, which includes many documents. This same identification problem exists with respect to Response #33.

***RESPONSE NO. 34:***

This request asks for nursing staff lists from January 2004 to January 2005. Staff lists are important for several reasons. In order to determine how difficult (or easy) staffing the facility would be, one needs to know who was on the list of potential workers. It is not enough to see who was actually assigned to the shift. For example, in a recent deposition, Ms. Antonucci's replacement indicated that there are far fewer staff members today (which makes her job more difficult) than there were when Ms. Antonucci did staffing (which made her job easier). Yet, Defendant has refused to provide these lists.

***RESPONSE NO. 35:***

Before Ms. Antonucci was fired, the DON sent her to another Life Care facility to watch that staffing coordinator perform her job. Presumably, the DON believed that the

person who "trained" Ms. Antonucci, Ms. Rebecca Santin, performed her job well. Accordingly, Plaintiff asked for staffing schedules and bonus documents from January 1, 2004 to October 2005, from the sister facility. These documents were not produced.

***RESPONSE NO. 36:***

This request asks for Ms. Santin's personnel file, the person who "trained" Ms. Antonucci before she was fired. The file was ultimately produced, but there was no 2006 evaluation. In addition, the response needs to be supplemented to incorporate the documents produced.

***B. Problems that Could be Corrected by the Supplemental Pleading (and Not Documents)***

***RESPONSE NO. 23:***

This request asks for copies of any policies that Plaintiff violated. Defendant has produced the entire Life Care handbook. Plaintiff is entitled to know, which policies, if any, contained in the handbook, Defendant contends she violated.

***RESPONSE NO. 27:***

In the position paper, the Defendant indicated that Plaintiff's poor job performance was evident by her work on scheduling documents. Plaintiff is asking for the specific schedules that were evidently poor as referenced in the position paper. Defendant has referred Plaintiff to all the schedules produced which cover a time period of January 2003-September 2004. Plaintiff is asking Defendant to identify which schedules it is referring to.

***RESPONSE NO. 1:***

This request called for all documents relating to Plaintiff's employment. Defendant responded by indicating it would produce Plaintiff's personnel file, and it has done so. Plaintiff is asking that if there are any other documents that relate to Plaintiff's employment, they should be produced. If they have been produced in response to other requests, then they should be referenced by Bates-stamp number.

***RESPONSE NO. 2:***

This request asked for documents relating to the charges filed at the Human Rights Commission. Defendants indicated it would produce such documents, and in fact, has produced some documents. However, because of the response (which indicates they are forthcoming) it is unclear if there are others which should be turned over. This problem could be resolved if Defendants identify which documents it has produced in response to this request. The same problem exists for ***RESPONSE NO. 3***. Request # 3 asks for documents reflecting oral and written communications relating to Plaintiff's allegations. Again, Defendant has indicated that it "will produce documents it is able to locate." After this response, some documents were produced. Again, because they have not been identified, it is unclear what documents are responsive to this request. This could be cured by simply providing a supplemental pleading identifying the responsive documents.

***RESPONSE NO. 5:***

Plaintiff has a problem when Defendant responds by stating that "Defendant refers Plaintiff to its objections and responses to Plaintiff's request for documents." This does

not give Plaintiff any idea what documents, if any, Defendant is providing in response to the request. Plaintiff is asking that Defendant identify, by whatever method is reasonable (i.e., Bates-stamp number), what documents it is referring to. This same problem exists in response to **Requests #4, #9, #10, #11, #18, #25, #26, and #28.**

**III. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to compel Defendants to provide more a supplemental response to Plaintiff's First Request for Documents, as detailed in this memorandum.

Plaintiff,
By her attorneys,

/s/ Carly Beauvais Iafrate

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, Rhode Island 02903
(401) 421-0966
(401) 421-0964 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 21st day of February 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Christopher J. Campbell, Esq.
campbelc@jacksonlewis.com

/s/ Carly Beauvais Iafrate
______________________________