UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BARBARA ANTONUCCI, Plaintiff, | |
| v. | |
| LIFE CARE CENTERS OF AMERICA, INC., PAMELA CHARRON, in her personal and official capacity, and STEVE HAASE, in his personal and official capacity, Defendants. | C.A. No. 06-108-ML |

**DEFENDANT, LIFE CARE CENTER'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL MORE RESPONSIVE DOCUMENT PRODUCTION**

## I. Introduction and Summary Of Case

Defendant, Life Care Centers of America, Inc. ("Defendant") submits the following opposition to Plaintiff's Motion To Compel More Responsive Document Production. This case is a straight-forward discharge claim in which a Scheduler for a nursing home was discharged after being repeatedly warned by Defendant Pamela Charron that the manner in which she was performing her job was not acceptable and needed to change. For two months, Plaintiff clashed with Ms. Charron – debating what parts of the scheduling work Plaintiff would agree to do, or how many times Plaintiff would call staff to pick up open shifts. Plaintiff also had similar clashes with the prior Director of Nurses and with Ms. Charron's clinical supervisor. Prior to her discharge, Plaintiff was explicitly warned that if she continued to refuse directives from the Director of Nursing or otherwise failed to improve her performance, that she would be

discharged. Plaintiff was ultimately discharged after a final incident involving Plaintiff's work on a weekend schedule (October 2-3, 2004), and Plaintiff was discharged on October 4, 2004.

Despite the clear series of events that precipitated Plaintiff's discharge, Plaintiff has sought voluminous documents about the relative performance of Ms. Charron, and about other Schedulers who worked under Ms. Charron's supervision at other facilities. Plaintiff also seeks all written documentation similar to the disciplinary documentation provided to Plaintiff. Defendant does not catalogue disciplinary warnings and, short of looking in every current and former employee's file, Defendant cannot reasonably and without undue burden comply with this request. Plaintiff also seeks to have Defendant's counsel classify the thousands of responsive documents according to vague, conclusory and/or self-serving categories.

As set forth below, Defendant has attempted to accommodate Plaintiff's requests for additional voluminous documents and has proposed additional compromises. Prior to any hearing on this motion, Defendant will confer with Plaintiff and provide the Court with an update as to the status of any discovery disputes.

## II. <u>Discovery Between The Parties To Date</u>

Following the Scheduling Conference in this case, Defendant provided Plaintiff with *thousands* of documents in response to discovery requests – requiring extensive searches through boxes of documents long-archived by Defendant. Moreover, Defendant has repeatedly expressed and demonstrated a willingness to discuss providing further documents to Plaintiff. Defendant's cooperative approach with Plaintiff has been productive. For example, regarding interrogatory responses, Plaintiff requested that Defendant provide further responsive information to approximately 18 of the 22 interrogatories originally served on Defendant. Through discussions with Plaintiff, the parties were able to narrow the areas of disagreement to just two

interrogatories – which are the subject of a separate motion to compel. Defendant provided the additional interrogatory responses reflecting the agreement reached between counsel in a letter dated January 25, 2007. Defendant subsequently included this information in Supplemental Responses to Interrogatories.

Similar to its efforts to resolve or narrow the areas of dispute regarding interrogatories, after receiving a request from Plaintiff to provide additional responsive documents and/or further responses to approximately 20 different requests, Defendant sought to discuss the areas noted by Plaintiff, but Plaintiff declined – instead requiring that Defendant respond in writing. While Defendant was in the process of preparing a written response, Plaintiff served the instant motion to compel.

Prior to filing the instant opposition, Defendant completed its written response in a letter faxed to Plaintiff on March 7, 2007, and provided additional documents responsive to many of Plaintiff's requests for production by overnight mail. In addition, Defendant's March 7, 2007 letter proposed reasonable compromises as to certain of Plaintiff's request for production. Defendant then contacted Plaintiff to determine whether any areas of disagreement remained regarding documents, but Plaintiff was unavailable to discuss the matter prior to the deadline for filing this opposition. Defendant then requested that Plaintiff assent to a brief extension of the deadline for Defendant to file an opposition – to enable the parties sufficient time to determine whether any areas of disagreement remained – but Plaintiff was unwilling to assent to the request. Accordingly, Defendant has prepared the following opposition, addressing each of requests contained in Plaintiff's motion to compel.

