**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **BARBARA ANTONUCCI,** **Plaintiff,** v. **CHERRY HILL MANOR, et al.,** **Defendants.** | **C.A. No. 06-108 ML** |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE SUPPLEMENTAL DOCUMENTS IN RESPONSE TO REQUESTS NO. 16 AND 34**

Now comes the Plaintiff, Barbara Antonucci, ("Plaintiff"), and hereby moves to compel Defendants to provide supplemental responses to Plaintiff's First Request for Production of Documents to Defendants, Requests No. 16 and 34, pursuant to Rules 34 and 37.

In support of this motion, Plaintiff relies on the memorandum submitted herewith.

Plaintiff,
By her attorneys,

/s/ Carly Beauvais Iafrate

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, Rhode Island 02903
(401) 421-0966
(401) 421-0964 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 25th day of April 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Christopher J. Campbell, Esq.
campbelc@jacksonlewis.com

/s/ Carly Beauvais Iafrate

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**BARBARA ANTONUCCI,**
**Plaintiff,**

**v.**
**CHERRY HILL MANOR, et al.,**
**Defendants.**

**C.A. No. 06-108 ML**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO REQUESTS #16 AND 34**

I. *Brief Facts and Travel.*

This is an age-discrimination action filed by Plaintiff, Barbara Antonucci ("Plaintiff"), who was employed by Defendant, Life Care Centers of America ("Life Care"), and its predecessors for nearly eighteen years. In October 2004, she was fired from her job as staffing coordinator by Defendant Pamela Charron ("Charron") who had recently become the Director of Nurses at Cherry Hill Manor. This lawsuit followed.

In October 2006, Plaintiff served her First Request for Production of Documents to Defendants. Defendant did not respond until about December 10, 2006. Plaintiff sought additional responsive documents and a motion to compel was heard by the Court on or about March 21, 2007. As a result of the Court's order, Defendants were required to produce additional documents by April 13, 2007. In the course of Rule 37 discussions leading up to the March 21 hearing, the parties discussed two types of documents which Plaintiff had requested – and not received – a workplace profile referenced in the Defendants' position paper to the Human Rights Commission and staffing lists showing the number of staff employed at Cherry Hill from 2004 to 2005.

Plaintiff has attempted to resolve this matter without court intervention. Defendants' position, to date, has been that the document sought in response to Request No. 16 (the workplace profile) is privileged, and that no documents exist in response to Request No. 34 other than a current list (the staffing lists). See Exhibit A, *Defendants' Responses to No. 16 and 34*.1 Plaintiff considered Defendants representations regarding why those documents would not be produced. Because Plaintiff still believes that she is entitled to the documents, she has filed this motion.

*II. Argument.*

*Workplace Profile – Request 16*

Request No. 16 asked for any documents that related to the position paper submitted to the Human Rights Commission by Defendants, including any documents which were used, consulted, and/or relied upon in preparing the position paper. Defendants did produce some responsive documents, but withheld, on the basis of privilege, a workplace profile referenced in the position paper. Specifically, Defendants set forth that "Cherry Hill currently employs 120 employees who are forty and over, and fifteen employees who are sixty or older." See Exhibit B, *Defendants' Position Paper.* According to defense counsel, this came from a workplace profile document which sets forth the ages of all of the employees. A workplace profile is a common document discoverable in employment discrimination cases.2 Yet, Defendants assert that just because an attorney consulted this document before referencing it, it has somehow become privileged.

The work-product doctrine is invoked to protect items prepared in anticipation of litigation. See Fed. R. Civ. P. 26(b)(3). A document is considered to be prepared in anticipation of litigation if in light of the nature of the document and the factual situation the document can fairly be said to

1 Although Plaintiff had requested a privilege log, Defendants never created one and instead, have only made the verbal representation that the document is privileged.
2 In most cases, Defendants even create the workplace profile in response to Plaintiff's request.

have been prepared or obtained because of the prospect of litigation. See, e.g., In re Linerboard Antitrust Litigation, 237 FRD 373 (E.D. Pa. 2006). However, this rule is not without exceptions. Critically, this document was not created by an attorney as his or her mental impressions, conclusions, opinions or legal theories of an attorney. In addition, it is the type of document often prepared in the ordinary course of business.

