UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA ANTONUCCI,<br>Plaintiff,<br>v.<br>LIFE CARE CENTERS OF AMERICA, INC.,<br>PAMELA CHARRON, in her personal and official capacity, and<br>STEVE HAASE, in his personal and official capacity,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 06-108-ML |

**DEFENDANT, LIFE CARE CENTER'S CONSOLIDATED OPPOSITIONS TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT CHARRON TO PRODUCE SUPPLEMENTAL DOCUMENTS / MOTION FOR CONTEMPT**
**and**
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE SUPPLEMENTAL DOCUMENTS IN RESPONSE TO REQUESTS NO. 16 AND 34**
**and**
**DEFENDANT'S MOTION FOR ATTORNEYS FEES**

Defendant, Life Care Centers of America, Inc. ("Defendant") hereby opposes to Plaintiff's Motion To Compel Defendant Charron To Produce Supplemental Documents / Motion For Contempt (Document 38) and Plaintiff's Motion To Compel Defendant To Produce Supplement Documents In Response To Requests No. 16 And 34 (Document 39), and requests an award of attorneys' fees. In support of this consolidated opposition, Defendant has submitted a memorandum.

Respectfully submitted,

LIFE CARE CENTERS, INC.,
By its attorneys,

/s/ Christopher J. Campbell
Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

May 8, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically on this 8th day of May 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Patricia E. Andrews, Esquire
peandrews@verizon.net

and

Carly B. Iafrate, Esquire
ciafrate@verizon.net

/s/ Christopher J. Campbell
Jackson Lewis LLP

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BARBARA ANTONUCCI, Plaintiff, v. LIFE CARE CENTERS OF AMERICA, INC., PAMELA CHARRON, in her personal and official capacity, and STEVE HAASE, in his personal and official capacity, Defendants. | : | C.A. No. 06-108-ML |

**DEFENDANT, LIFE CARE CENTER'S MEMORANDUM IN SUPPORT OF ITS CONSOLIDATED OPPOSITIONS TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT CHARRON TO PRODUCE SUPPLEMENTAL DOCUMENTS / MOTION FOR CONTEMPT**
**and**
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE SUPPLEMENTAL DOCUMENTS IN RESPONSE TO REQUESTS NO. 16 AND 34**
**and**
**DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

Defendant, Life Care Centers of America, Inc. ("Defendant") submits the following memorandum in support of its opposition to Plaintiff's Motion To Compel Defendant Charron To Produce Supplemental Documents (Document 38) and Plaintiff's Motion To Compel Defendant To Produce Supplement Documents (Document 39). Defendant also requests that this Court consolidate the hearing on this motion with Plaintiff's other pending discovery motion (Document 32), and in order to address any remaining discovery issues between the parties. In addition, Defendant moves that this Court make an award of reasonable attorneys' fees, pursuant to Rule 37, because Plaintiff made no reasonable attempt to seek further information from Defendant as required under Rule 37, and Plaintiff's unduly disruptive and combatative conduct throughout this case warrant such an award. In addition, as set forth below, the majority of Plaintiff's requests in Documents 38 and 39 are without substance. As a result, Plaintiff's actions have needlessly increased the costs of both parties, and have burdened the Court with excessive discovery practice.

## A. <u>Plaintiff's Requests For Documents From Defendant Pamela Charron Fall Under Fed. R. Civ. P. 34</u>

On February 7, 2007, at the deposition of Rebecca Santin, Plaintiff presented Defendant's counsel with a subpoena for documents supposedly in the possession of Defendant Pamela Charron.[1] In response, Defendant informed Plaintiff that, as a party to the lawsuit commenced by Plaintiff, requests to parties for documents in discovery were governed by Rule 34, which provides thirty (30) days to provide responses.