**III. Defendant's Responses To Plaintiff's Specific Requests For Production**

**Request No. 7**

Plaintiff characterized her Request No. 7 as an attempt to seek documents "evidencing any efforts to prevent age discrimination at Cherry Hill Manor, during the time period of 2001 to 2006." While the original request was dramatically broader in scope, Plaintiff's request continues to be improper to the extent it seeks Defendant's counsel's opinion as to possible responsive documents. For instance, the payroll documents for the numerous employees *older* than Plaintiff could certainly be responsive to Plaintiff's request, because they evince a workplace that does *not* take action against employees on the basis of age. Defendant has already provided an employee handbook, and Defendant maintains a third-party 800 reporting line for employee complaints. While Defendant continues to object to this request as vague and ambiguous and open to interpretation, Defendant confirms that it does not possess any further responsive documents, such as training materials or the like relating to efforts to prevent age discrimination.

**Request No. 6**

Plaintiff requests documents in the possession of Celeste Harris, the former Director of Nursing, with whom Plaintiff clashed. Defendant has not located any additional documents regarding Plaintiff in the possession of Ms. Harris.

**Request No. 8**

Plaintiff has requested documents pertaining to Defendant's investigation of the Plaintiff's allegations of unlawful discrimination. Significantly, Plaintiff never complained regarding age discrimination at any point during her employment, so no "investigation" was undertaken at the time. Several months after her employment was terminated, Plaintiff filed an

administrative charge of discrimination with the Rhode Island Commission for Human Rights ("RICHR"). Defendant's in-house counsel prepared a written response on behalf of Life Care. In preparation for Defendant's response to the RICHR, in-house counsel compiled certain materials, including a statement from Ms. Charron, a list of employees terminated in 2004, an employee list, and an analysis of the bonus amounts paid to employees in 2004.

The materials prepared by Defendant's in-house counsel constitute privileged work-product, because the analysis was undertaken for the express purpose of mounting a legal defense to a charge of unlawful discrimination. Moreover, Plaintiff has been provided with or has access to the same underlying data as Defendant's in-house counsel, and can perform whatever analysis she deems appropriate. For instance, Plaintiff has been provided with the bonus sheets for 2004 and 2005, which were used by Cherry Hill Manor to report extra-shift bonus payments to employees. Using this data, Plaintiff may conduct an analysis of the bonus amounts paid, and she should not be allowed to have access to Defendant's analysis – performed after the discharge decision by a non-decision maker, in response to litigation.

Similarly, the statement collected from Ms. Charron was also was gathered in preparation for Defendant's defense and is therefore privileged. Ms. Charron is available for deposition, and Plaintiff can obtain information from Ms. Charron herself, rather than have access to the privileged statement prepared for Defendant's in-house counsel.

As to the list of employees terminated in 2004, this document was also prepared at the time in-house counsel was preparing a response, and contains information such as employee

names, birthdates, and any termination code entered at the time of the particular employee's separation from Defendant.[1]

The data for the list was gathered using an ADP payroll data system no longer in use. At the time, the employee information could be accessed by computer, including the code recorded by Cherry Hill Manor as to the reason for an employee discharge. The data used for this report is no longer available electronically, because it was overwritten. Because the underlying data is not available, Defendant has produced a copy of the 2004 list (Bates Nos. DEF 02053-2054).

Electronic data for 2005 and 2006 is available, and Defendant has produced a list of employees terminated in 2005 and 2006, together with the termination codes entered in Defendant's computer records (Bates Nos. 02055-2060). For the time period 2001 – 2003, Defendant has produced redacted year-end payroll reports showing individuals who were terminated, together with their ages. (Bates Nos. DEF 01636-1939). These records enable Plaintiff to perform whatever age-based analysis she determines is appropriate.

Defendant does not possess electronic records for 2001-2003 that would provide the termination codes for these employees, and Defendant is unable to reconstruct the information short of examining hundreds of archived employee personnel files. This task would be unduly burdensome. In addition, the information is of no probative value to Plaintiff. Ms. Charron did not begin employment at Cherry Hill Manor until well into 2004. Decisions made by other managerial employees – in 2001 until 2003 – as to former employees could not possibly shed

[1] These codes correspond to a wide range of categories, including no-call/no-show, voluntary resignation for better pay, excessive absenteeism, etc. A list of the codes has been provided to Plaintiff.

light on whether Ms. Charron discharged Plaintiff for her conduct, or because she is over the age of 40.