Even if the document were somehow privileged, that privilege has been waived by Defendants in incorporating it into the position paper. Here, corporate counsel intentionally placed this information from this document into the position paper. This was no inadvertent disclosure. In addition, there is a substantial need for the document. Cherry Hill cites the number of older employees, but Plaintiff has no idea what the total number of employees is. Accordingly, it would be unfair for the Defendants to utilize this statistic in their favor, without disclosing what the number means in the context of all employees.

*Staff Lists – Request 34*

Plaintiff sought lists of staff in her request No. 34 to Defendants. Specifically, she requested any and all lists of nursing staff from January 2004 to January 2005. The reason for the request was to determine the numbers of licensed staff at Cherry Hill during this time period. This is critical to the Plaintiff's case for a variety of reasons. For example, Defendants claim that Plaintiff performed poorly at staffing the facility – that she was not diligent in her efforts to find licensed staff (including Med-Techs, C.N.A.s, L.P.N.s and R.N.s) to work additional shifts. One of the factors in the staffing job (i.e., which would make your job more difficult or easier) is the number of licensed staff that you have to choose from at the facility. Plaintiff's replacement, for example, alleged in her deposition that after Plaintiff was fired, staffing became even more difficult because the numbers of licensed personnel dropped. Accordingly, any documents

revealing the numbers of employees (and the type of job they hold) would obviously be relevant to the case.

Defendants assert that no such lists exist for the time period in question – January 2004 to January 2005. What Defendants have not done is establish that there is no efficient way to compile such a list. It would be incredible to believe that the Defendants have no records, documents, database, or method of generating a list of employees who were employed at any given time and the position they held especially since we are looking at a relevantly recent time period. Accordingly, Defendants should be compelled to produce any documents which list staff during the relevant time periods, or create a document that would be responsive.

III. *Conclusion.*

Accordingly, Plaintiff respectfully requests that Defendant be compelled to produce the workplace profile referenced in the position paper and staffing lists from 2004 and 2005.

Plaintiff,
By her attorneys,

/s/ Carly Beauvais Iafrate

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, Rhode Island 02903
(401) 421-0966
(401) 421-0964 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 24th day of April 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Christopher J. Campbell, Esq.
campbelc@jacksonlewis.com

/s/ Carly Beauvais Iafrate

EXHIBIT A

Case 1:06-cv-00108-ML-DLM Document 39 Filed 04/25/2007 Page 8 of 28

4(b



UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA ANTONUCCI,<br>Plaintiff,<br><br>v.<br><br>LIFE CARE CENTERS OF AMERICA, INC.,<br>PAMELA CHARRON, in her personal and official capacity, and<br>STEVE HAASE, in his personal and official capacity,<br>Defendants. | : | C.A. No. 06-108-ML |

**DEFENDANT LIFE CARE'S SUPPLEMENTAL RESPONSE TO**
**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant, Life Care Centers of America, Inc., ("Defendant") hereby supplements its response to Plaintiff's First Request for Production of Documents as follows:

**GENERAL OBJECTIONS AND DEFINITIONS**

1. As used herein, "burdensome" means the interrogatory requires searching for information with little value or benefit to the parties, such that the value of producing the information is far outweighed by the burden of producing it. This is especially true where the Plaintiff can or already has obtained the information from other sources.

2. As used herein, "overbroad" means the interrogatory, at least in part, seeks information that is irrelevant in subject matter and/or time period reasonably inferred from the allegations in Plaintiff's Complaint, and is not likely to lead to the discovery of admissible evidence.

3. Defendant objects to each document request insofar as it seeks documents that are protected from disclosure by the attorney/client privilege, work product doctrine, were complied in anticipation of litigation, and/or are otherwise not subject to discovery and will not produce such

documents. In the event any privileged document is produced by Defendant, its production is inadvertent and does not constitute a waiver of any privilege.

4. Defendant objects to each document request insofar as it seeks information which constitutes confidential and/or proprietary information that is not relevant to the claim or defense of any party.