Defendant respectfully suggests that the Court look to Rule 34, not Rule 45, to guide its analysis, because Ms. Charron is a party to this litigation. Indeed, Ms. Charron has been compelled by Plaintiff to defend herself in a claim of age-discrimination, based on discipline Ms. Charron administered while doing her job as Director of Nurses for Cherry Hill Manor. Compared to Life Care, Ms. Charron has no significant assets that would satisfy a judgment against Defendants, and Ms. Charron has recently left Life Care and commenced new employment. Nonetheless, Plaintiff's extensive written discovery and day-long deposition of Ms. Charron has resulted in a significant expenditure of Ms. Charron's time and mental energy. In the face of Ms. Charron's continued inconvenience, it is astounding that Plaintiff would suggest that Ms. Charron respond to discovery requests as a third-party – in addition to her obligations as a Defendant – under Rule 45.[2]

---

[1] Significantly, Plaintiff had served a similarly burdensome subpoena on Ms. Santin *two days* prior to her deposition. Notwithstanding the two day notice, Defendant provided Ms. Santin's personnel file prior to her deposition, rather than require Plaintiff to wait the 30 day time-period contained in Fed. R. Civ. P. 34.

[2] Moreover, the nature of Plaintiff's requests contained in the subpoena – daily facility staffing schedules and documents reflecting bonus payments – belie any red-faced argument that the subpoena was designed to obtain documents that were under Ms. Charron's control, rather than Life Care's control.

**B. The Requests Contained In Plaintiff's Motion To Compel Documents From Ms. Charron Have Been Largely Satisfied, And Could Have Easily Been Narrowed By Plaintiff**

Following discussion between the parties as to Plaintiff's requests, the parties scheduled Ms. Charron's deposition to occur after Plaintiff received the responses. Defendant served responses to Plaintiff's requests for documents on March 12, 2007, including Ms. Charron's personnel file and evaluations. In the days thereafter, Defendant provided further documents that it was able to locate at the other two Life Care facilities at which Ms. Charron worked.[3]

Plaintiff's requests regarding Evergreen House are not limited to any particular time period, and appear to encompass thousands of documents. In response, Defendant indicated its willingness to discuss producing a representative sampling of the categories of documents requested by Plaintiff – consistent with this Court's order on Plaintiff's last motion to compel. At no point in time, prior to filing Document 39, did Plaintiff follow-up on or counter Defendant's proposed compromise.

Ms. Charron's deposition took place thirty (30) days later, on April 11, 2007. Between the date of Defendant's production and Ms. Charron's deposition, Plaintiff failed to initiate any discussion or make any further attempt to identify any specific additional documents she sought. As set forth below, there is no reasonable basis for Plaintiff to have filed a motion to compel regarding the documents which are the subject of the requests directed toward Ms. Charron.

Defendant's responses to Plaintiff's specific requests follow.

---

[3] As to the "late response" of three days – Monday, March 12, 2007 instead of Friday, March 9 – as set forth below in Section 3, Plaintiff has engendered far more significant delays in the discovery of this matter.

**Request No. 2**

Request No. 2 seeks Ms. Charron's resume. Defendant Charron commenced employment with Life Care in approximately November 2001. Since then, Ms. Charron held different positions at Life Care's Raynham facility, including a position as Assistant Director of Nursing. In July 2004, Ms. Charron became the Director of Nurses of Cherry Hill Manor. She held this position until after Plaintiff's employment concluded. Ms. Charron's last position was the Director of Nurses at Evergreen House in East Providence.[4]

When Ms. Charron was recruited to Life Care, she did not submit a résumé. Similarly, Ms. Charron never compiled a résumé in connection with any of the personnel changes she experienced at Life Care. As reflected in the Plaintiff's Motion For Leave To Take Further Deposition Pursuant To Rules 26 And 30 (Document 32), and Defendant's opposition to the motion (Document 42), Plaintiff has already deposed Ms. Charron extensively about the nursing positions she held prior to employment with Life Care.

Plaintiff now claims to have a need to learn more about Ms. Charron's work history to determine "what qualifications Charron has to make the performance assessments that she allegedly did of the Plaintiff." See Document 38, p. 3. At the outset, Plaintiff's subjective assessment of Ms. Charron's qualifications is of no probative value, because whether Ms. Charron was qualified to discipline a subordinate employee is irrelevant to Plaintiff's claim of unlawful age discrimination.

---

[4] The particular positions and dates of Ms. Charron's employment are believed to be contained in the transcript of her deposition on April 11, 2007, which was unavailable for review by Defendant prior to filing the instant pleading. After reviewing the transcript, Defendant will endeavor to correct any inadvertent errors as to relevant dates or positions.