**Request No. 13**

Defendant has located the 2006 evaluation for Donna Sweeting, which appears not to have been in the file at the time that it was originally copied for production. The evaluation has been produced pursuant to the Stipulation and Order of Confidentiality (Bates Nos. 02202-2205). Defendant also confirms there were no documents redacted or withheld from the original production.

**Request No. 14**

Plaintiff has requested documents pertaining to other claims of age discrimination from 2001 to present. Plaintiff's counsel represents the only other employee who commenced an age discrimination case against Defendant during this time period. This case is Irene Ferruccio v. Cherry Hill Manor, RI Dist. Ct. No. 06-cv-422, and it is currently pending before Judge Smith. Pursuant to the Stipulation and Order of Confidentiality, Defendant has produced documents pertaining to an anonymous claim in 2005 that the housekeeping director was engaging in age-based harassment. (Bates Nos. DEF 02264-02269). Defendant confirms that no other claims were received at Cherry Hill Manor, other than as set forth in the original response.

**Request No. 15**

Plaintiff has requested monthly staffing schedules and daily schedules from January 2003 until December 2005. Defendant has already produced responsive documents from January 2004 through December 2005, amounting to over 700 pages of material. While Defendant continues to view Plaintiff's requests for the remaining schedules as unduly burdensome and irrelevant, in

an effort to resolve the dispute, Defendant has agreed to produce daily staffing schedules from January 2003 until November 2003.

Defendant has also produced monthly staffing schedules from 2003 through fall 2004 when Plaintiff was discharged (Bates Nos. DEF 01167- DEF01484). Defendant confirms that it is not in possession of any monthly schedules following Plaintiff's discharge, because monthly schedules were not retained by Ms. Sweeting, Defendant's subsequent Scheduler, in the course of performing her duties. Ms. Sweeting has searched for any such documents, and has not located any.

**Request No. 16**

Plaintiff has requested documents supporting the instances of poor performance noted in Defendant's position statement. The documents reflecting Plaintiff's unsatisfactory performance that Defendant has been able to locate have been produced. These documents include the 10/24/04[2] Counseling (Bates No. DEF00174); the 08/23/04 Written Warning (Bates Nos. DEF00032 - DEF00036); the 10/04/04 Termination form (Bates Nos. DEF00171 – DEF00172); the 12/08/03 Written Warning (Bates Nos. DEF00030 – DEF00031), the 03/04/04 Evaluation (Bates Nos. DEF00037 – DEF00041). Other documents provided by Defendant may also bear a tangential relationship to Plaintiff's performance. For instance, Defendant provided information on bonus payments made to licensed staff during 2004 (Bates Nos. DEF01554 – DEF01635).

**Request No. 29**

Plaintiff has requested documents pertaining to bonus payments for a full three year period. As indicated above, Defendant has provided the bonus information for 2004 it has been

---

[2] This document appears to be misdated, and is believed to correspond to September 24, 2004.

able to locate (Bates Nos. DEF01554-DEF01635). In addition, Defendant confirms that it has no additional weekly bonus sheet from October 10, 2004, and believes that no extra shift bonus was provided that week.

As to 2005, Defendant has produced the weekly bonus sheets it has been able to locate after conducting a reasonable search (Bates Nos. DEF 02207-02263). As to the Excel spreadsheets shown on the e-mails, these e-mails were retrieved by searching backup tapes. Despite Defendant's efforts, the backup tapes do not allow Defendant to access the attached documents. Nonetheless, the information on the amounts of bonus dollars paid has already been provided to Plaintiff.

Defendant objects to production of the requested information for 2003. First, Ms. Charron did not begin working as the Director of Nursing at Cherry Hill Manor until July 2004 – obviating any possible relevance of bonus amounts paid in 2003. In addition, Deposition testimony in this case indicates that, prior to March 2004, Cherry Hill Manor used staffing agencies to assist in staffing the facility. Although there may have been bonuses paid during this period, the amounts would have been necessarily affected by the use of agency staff. Given the material difference in bonus dollars during a period when the facility used agency staff and given that Ms. Charron was not employed at the time, Defendant should not have to waste numerous staff hours by current Cherry Hill Manor employees to indulge Plaintiff's fishing expedition.

**Request No. 30**

Plaintiff has requested monthly schedules following Plaintiff's employment. Monthly schedules were not retained by Defendant's subsequent Scheduler, Donna Sweeting. Ms. Sweeting has searched for any responsive documents, and has not located any.