5. Defendant will produce such documents as it has located after reasonable search referenced herein within a reasonable period of time and will supplement such production if further documents are located during the course of litigation.

**RESPONSES**

Subject to and incorporating by reference the foregoing general objections and definitions, Life Care responds to the individual requests as follows:

**REQUEST NO. 6**

Any and all documents in the possession of any current or former supervisor(s) of Plaintiff which relate to Plaintiff and her allegations of discrimination.

**RESPONSE NO. 6**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Subject to and without waiving its objections, Defendant states that Ms. Charron is not in possession of any additional documents.

**SUPPLEMENTAL RESPONSE NO. 6**

Defendant has not located any additional documents regarding Plaintiff in the possession of Ms. Harris.

**REQUEST NO. 7**

During the past five (5) years, any and all documents which relate to any efforts by Defendant to prevent, alleviate, address, and/or correct employment discrimination in Plaintiff's workplace including, but not limited to, any policies, any documents relating to any training, any documents relating to affirmative action, and/or any documents which reflect, and/or relate to, any action which defendant(s) took in response to any formal or informal complaints of discrimination made by any current or former employees including plaintiff.

**RESPONSE NO. 7**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request to the extent that the information sought is protected from disclosure by the attorney/client privilege, work product doctrine, and/or was prepared in anticipation of litigation. Defendant further objects to this request on the grounds that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint, for which Plaintiff has not shown any particularized need. Subject to and without waiving its objections, Defendant will produce a copy of its employee handbook.

**SUPPLEMENTAL RESPONSE NO. 7**

Plaintiff has narrowed her original request to documents "evidencing any efforts to prevent age discrimination at Cherry Hill Manor, during the time period of 2001 to 2006." Defendant has already provided the employee handbook. While Defendant contends that the narrowed request is still vague and ambiguous and open to interpretation, Defendant does not possess any further responsive documents, such as training materials or the like.

**REQUEST NO. 8**

Any documents relating to any formal or informal investigation conducted by Defendant regarding, or in response to, any claims by Plaintiff that she was discriminated against, and/or was treated differently than younger employees.

**RESPONSE NO. 8**

Defendant objects to this request to the extent that the information sought is protected from disclosure by the attorney/client privilege, work product doctrine, and/or was prepared in anticipation of litigation. Subject to and without waiving its objections, Defendant refers Plaintiff to its objections and response to Request No. 2.

**SUPPLEMENTAL RESPONSE NO. 8**

Plaintiff has requested documents pertaining to Defendant's investigation of Plaintiff's allegations of unlawful discrimination. Significantly, Plaintiff never complained regarding age discrimination at any point during her employment, so no "investigation" was undertaken at the time. Several months after her employment was terminated, Plaintiff filed an administrative charge of discrimination with the Rhode Island Commission for Human Rights ("RICHR"). Defendant's in-house counsel prepared a written response on behalf of Life Care. In preparation for Defendant's response to the RICHR, in-house counsel compiled certain materials.

The investigation undertaken by Defendant in this matter occurred after receiving the charge of discrimination and is privileged. Aside from the documents submitted to the Rhode Island Human Rights Commission, there are no non-privileged documents. The privileged documents include a statement from Ms. Charron, a list of employees terminated in 2004, an employee list, and an analysis of the bonus amounts paid to employees in 2004.

Because the list of employees terminated in 2004 is no longer accessible, Defendant has produced this report (Bates Nos. DEF 02053-2054) pursuant to the Stipulation and Order of Confidentiality.

**REQUEST NO. 13**

The entire personnel file of Donna Diallo and/or any person who replaced Plaintiff and/or performed the same duties and responsibilities as Plaintiff at any time since her termination.

**RESPONSE NO. 13**

Defendant objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving its objection, Defendant will produce a copy of the personnel file of Donna Sweeting (f/k/a Donna Diallo), subject to the parties executing a suitable stipulation of confidentiality.

**SUPPLEMENTAL RESPONSE NO. 13**

Defendant has located the 2006 evaluation for Donna Sweeting which appears not to have been in the file at the time that it was originally copied for production. The evaluation has been produced pursuant to the Stipulation and Order of Confidentiality (Bates Nos. 02202-2205). Defendant also confirms there were no documents redacted or withheld from the original production.