The focus in a discrimination suit is on the decision-maker, and whether the decision-maker was motivated by unlawful animus. Indeed, Judge Lisi's recent opinion Bartlett American Power Conversion, 2006 U.S. Dist LEXIS 72294 (Sept 20, 2006) recognized the well-settled principle of employment law in the First Circuit that "Courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions." citing Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991).

Setting aside the lack of any reasonable need to obtain further information about Ms. Charron, Plaintiff's attempts to get a current résumé of Ms. Charron have amounted to service of the subpoena and, possibly, generalized demands for full-compliance with all of the requests.[5] Plaintiff has never identified a current résumé for Ms. Charron as a critical document in this lawsuit. Had Plaintiff identified the requested document with any specificity, Defendant would have agreed to provide it. In fact, following review of Plaintiff's motion, Defendant contacted Ms. Charron at her new position with another company, obtained a current résumé, and has produced it to Plaintiff.

**Request No. 3**

This request seeks copies of Ms. Charron's job description as Director of Nurses. As support for her "need" for this information, Plaintiff refers the Court to her argument in support of Request No. 2 (i.e. that she needs to test Ms. Charron's "qualifications" to discipline her). As Plaintiff is well-aware from the numerous depositions in this matter, Life Care's personnel evaluations include a detailed listing of each position's duties and responsibilities. Plaintiff has

---

[5] As set forth below in Section 3, Plaintiff has represented that she attempted to resolve this matter without court intervention. See Document 38, p. 2. Defendant disagrees with Plaintiff's representation, and requests that, at a minimum, Plaintiff be required to identify particular conversations, events or documents supporting this representation.

numerous copies of this list of duties for Director of Nurses, as they are part of the evaluations of Ms. Charron produced to Plaintiff in this matter. Not surprisingly, the list of job duties for the Director of Nurses position includes supervision of staff.

In sum, Plaintiff is already in possession of a detailed job description for the Director of Nurses position – providing Plaintiff ample information on which to determine whether Plaintiff is qualified or authorized to discipline a subordinate employee.

**Request No. 6**

Request No. 6 seeks any notes or other documents relevant to Plaintiff, and Ms. Charron has already indicated – both at deposition and in responses to interrogatories – that she does not have any responsive documents. Plaintiff's claim that Ms. Charron is refusing to provide documents is simply not accurate.

**Requests Nos. 8 and 9**

Plaintiff seeks daily and monthly staffing schedules (Requests 8 and 9) for an undisclosed period of time, relating to the Life Care facility where Pamela Charron worked after leaving Cherry Hill Manor – Evergreen Nursing Home in East Providence, Rhode Island. In support of her request, Plaintiff claims to need to test Ms. Charron's "*modus operandi*" and/or whether Ms. Charron went to Evergreen to "turn things around." (Document 38, pp. 3-4). In particular, Plaintiff claims that the staffing schedules "will reveal whether Charron required her scheduler at Evergreen to do anything differently than what Plaintiff was doing." Id.

Plaintiff's representation on this point is not accurate. Indeed, Plaintiff has failed to provide any indication as to how the requested documents will enable any analysis of Ms. Charron's performance or her supervision of the Evergreen scheduler. Indeed, Plaintiff has

obtained witness deposition testimony establishing that the staffing schedules do not disclose any relevant details as to how a particular nursing home was staffed or when the schedules were completed.

Even setting aside Plaintiff's inaccurate representation, Defendant offered, as of March 12, 2007, to provide a representative sampling of the requested documents consistent with the period of time reflected in the Court's March 21, 2007 Discovery Order. Prior to the instant motion to compel, Plaintiff never responded and never indicated any agreement that Defendant's offer would resolve the dispute.

**Request No. 10**

Similar to Request Nos. 8 and 9, Plaintiff seeks weekly bonus sheets (Request No. 10) for an undisclosed period of time, relating to Evergreen Nursing Home in East Providence, Rhode Island. As the depositions in the case have clearly established, there is no dispute that Plaintiff was not empowered to authorize bonus payment amounts. Rather, bonuses were authorized by the Director of Nurses and the Executive Director. As a result, the amount of bonus dollars expended at another Life Care facility could not possibly provide probative information as to Plaintiff's job performance as a Staffing Coordinator.[6] The fact is, the relative cost in bonus payments is particular to each facility and is dependent on widely-varying factors such as staff availability and the individual staffing patterns particular to the facility over the course of time.