**Request No. 31**

Plaintiff's has asked for disciplinary documentation similar to the documentation provided by Ms. Charron. On August 23, 2004, Ms. Charron met with Plaintiff and the Executive Director of Cherry Hill Manor, Defendant Steve Haase. The meeting was precipitated by Plaintiff's refusal, on August 19, 2007, to update the monthly nursing schedule with the hours of new hires and terminated employees. Based, in part, on Plaintiff's statements that certain tasks were not part of her job, Ms. Charron put together a detailed job description, explicitly listing the areas of responsibility of the Scheduler position. Ms. Charron also instructed Plaintiff as to her immediate expectations that Plaintiff would not ignore work-related requests in the future. Ms. Charron also changed Plaintiff's work hours, and gave Plaintiff two weeks notice of the change.

While Plaintiff has asked for similar disciplinary documentation as to other employees, Defendant does not keep any records as to particular discipline provided to employees. For instance, there is no list of "Two-Week Action Plans," as Plaintiff styles her August 23, 2004 warning. Providing the documentation requested would literally require searching through each employee's individual employment file to locate written warnings. In addition, it would require Defendant's counsel to make substantive determinations as to what discipline is comparable to the disciplinary action taken against Plaintiff. Accordingly, Plaintiff's request is improper, and presents an undue burden on Defendant.

**Request No. 32**

Defendant has requested documents showing the performance issues for October 2 and 3, 2004. Defendant refers Plaintiff to the exhibits marked at her deposition, one of which includes the daily sheets from October 2 and 3, 2004, Bates Nos. DEF 01069-01070.

**Request No. 34**

Plaintiff has requested staffing lists from 2004 and 2005 – purportedly to determine the relative difficulty of Plaintiff's position as a Scheduler at various times during Plaintiff's employment. The staffing lists used by Plaintiff and her successor were periodically updated to account for changes in personnel. Outdated versions of this list were overwritten by Defendant's payroll clerk, and were not retained by Defendant.

**Request No. 35**

Plaintiff requested daily and monthly schedules from the Raynham facility where Plaintiff was sent by Ms. Charron for training with another Scheduler, Rebecca Santin, after the August 23, 2004 warning. As noted above, Defendant has already produced hundreds of daily schedules prepared by Plaintiff. Nonetheless, Plaintiff now requests that Defendant provide hundreds of additional archived schedules prepared by another employee – purportedly to perform her own independent assessment of the other Scheduler's work performance and/or of Ms. Charron's business judgment in sending Plaintiff to train with Ms. Santin.

Plaintiff's subjective assessment of another employee's performance, however, has even less relevance than her conclusory statements as to her own allegedly satisfactory performance. The focus in a discrimination suit is on the decision-maker, and whether the decision-maker was motivated by unlawful animus. Plaintiff's attempt to turn the case into a comparison of Plaintiff's performance to another employee at another facility is simply misplaced. Nonetheless, in an effort to reach agreement on this matter, Defendant has proposed production of three or four representative months of archived daily schedules, as chosen by Plaintiff.

Similarly, Plaintiff has requested a record of the bonus dollars paid at the Raynham facility where Plaintiff was sent for training. These documents are not relevant because bonus

dollars are, in large part, particular to each facility, and are dependent on widely-varying factors such as staff availability and the individual staffing patterns particular to the facility over the course of time. Moreover, Plaintiff's "apples to oranges" comparison sheds no light on Plaintiff's discharge, because Plaintiff does not claim that Ms. Charron denied the use of bonus dollars in filling the staffing schedule. Rather, Ms. Charron was concerned that Plaintiff was failing to aggressively recruit employees prior to resorting to offering a bonus. Despite the lack of relevance to the records requested, Defendant has proposed production of three or four representative months of archived daily schedules, as chosen by Plaintiff, in an effort to obviate the dispute.

**Request No. 36**

Plaintiff has requested performance-related documents relating to the Raynham Scheduler, Ms. Santin, and Defendant has produced Ms. Santin's personnel file. Defendant has not been able to locate any 2006 evaluation for Ms. Santin.