**REQUEST NO. 14**

From 2000 to the present, any and all documents which reflect, or relate to, any formal or informal complaints, statements, grievances, charges, and/or allegations by employees, about age-discrimination, and/or about being treated differently based upon age.

**RESPONSE NO. 14**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request to the extent that the information sought is protected from disclosure by the attorney/client privilege, work product doctrine, and/or was prepared in anticipation of litigation. Defendant further objects to this request on the grounds that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint for which Plaintiff has not shown any particularized need.

**SUPPLEMENTAL RESPONSE NO. 14**

Pursuant to the Stipulation and Order of Confidentiality, Defendant has produced documents pertaining to an anonymous claim in 2005 that the housekeeping director was engaging in age-based harassment. (Bates Nos. DEF 02264-02269). Defendant confirms that no other claims were received at Cherry Hill Manor, other than as set forth in the original response.

**REQUEST NO. 15**

Any and all documents, including nursing schedules, requests for shift changes, calendars, notes, memoranda, that relate to any work performed by Plaintiff from 2000 to the time she was terminated, and the filling of positions at Cherry Hill Manor.

**RESPONSE NO. 15**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome (especially insofar as it would require Defendant to search through each and

every personnel file of Life Care employees for which Plaintiff was responsible for scheduling as part of her preparation of the staffing schedule), and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request to the extent that the information sought is protected from disclosure by the attorney/client privilege, work product doctrine, and/or was prepared in anticipation of litigation. Defendant further objects to this request on the grounds that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint, for which Plaintiff has not shown any particularized need. Subject to and without waiving its objections, Defendant will produce monthly staffing schedules from 2003 and 2004 which it is able to locate after conducting a reasonable search and daily staffing schedules from January 2004 through October 2005, subject to the parties executing a suitable stipulation of confidentiality.

**SUPPLEMENTAL RESPONSE NO. 15**

Plaintiff has narrowed this request to monthly staffing schedules and daily schedules from January 2003 until November 2003. Pursuant to the Stipulation and Order of Confidentiality, Defendant will produce daily staffing schedules from January 2003 until November 2003 (Bates Nos. DEF02410 through DEF02769). Defendant confirms that it is not in possession of any monthly schedules from October 2004 or November 2004, as monthly schedules were not retained by Ms. Sweeting in the course of performing her duties as Staffing Coordinator. Ms. Sweeting has searched for any such documents, and has not located any. The monthly schedules that were retained by Plaintiff, corresponding to 2003 and 2004 were previously produced, Bates Nos. DEF 01167- 01484.

**REQUEST NO. 16**

This request relates to the position paper submitted to the Rhode Island Commission for Human Rights. Any and all documents which were used, consulted, referred to, and/or relied upon in preparing the position paper.

**RESPONSE NO. 16**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request to the extent that the information sought is protected from disclosure by the attorney/client privilege, work product doctrine, and/or was prepared in anticipation of litigation.

**SUPPLEMENTAL RESPONSE NO. 16**

Plaintiff narrowed this request to documents supporting the instances of poor performance noted in Defendant's position statement. The documents reflecting Plaintiff's unsatisfactory performance that Defendant has been able to locate have been produced. These documents include the 10/24/04 Counseling (Bates No. DEF00174); the 08/23/04 Written Warning (Bates Nos. DEF00032 - DEF00036); the 10/04/04 Termination form (Bates Nos. DEF00171 – DEF00172); the 12/08/03 Written Warning (Bates Nos. DEF00030 – DEF00031), the 03/04/04 Evaluation (Bates Nos. DEF00037 – DEF00041). As indicated in response to Plaintiff's request for additional responses to interrogatories, Defendant also refers Plaintiff to the weekend schedule for October 2–3, 2004 (Bates Nos. DEF01068 – DEF01069). Defendant also refers Plaintiff to the remainder of the schedules produced, Bates Nos. DEF00464 – DEF01166 for information on the manner in which Plaintiff maintained the daily schedules. Defendant also refers Plaintiff to Bates Nos. DEF01554 – DEF01635 for information on bonus payments made to licensed staff.