---

[6] Ms. Charron's concern regarding bonus dollars is that Plaintiff failed to aggressively call employees early in the week to staff for the weekend, resulting in an over-reliance on bonus payments later in the week when staffing became more urgent. Plaintiff has never been counseled about exceeding any particular bonus dollar amount. In fact, deposition testimony has established that Cherry Hill Manor had no particular budget for bonus dollars.

Finally, as set forth above, Defendant extended the same compromise of a representative sampling of months, and Plaintiff failed to respond.

**Request No. 11**

Plaintiff has moved to compel the state inspection survey from the Evergreen facility. At the outset, as Plaintiff is well aware, the requested documents are a public record. Indeed, Plaintiff has already sought and obtained the state health surveys for Cherry Hill Manor from the Rhode Island Department of Health. If Plaintiff had such a pressing need for these documents, she should have simply requested them from the state.

More to the point, these survey records – reflecting clinical data of Life Care's residents – are completely irrelevant to Plaintiff's claim of age discrimination. Plaintiff was not a caregiver and there is no mention of Plaintiff, her duties or her performance in any of the health surveys that are the current subject of this request.

## C. Plaintiff's Motion To Compel Staffing Lists Is Premature and Unjustified

In Document No. 39, Plaintiff has moved to compel a list of staff with ages. Defendant does not object to providing this information, and has repeatedly showed its willingness to provide such personnel data throughout this litigation.

Prior to this motion, Plaintiff has failed to engage Defendant in any meaningful or reasonable discussion concerning employee data and age statistics. In any event, following review of Plaintiff's requests, Defendant produced a current staffing list (Bates Nos. DEF02912 through DEF02916).[7] Consistent with Defendant's cooperative approach, the staffing list also provided additional employee data fields, such as each employee's department number.

---

[7] Not surprisingly, Cherry Hill Manor continues to employ numerous individuals in the protected age-category – including individuals older than Plaintiff.

Defendant has also previously produced lists of terminated employees, with birthdates, and a list of new hires that was maintained by Cherry Hill Manor's office clerk.

**D. Plaintiff's Actions Warrant An Award To Defendant Of Reasonable Attorneys' Fees**

Defendant requests that this Court enter an order directing Plaintiff to pay Defendant's reasonable attorneys' fees incurred in opposing Plaintiff's eleventh-hour flurry of discovery motions. As set forth above, there is no reasonable basis for Plaintiff to have submitted Documents 38 and 39.

For example, Plaintiff has moved to compel documents in the possession of Ms. Charron that relate to Plaintiff. Ms. Charron has previously responded that she has no such documents. Moreover, Plaintiff deposed Ms. Charron, and had ample opportunity to resolve any hypothetical doubts that may have lingered.

Plaintiff has also moved to compel state survey records from Evergreen. These records bear no possible relevance to this litigation, and they are readily available public records.

Plaintiff has also moved to compel staff information. Defendant has produced numerous staff lists throughout this litigation, and it has never refused to provide similar information for current employees, as is demonstrated by its production of current staffing information. (Bates Nos. DEF02912 through DEF02916).[8]

Defendant requests that this Court order an award of attorneys fees incurred in opposing Documents 38 and 39, because Plaintiff failed, once again, to make a reasonable effort to have

---

[8] While Plaintiff has asked for a list of employees at the time of Plaintiff's discharge (i.e. as of October 2004), Defendant informed Plaintiff that its payroll data system does not allow Defendant to provide a staffing list that would reflect Cherry Hill Manor's staff at a particular point in time in the past. Nonetheless, Defendant has also provided termination lists and lists of new hires which, together, enable Plaintiff to determine which employees were employed at particular times.

substantive discussions with Defendant regarding outstanding discovery issues. Throughout this case, Defendant has repeatedly expressed and demonstrated a willingness to provide further information and documents to Plaintiff. Indeed, in the course of discussion about Plaintiff's last round of discovery motions, (Documents 18 and 20) Defendants provided further responsive information to the interrogatories originally served on Defendant, such that only two requests remained in dispute at the hearing on these motions. Defendant's similarly narrowed the requests for production in Document 20.

In sum, Plaintiff's overly-litigious approach to this straightforward case has needlessly increased the costs in this matter. As a result, given that the instant discovery motions could have been significantly narrowed or obviated altogether, Defendant requests that it be awarded attorneys' fees for opposing the instant motions, Documents 38 and 39.