## IV. Defendant's Responses To Plaintiff's Requests For "Clarification"

Plaintiff's remaining requests do not actually seek documents. Rather, Plaintiff seeks to compel Defendant's counsel's opinion as to the legal significance of particular documents. according to the vague, ambiguous and self-serving definitions set forth in Plaintiff's requests.[3]

For example, Plaintiff's Request No. 23 requests that Defendant identify "[a]ny policies of Defendant(s) which applied to . . . Plaintiff." All or substantially all of the policies in the handbook applied to Plaintiff. The request also asks for "[a]ny policies of Defendant(s) which relate to this lawsuit." Given that Plaintiff has brought a discrimination lawsuit based on her

employment, all or substantially all policies relate in varying degrees to Plaintiff's lawsuit. Certainly policies regarding Equal Employment Opportunity, complaints to Defendant, and harassment, bear relation to the lawsuit. Similarly, given that Plaintiff was discharged for unsatisfactory work performance, the Discipline and Termination policy and the Discipline Procedure policy bear relation to the lawsuit. In addition, Defendant refers Plaintiff to her termination personnel action form, which details the reasons for Plaintiff's discharge. Defendant also refers Plaintiff to the documents reflecting her unsatisfactory performance, described above, in response to Request No. 16. As indicated in these documents, Defendant has not identified a particular policy that Plaintiff has violated in the December 2003 warning, the August 23, 2004 warning or the [September 24, 2004 warning]. Each of the documents describes, however, Plaintiff's insubordinate and disrespectful workplace demeanor.

Many of Plaintiff's requests for "clarification" relate to broad categories of documents that could literally encompass all of the documents produced to date, as well as innumerable documents located at Defendant's facility in Johnston, Rhode Island and its corporate headquarters in Cleveland, Tennessee. For example, Plaintiff has requested all documents that: (1) relate to Plaintiff's employment" (Request No. 1); or which relate to the charges filed at the Human Rights Commission (Request No. 2). Plaintiff also asks Defendant to identify the documents that relate to Plaintiff's First Amended Complaint, her charge of discrimination, and/or Defendant's Answer (Request No. 3). Defendant should not be required to provide its counsel's views on the relationship of particular documents to the broad categories listed by Plaintiff.

---

[3] In Request No. 27, Plaintiff requests that Defendant identify the weekend schedule which Plaintiff provided to Ms. Charron on October 1, 2004. Defendant refers Plaintiff to the exhibits

Defendant also objects to Plaintiff's request for "clarification" of which documents disprove the allegations in Plaintiff's First Amended Complaint (Request No. 5). The factual allegations in Plaintiff's complaint are conclusory and self-serving statements imputing liability on the part of Defendant. For instance, Plaintiff claims that similarly situated younger employees were treated more favorably (¶¶ 15-16). This allegation does not contain specific factual events or data – and Plaintiff's request for "clarification" is akin to requesting that Defendant "prove a negative." Plaintiff's request is especially absurd, given that Plaintiff, herself, could not identify the allegedly younger employees that fit this description – with the exception of Donna Sweeting, the employee who was offered the Scheduler position after Plaintiff's discharge. Ms. Sweeting's personnel file – which lacks any written warnings for insubordination and disrespectful behavior – has been produced to Plaintiff.

Plaintiff's remaining requests for clarification are similarly vague, conclusory and/or self-serving. Nonetheless, as to documents that relate to the reason Plaintiff was terminated (Request No. 18), Defendant refers Plaintiff to its Response No. 16, above. These documents were also consulted in responding to Plaintiff's interrogatories (Request No. 10). These documents also relate to the instances of Plaintiff's unsatisfactory performance referenced in Request Nos. 25, 26, and 28. These documents also support Defendant's affirmative defense that its actions with regard to Plaintiff were undertaken for legitimate business purposes (Request No. 9). Similarly, Plaintiff's administrative charge, right to sue letter and First Amended Complaint indicate that part or all of Plaintiff's claim is time-barred. Moreover, these documents were relied upon in responding to Plaintiff's Interrogatories (Request No. 11).

---

at her deposition, one of which was the weekend schedule from October 2 and 3, 2004.

## Conclusion

For the foregoing reasons, Defendant respectfully requests the Court deny Plaintiff's motion to compel.

Respectfully submitted,
LIFE CARE CENTERS, INC.,
By its attorneys,

/s/ Christopher J. Campbell
Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

Dated: March 12, 2007

## CERTIFICATE OF SERVICE

This is to certify that on March 12, 2007, a copy of the above document was electronically filed with the United States District Court for the District of Rhode Island through its Electronic Case Filing System.

/s/ Christopher J. Campbell
Jackson Lewis LLP