**REQUEST NO. 23**

Any policies of Defendant(s) which applied to, and/or violated by, Plaintiff and which relate to this lawsuit and/or your answer to the complaint filed in this lawsuit.

**RESPONSE NO. 23**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Subject to and without waiving its objections, Defendant will produce a copy of the employee handbook of Life Care Centers of America, Inc.

**SUPPLEMENTAL RESPONSE NO. 23**

All or substantially all of the policies in the handbook applied to Plaintiff. The request also asks for "[a]ny policies of Defendant(s) which relate to this lawsuit." Given that Plaintiff has brought a discrimination lawsuit based on her employment, all or substantially all policies relate in varying degrees to Plaintiff's lawsuit. Certainly policies regarding Equal Employment Opportunity, complaints to Defendant, and harassment, bear relation to the lawsuit. Similarly, given that Plaintiff was discharged for unsatisfactory work performance, the Discipline and Termination policy and the Discipline Procedure policy bear relation to the lawsuit. Regarding the reasons for Plaintiff's discharge, Defendant refers Plaintiff to the documents reflecting her unsatisfactory performance, described above. As indicated in these documents, Defendant has not identified a particular policy that Plaintiff has violated. Rather the documents describe the particulars of her unsatisfactory performance.

**REQUEST NO. 27**

Any and all schedules referred to the in the position paper.

**RESPONSE NO. 27**

Defendant refers Plaintiff to its objections and response to Request No. 15.

**SUPPLEMENTAL RESPONSE NO. 27**

The schedules identified with particularity in the position statement are the daily schedules from October 2 and 3, 2004.

**REQUEST NO. 29**

Any and all documents that reflect or relate to bonuses offered to employees to pick up extra shifts from January 2003 to October 2005.

**RESPONSE NO. 29**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome (especially insofar as it would require Defendant to search through each and every personnel file of Life Care employees for which Plaintiff was responsible, including in the staffing schedule), and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Subject to and without waiving its objections, Defendant refers Plaintiff to documents produced in response to Plaintiff's other requests for production of documents.

**SUPPLEMENTAL RESPONSE NO. 29**

Plaintiff has requested documents pertaining to bonus payments for a full three year period. As indicated above, Defendant has provided the bonus information for 2004 it has been able to locate (Bates Nos. DEF01554-DEF01635). In addition, Defendant confirms that it has no additional weekly bonus sheet from October 10, 2004, and believes that no extra shift bonus was provided that week.

As to 2005, Defendant has produced the weekly bonus sheets it has been able to locate after conducting a reasonable search (Bates Nos. DEF 02207-02263). As to the Excel spreadsheets shown on the e-mails, these e-mails were retrieved by searching backup tapes. Despite Defendant's efforts, the backup tapes do not allow Defendant to access the attached documents. Nonetheless, the information on the amounts of bonus dollars paid has already been provided to Plaintiff.

Regarding 2003, as indicated in deposition testimony, prior to March 2004, Cherry Hill Manor used staffing agencies to assist in staffing the facility. Although there may have been bonuses paid during this period, the amounts would have been necessarily affected by the use of agency staff. Nonetheless, in accordance with the Court's wishes, Defendant will produce whatever bonus sheets it can locate from October 2003 until March 2004 and will provide financial data on the cost of agency nursing staff during that period.

**REQUEST NO. 30**

Monthly staffing schedules from January 2004 to October 2005.

**RESPONSE NO. 30**

Defendant refers Plaintiff to its response to Request No. 15.

**SUPPLEMENTAL RESPONSE NO. 30**

As noted above, monthly schedules were not retained by Ms. Sweeting. Ms. Sweeting has searched for any responsive documents, and has not located any.

**REQUEST NO. 31**

Any and all two-week action plans that relate to any other employees at Cherry Hill Manor from 2002 to the present.

**RESPONSE NO. 31**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request on the grounds that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint for which Plaintiff has not shown any particularized need.

**SUPPLEMENTAL RESPONSE NO. 31**

Defendant does not keep any records as to particular discipline provided to employees, absent the actual documentation contained in the particular employees' respective personnel file. Providing the documentation requested would literally require searching through each employee's individual employment file to locate written warnings. This task presents an undue burden on Defendant.