In considering sanctions, this Court may also consider Plaintiff's overall conduct during this litigation. Cf. Cobell v. Norton, 213 F.R.D. 48, 61-62 (D.D.C. 2003) (considering background conduct of a party, and imposing sanctions for wasting the parties' time and resources). Defendant submits that there are repeated examples of conduct during this litigation, which support its motion for reasonable attorneys' fees incurred in opposing Plaintiff's instant discovery motions.

First, when this case was removed from state court by Defendants on the basis of diversity jurisdiction, on March 8, 2006, Plaintiff moved to remand the case to state court on the basis of the Rhode Island citizenship of the entity that sold Cherry Hill Manor to Life Care nearly ten years before the events that gave rise to the instant litigation. Although Defendant provided the purchase and sale agreement and other evidence demonstrating this clear basis for diversity jurisdiction, Plaintiff refused to withdraw her motion – necessitating Defendant's preparing an

opposition to the motion to remand. (Document 5). On August 22, 2006, Judge Lisi denied Plaintiff's motion to remand, holding that "there was no reasonable basis in law or in fact" to consider the former owners when analyzing diversity jurisdiction. (Document 12)

Second, Plaintiff delayed scheduling her deposition for approximately three months, and then abruptly left her deposition, causing Defendant to have to reconvene on a subsequent date. In this case, following the scheduling conference on September 9, 2006, Defendant promptly served discovery and a notice of deposition for Plaintiff. Initially, Plaintiff agreed to attend her deposition on October 18, 2006. As a result, Defendant prepared for the deposition and scheduled a court reporter. On October 11, 2006, Plaintiff sent Defendant an e-mail requesting that Plaintiff's deposition be rescheduled because of Plaintiff's counsel's workload. Thereafter, Plaintiff failed to provide Defendant with timely responses to Defendant's interrogatories and requests for production.

After not receiving Plaintiff's discovery responses, Defendant repeatedly contacted Plaintiff. At no point during this process did Defendant deny Plaintiff an extension of time.[9] Indeed, frequently, Defendant's inquiries about Plaintiff's responses to written discovery went unanswered. Ultimately, after Defendant obtained Plaintiff's discovery responses in November 2005, Defendant attempted to schedule Plaintiff's deposition, but Plaintiff would not agree to a date. Ultimately, Plaintiff refused to appear for her deposition until January 9, 2007 – nearly three months after it was originally scheduled.

On January 9, 2007, Defendant commenced and was prepared to finish Plaintiff's deposition in accordance with the seven hours/one day rule. With no prior notice or discussion, at

2:55 p.m. Plaintiff's counsel announced that her client was tired and would not continue past 3:00 p.m. As a result of Plaintiff's conduct, Defendant was forced to undergo the expense of reconvening Plaintiff's deposition on a second day. See January 10, 2007 correspondence from Defendant to Plaintiff, attached as Exhibit A. Defendant's entire deposition of Plaintiff totaled less that the seven hours allotted by the rules, and Plaintiff's unilateral decision to have it occur over two days needlessly increased the cost of deposing Plaintiff.

Third, as set forth in Defendant's opposition to Plaintiff's other pending discovery motion (Document 32), Plaintiff was needlessly combatative during the deposition of Pamela Charron – asking the same questions repeatedly, shouting during the deposition and, at one point, contacting this Court regarding a brief objection by Defendant. Plaintiff's conduct substantially delayed and lengthened the deposition of Ms. Charron.

In addition, Plaintiff's recent conduct demonstrates that Plaintiff intends to continue with her overly-litigious approach. For instance, in the last week of the discovery period, Plaintiff served multiple notices of depositions on Defendant – indicating that these depositions would occur on dates that Defendant has previously indicated were unavailable, and on a date when both parties were scheduled to be in court on a companion case, Ferruccio v. Life Care Centers, Inc. et al., District of Rhode Island Docket No. 06-154ML.[10] Plaintiff also noticed two depositions to occur on the same day.