**REQUEST NO. 32**

The weekend schedule referred to in the position paper of October 1, 2004.

**RESPONSE NO. 32**

Defendant refers Plaintiff to its objections and response to Request No. 15.

**SUPPLEMENTAL RESPONSE NO. 32**

Defendant refers Plaintiff to the exhibits marked at her deposition, one of which includes the daily sheets from October 2 and 3, 2004, Bates Nos. DEF 01069-01070.

**REQUEST NO. 34**

Any and all lists of all nursing staff from January 2004 to January 2005.

**RESPONSE NO. 34**

Defendant objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial. Defendant further objects to this request on the grounds that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint for which Plaintiff has not shown any particularized need. Subject to and without waiving its objections, Defendant refers Plaintiff to its response to Request No. 15.

**SUPPLEMENTAL RESPONSE NO. 34**

Defendant states that it only maintains a current staffing list of nurses. This staffing list is periodically updated to account for changes in personnel. Outdated versions of this list, such as those requested by Plaintiff for 2004 and 2005, are not retained by Defendant, and no longer exist.

**REQUEST NO. 33 [SIC]**

Staffing schedules and bonus documents from Life Care's sister facility that it required Plaintiff to train at, from January 1, 2004 to October 2005.

**RESPONSE NO. 35**

Defendant objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents not designed to lead to the discovery of information that would be admissible at trial.

**SUPPLEMENTAL RESPONSE NO. 35**

In accordance with the agreement reached on this request, Defendant will provide daily staffing sheets, monthly schedules, and documents showing bonus payments for September, October

and November 2004 (Bates Nos. DEF02770 through DEF02901).

**REQUEST NO. 34 [SIC]**

The complete personnel file of "Becky," the employee at the sister facility who trained Plaintiff.

**RESPONSE NO. 36**

Defendant objects to this request on the grounds that it is overly broad and that the information sought constitutes a substantial or unreasonable interference with the privacy interests of third-parties not named in or referenced in Plaintiff's Complaint for which Plaintiff has not shown any particularized need.

**SUPPLEMENTAL RESPONSE NO. 36**

Defendant has already produced the documents responsive to this request, pursuant to the Stipulation and Order of Confidentiality.

Respectfully submitted,

LIFE CARE CENTERS, INC.,
By its attorneys,

Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

Date: April 6, 2007

**CERTIFICATE OF SERVICE**

This hereby certifies that on this 6th day of April 2007, a copy of the foregoing document was served upon Plaintiff's counsel, Patricia E. Andrews, Esquire and Carly Beauvais Iafrate, Esquire, 129 Dyer Street, Providence, RI 02903 via first class U.S. mail, postage pre-paid.

Christopher J. Campbell, R.I. Bar No. 6611

# EXHIBIT B

Case 1:06-cv-00108-ML-DLM Document 39 Filed 04/25/2007 Page 24 of 28

Life Care Centers of America®
3001 Keith Street, NW/P.O. Box 3480/Cleveland, Tennessee 37320-3480/(423) 472-9585

R.I.C.H.R.
MAR 24 2005

March 23, 2005

**VIA DHL OVERNIGHT**

Marlene Toribio, EEOC Project Director
Rhode Island Commission for Human Rights
180 Westminster Street
Providence, RI 02903

Re: **Barbara Antonucci v. Cherry Hill Manor**
**RICHR No. 05 EAG 151-22/22; EEOC No. 16JA500085**

Dear Ms. Toribio:

This information is submitted on behalf of Cherry Hill Manor ("Cherry Hill") in response to the Rhode Island Commission for Human Rights' request for a position statement. This letter and its contents are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including but not limited to 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e). *See also* 29 C.F.R. § 1610.13. The use, dissemination, or distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons who are neither employees nor officers of the Commission, is prohibited. In this regard, should the Commission receive any requests for access to the Commission's case file in connection with this charge, we should be promptly notified of each such request.