Finally, on May 8, 2007 – the day after discovery closed – Plaintiff served Defendant with four new sets of written discovery requests. Plaintiff's last minute discovery requests are

---

[9] The professional courtesy repeatedly extended by Defendant is in sharp contrast to Plaintiff's motion to hold Ms. Charron in contempt, because of an alleged delay in Defendant's discovery response, from Friday, March 9, 2007 until Monday, March 12, 2007.

particularly surprising, given that Plaintiff has refused to provide any substantive response to the relatively modest, single set of interrogatories served by Defendant on March 27, 2007. As grounds for her refusal, Plaintiff indicated, *inter alia*, that as of the time of Plaintiff's response – April 26, 2007 – that only two weeks remained in the discovery period.

In sum, Plaintiff's overly-litigious approach to this straightforward case has needlessly and substantially increased the costs in this matter. As a result, given that the instant discovery motions could have been significantly narrowed or obviated altogether – and as a deterrent to further inappropriate conduct in this matter – Defendant requests that it be awarded attorneys' fees for opposing the instant motions, Documents 38 and 39. Defendant estimates that its work on this consolidated opposition was approximately 10 to 15 hours. Should the Court grant this motion, Defendant will submit a verified accounting of the actual time expended.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's motions to compel (Documents 38 and 39) and award Defendant its reasonable attorneys fees incurred in responding to these motions.

Respectfully submitted,

LIFE CARE CENTERS, INC.,
By its attorneys,

/s/ Christopher J. Campbell
Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

May 8, 2007

[10] For some inexplicable reason – and contrary to Local Rule 5(d) – Plaintiff also filed these notices of deposition with the Court.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 8th day of May 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Patricia E. Andrews, Esquire
peandrews@verizon.net

and

Carly B. Iafrate, Esquire
ciafrate@verizon.net

/s/ Christopher J. Campbell
Jackson Lewis LLP

# EXHIBIT A

Representing Management Ex... sively in Workplace Law and Related Litigation

jackson | lewis
Attorneys at Law

Jackson Lewis LLP
75 Park Plaza
Boston, Massachusetts 02116
Tel 617 367-0025
Fax 617 367-2155
www.jacksonlewis.com

ATLANTA, GA
BOSTON, MA
CHICAGO, IL
CLEVELAND, OH
DALLAS, TX
GREENVILLE, SC
HARTFORD, CT
LONG ISLAND, NY
LOS ANGELES, CA
MIAMI, FL
MINNEAPOLIS, MN
MORRISTOWN, NJ
NEW YORK, NY
ORLANDO, FL
PITTSBURGH, PA
RALEIGH-DURHAM, NC
SACRAMENTO, CA
SAN FRANCISCO, CA
SEATTLE, WA
STAMFORD, CT
WASHINGTON, DC REGION
WHITE PLAINS, NY

January 10, 2007

**VIA FACSIMILE AND REGULAR MAIL**
**401-421-0964**

Carly Beauvais Iafrate, Esquire
129 Dyer Street
Providence, RI 02903

Re: Barbara Antonucci v. Cherry Hill Manor
U. S. District Court / District of Rhode Island C. A. No.: 2006-108-ML

Dear Carly:

I am writing to follow-up on the deposition yesterday. As you know, you left the deposition abruptly at 3 pm while I was in the middle of my questioning. This decision was made unilaterally, with approximately five minutes notice, and without agreement of counsel for both parties. Under the Federal Rules of Civil Procedure, unless agreed by the parties, depositions are anticipated to take seven hours, exclusive of breaks, and to conclude in one day. As you know, we had no agreement to conclude the deposition prior to the time set forth in the rules. Nonetheless, you left the deposition after approximately four and a half hours. While you have agreed to make Plaintiff available for an additional day of deposition, I did not plan to conduct the deposition over the course of two days and Defendants will have to expend additional time and resources to reconvene the deposition as a result of your unilateral decision. This additional expenditure is unwarranted and Defendants reserve the right to recover these costs from Plaintiff. In the meantime, however, please provide additional dates for the conclusion of Plaintiff's deposition.

Notwithstanding your decision to have Plaintiff deposed over the course of two days, please understand that Defendant does not agree to make any of its witnesses available for more than a day of deposition, in accordance with the Federal Rules for Civil Procedure.

Finally, you have indicated that you would like to discuss Defendant's responses to interrogatories. I would be glad to do so. I can make myself available at 11 am EST on January 11, 2007, if that is convenient for you. If you are not available at that time, please let me know when it would be convenient.

Very truly yours,

JACKSON LEWIS LLP

Christopher J. Campbell

CJC:jhg