In responding, Cherry Hill does not waive any defenses, whether substantive or procedural, that it may have to the charge, all of which are expressly reserved. Additionally, by providing information, explanation or rebuttal, Cherry Hill does not waive any objection to the admissibility, materiality or relevance of such information in this or any other proceeding. Moreover, Cherry Hill reserves the right to supplement, correct, modify or change such information if it is later determined to be incomplete, inaccurate or erroneous. Furthermore, the information set forth in this letter is privileged, since it is submitted to the investigative agency in response to its request for information.

This charge is predicated on claims of discrimination based upon age. More particularly, Barbara Antonucci alleges that she was terminated because of her age. This claim, and any other claim expressed or implied in Ms. Antonucci's charge of discrimination, is denied. Cherry Hill's position is that there is no basis for this charge of discrimination.



Case 1:06-cv-00108-ML-DLM Document 39 Filed 04/25/2007 Page 25 of 28

## I. Background

### A. Ms. Antonucci's Employment

Cherry Hill is a long-term care nursing facility. Ms. Antonucci was hired on or about February 25, 1986 as an administrative secretary.[1] In or around January 1999, Ms. Antonucci was promoted to staffing coordinator.[2]

As a staffing coordinator, Ms. Antonucci's duties included staffing the facility at levels determined by the director of nursing ("DON"); preparing nursing schedules (daily, weekly, and monthly) and modifying them as needed; distributing revised nursing schedules to the appropriate personnel and posting the schedules at designated areas; processing requests for shift changes after DON approval; recommending and utilizing the most appropriate scheduling options; and any other duties as assigned by her supervisor. (A copy of Ms. Antonucci's personnel file is attached as Exhibit A.) Pamela Charron, DON, last supervised Ms. Antonucci.

### B. Ms. Antonucci's Inappropriate Work Behavior

On or about July 25, 2004, Ms. Charron became the new DON at Cherry Hill. Because of concerns in the past related to quality of resident care at the facility, Ms. Charron immediately implemented an aggressive approach aimed at improving resident care, which included ensuring that the facility was staffed at the appropriate level.[3]

During her first week as DON, Ms. Charron noticed that there were serious issues with Ms. Antonucci's ability to effectively staff the facility. Likewise, Ms. Charron also had concerns about Ms. Antonucci's willingness to accept direct supervision.

For example, the schedules prepared by Ms. Antonucci often did not have sufficient staff. Even when Ms. Charron instructed Ms. Antonucci to call every available LPN to fill the available slots, they remained vacant. Due to Ms. Antonucci's lack of effort, Ms. Charron had to complete this task herself. Ms. Antonucci reason for not filling the necessary slots was that she knew the likes and dislikes of staff related to scheduling and she didn't feel comfortable "badgering" those she knew would not pick up the shifts.

Another area of particular concern to Ms. Charron was Ms. Antonucci's over-reliance on paying bonuses to nurses who picked up extra shifts. Several staff members told Ms. Charron that one of the reasons they didn't pick up shifts when first asked is because they knew that they would get extra bonus dollars when the facility became desperate enough to fill the shift.[4]

---

[1] Ms. Antonucci was 45 when she was hired.

[2] Ms. Antonucci was 58 when she was promoted.

[3] Proper staffing is an issue of utmost concern to nursing homes, which are subject to strict state and federal regulation in this area. If a nursing home does not meet the staffing levels required by the state and federal governments, it faces significant liability, ranging from monetary penalties to loss of licensure.

[4] In July, Prior to Ms. Charron's appointment, Cherry Hill paid $6,000 to $9,000 per week in bonus dollars. Due to Ms.

In spite of Ms. Charron's efforts to verbally address concerns with Ms. Antonucci regarding scheduling and her expectations regarding staffing, issues remained unresolved. In fact, Ms. Antonucci's response to Ms. Charron was that she had been doing the scheduling job for several years and she did not need to be told how to do her job.

On or around August 2, Ms. Charron requested that Ms. Antonucci put together the monthly staffing schedule so she could see what shifts were vacant for licensed and non-licensed staff. Ms. Antonucci responded by telling Ms. Charron it was not her job—that it was Ms. Charron's job, and that she would not follow her supervisor's direction.

Ms. Charron explained to Ms. Antonucci that monthly schedules were indeed Ms. Antonucci's responsibility, regardless of how things had been done in the past. Because Ms. Antonucci told Ms. Charron she had never done a monthly staffing schedule before, Ms. Charron provided her with additional time to complete the task.

On August 19, Ms. Antonucci called in to report her intentions of not working that day. Ms. Charron asked Ms. Antonucci about the monthly schedule, and Ms. Antonucci replied that she had not prepared the monthly schedule because it was not her responsibility to do so.

Due to Ms. Antonucci inability to effectively staff the facility and her resistance to direction from Ms. Charron, on August 23 Ms. Antonucci was placed on a two-week action plan.[5] Ms. Charron and Steve Haase, executive director of the facility, made this decision in an attempt to rehabilitate Ms. Antonucci's work performance. Ms. Antonucci was provided a list of performance expectations to meet and was told that if she failed to meet the established objectives she could be terminated.[6]

As part of the action plan, Ms. Antonucci was also provided another copy of her job description for review and acknowledgment.[7] To ensure better efficiency with the scheduling of staff, Ms. Antonucci's working hours were changed to a five day/eight hour workweek as opposed to her previous five day/ten hour workweek. Ms. Charron also arranged for Ms. Antonucci to receive two days of training at one of Cherry Hill's sister facilities.

---

Charron's efforts, the amounts dropped to $400 to $2,700 per week. (See Exhibit B.)

[5] This was not the first time Ms. Antonucci had received disciplinary action related to staffing and insubordination. On December 8, 2004 Ms. Antonucci was counseled for being insubordinate to the prior DON. Apparently, Ms. Antonucci became infuriated when her request for vacation was denied and made several inappropriate comments to her supervisor in a loud and disrespectful voice. The reason her request was denied was because at that time there were a significant number of vacancies on the schedule that Ms. Antonucci needed to help fill.

Furthermore, the prior DON had noted on Ms. Antonucci's performance evaluation in March 2004 that she was resistant to supervision and there was also indication that there had been prior concerns regarding Ms. Antonucci not meeting scheduling needs. (A copy of the disciplinary action and performance evaluation are included as part of Exhibit A.)

[6] These expectations included (i) completing and maintaining monthly nursing schedules, (ii) not ignoring requests from her supervisor, the DON, and (iii) following up and completing duties as assigned.

[7] This is the same job description that was in place when Ms. Antonucci received her performance evaluation from the prior DON. (A copy of the job description is included as part of Exhibit A.)

Instead of rising to the challenge and meeting her job expectations, Ms. Antonucci's work performance still did not improve. On Friday, October 1 there were at least twenty-one vacancies on the weekend schedule as of 3:00 that afternoon. Ms. Antonucci told Ms. Charron that she felt that she had done all she could in trying to fill the positions. Ms. Charron and another associate were able to fill the vacancies within an hour.

On October 4, 2004 a decision was made to terminate Ms. Antonucci due to her inability to perform her job duties to meet Cherry Hill's expectations.

## II. Law and Argument

In order to prevail on her claim of age discrimination, Ms. Antonucci must first establish a *prima facie* case. *Rivera-Aponte v. Restaurant Metropol #3, Inc.*, 338 F.3d 9, 11 (1st Cir. 2003). However, if Cherry Hill produces evidence that it had a legitimate, nondiscriminatory reason for its employment action, the *prima facie* case is defeated. *Id.*

Assuming *arguendo* that Ms. Antonucci has established a *prima facie* case of age discrimination, she cannot prevail on his claim because Cherry Hill terminated her for a legitimate nondiscriminatory reason—her failure to adequately perform her job duties, even after an opportunity to correct her performance—as outlined above.[8] For this reason, Cherry Hill requests that the Rhode Island Commission for Human Rights issue a finding of "no cause" with respect to Ms. Antonucci's charge.

Sincerely,

Alison Shaw
Corporate Legal Counsel

cc: Steven Haase, Executive Director
Carly B. Iafrate, Esq.
Barbara Antonucci

[8] Cherry Hill currently employs 120 employees who are forty or older, and fifteen employees who are sixty or older.