**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**BARBARA ANTONUCCI,**
***Plaintiff,***

**vs.**

**LIFE CARE CENTERS OF AMERICA, INC., et al.,**

***Defendants.***

**C.A. No. 06-108 ML**

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

Now comes the Plaintiff, Barbara Antonucci, ("Plaintiff"), and hereby objects to Defendants' Motion for Attorneys' Fees.

In support of this objection, Plaintiff relies on the memorandum submitted herewith.

Plaintiff,
By her attorneys,

/s/ Carly Beauvais Iafrate

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, Rhode Island 02903
(401) 421-0966
(401) 421-0964 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 13th day of May 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Christopher J. Campbell, Esq.
campbelc@jacksonlewis.com

/s/ Carly Beauvais Iafrate

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **BARBARA ANTONUCCI,** *Plaintiff,* vs. **LIFE CARE CENTERS OF AMERICA, INC., et al.,** *Defendants.* | **C.A. No. 06-108 ML** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

***I. Brief Facts.***

At this point, the Court is well aware of the basic underlying facts of this age discrimination case brought by the Plaintiff, Barbara Antonucci ("Plaintiff"). The facts leading to the instant objection are as follows. As it typical near the close of the discovery period (May 7), both parties have unresolved discovery issues for the Court's consideration. Following the filing of two of those motions by Plaintiff, Defendants sought attorneys fees incurred in preparing the opposition. Specifically, Plaintiff moved to compel a supplemental response to the document request she issued to Defendant Charron in early February 2007. Plaintiff also sought to compel a supplemental document response from Defendant Life Care only with regard to Requests #16 and #34 which were part of Plaintiff's original document request to Life Care in October 2006. As will be demonstrated by the brief argument below, Plaintiff does in fact have a basis for filing these motions. Accordingly, there is no basis to award attorneys fees based on these motions or any other alleged "overly litigious conduct" on the part of the Plaintiff. Plaintiff strongly objects to

the mischaracterization of events by Defendants and instead, points out that it is Defendants conduct which has created the current dispute.

## *II. Argument.*

*Basis for Moving to Compel Documents from Defendant Charron*

As is detailed in the original motion, Defendant Charron responded to the request for documents with her personnel file and nothing else.1 She refused to produce even her own resume. In refusing to produce the requested documents, Charron did not provide any of the information that Defendants now present in its opposition and motion for fees. This is Defendants' modus operandi. More than once in this litigation, Defendants have refused to indicate that they will provide supplemental documents (or what documents will be provided), which forces Plaintiff to file a motion. Then, after the motion is filed Defendants produce the documents they originally said there was no basis to produce. Defendants then allege that the very motion they forced was baseless. If Defendants had provided some of the information it provided the Court to the Plaintiff, perhaps part of the motion could have been obviated as described below.

The Plaintiff was justified in seeking the following documents for the following reasons:

- Request #2 - the resumes. The first time Defendants explained Pam Charron did not keep a resume is in the Defendants' opposition. If Defendants had indicated that in its original response or at any time before the motion was filed, then all Defendants would be required to do is supplement the response indicating that fact and Plaintiff would not have had to file the motion. Instead, Defendants now say to the Court that a current resume does exist and produced it after it filed the motion

1 Defendants also allege that no Rule 37 attempt was made to resolve these issues. The Defendants are wrong. The attorneys discussed the documents requested by Plaintiff to Pam Charron. The only items that Defendants indicated it would produce are a sampling of the documents requested in #s 8 and 9. Significantly, there was no offer of compromise on any of the other requests. Accordingly, Plaintiff's only option was to file the motion if she sought a full response to the other requests and more than a sampling of documents in response to #s 8 and 9.

for attorneys' fees. By producing the resume, Defendants are acknowledging that it could have been produced in advance of the motion obviating the opposition and motion on that point.2 That is obviously no fault of the Plaintiff. If Defendants supplement the Response to #2 accordingly, then Plaintiff is now satisfied.

- Request #3 – job descriptions. Defendants referred Plaintiff to the personnel file which contains evaluations that have a page in them that lists Charron's duties and responsibilities. However, these documents do not represent her duties and responsibilities for the time period that she was at Cherry Hill. Plaintiff asked for job descriptions pre-Life Care, and also was interested in having any job descriptions that existed outside of the evaluations (those did exist for Plaintiff herself). Defendant has never explained if these documents exist and if so, why Plaintiff is not entitled to them.
- Request #6 – Charron's Notes. Defendant states that there are no such documents. If this is the case, then the response needs to be updated not just as it relates to Barbara Antonucci but as it relates to the entire request (which is broader).
- Requests #8 and 9 – schedules from Evergreen. One of the things that can be done with these documents is compare them to each other to determine how many openings there are on a shift that the scheduler has to fill. Part of Plaintiff's burden in this case is to produce evidence of similarly-situated persons who were treated differently than Plaintiff. Obviously the performance of a person performing the same job as Plaintiff, for the same supervisor who disciplined Plaintiff and comparing the discipline, if any, is relevant. These documents, among other things, would allow Plaintiff to look at how many openings there were that the scheduler had to fill. Along with other documents that have been requested and obtained, Plaintiff would be able to put together this information.3
- Request #10 – Evergreen bonus documents. The amounts of the bonuses are still relevant even if the only argument Defendant makes is that Plaintiff over relied on the bonuses. It is difficult to imagine how it would not be helpful if the person

---

2 Plaintiff notes that Defendant was supposed to call Plaintiff regarding a "global settlement" of discovery issues on Monday, May 7 (before the opposition was prepared). Defendants never did so.

3 Although Defendant indicated it would provide a "representative sampling" similar to what was provided from the Raynham facility, Plaintiff believed she was entitled to more than three months. Charron was employed at Evergreen after Cherry Hill in the same position, as DON. In addition, Charron ended up only working there a short period of time. Plaintiff would have been willing to take something more than three months but less than the entire period, but that was not Defendant's offer.

With respect to Requests #16 and #34, Plaintiff discussed with Defendants both of these requests at the time of the original motion to compel (in January and February 2007) pursuant to Rule 37. Defendants identified the work-product profile, but maintained it was privileged. Defendants indicated only a current staff list could be produced. Plaintiff was still unsatisfied with both of these responses.

performing the same job for the same supervisor at Evergreen was using bonus dollars that exceeded Plaintiff's numbers and was not disciplined for it.

- Request #11- surveys. Plaintiff did in fact issue a subpoena for these documents in order to determine if they could be obtained without Defendants involvement. Defendants never explained (until the filing of this motion) why they would not produce the documents. Since the motion was filed, the documents were received.

Accordingly, it is clear that the motion had a purpose and still has a purpose. Not only should Defendants be directed to produce the remaining documents, but if there are none or they have already been produced then Plaintiff is entitled to a supplemental pleading in that regard that reflects the information provided to the Court.

*Basis for Moving to Compel Documents from Defendant Life Care*

Defendant does not allege that Plaintiff had no basis to file the motion with respect to Request #16. It could make no such argument since Plaintiff clearly has a basis to determine if the work-force profile is truly non-discoverable due to the work-product doctrine, especially since Defendants have constantly taken the position that they employ older persons and will likely have to rely on this document.[4] If necessary, the Court should examine this document <u>in camera</u>.

Defendants allege that they have done all they can with regard to staffing lists from January 2004 to December 2005. For this time period, Plaintiff has a list of those hired (with no ages) and a list of those fired (with no position). Accordingly, only if the person was fired can Plaintiff determine the employee's age. If they were employed throughout the time period January 2004 to December 2005 and fired between March 2007 and the present, Plaintiff will not have their age. According to Madeline Horner, a recent deponent, documents can be obtained from ADP with all of the necessary information – age, name, date of hire, date of termination (if applicable) and

4 Since Defendants allege they cannot go back in time to determine the names, ages, and positions held by employees at any given time, this document, generated to determine the workforce profile at the critical time period is a critical document that cannot be recreated.

position. Accordingly, Plaintiff had a basis to ask if the document could be created – and it was confirmed by Horner that it could be done.

*Plaintiff's Response to Defendants' Other Allegations*

Defendant alleges that Plaintiff's actions throughout the litigation have been worthy of sanctions. Because of the serious nature of these allegations, Plaintiff's attorneys feel compelled to respond point by point. In doing so, Plaintiff notes that it is Defendants, and not the Plaintiff who has the incentive to be overly litigious and have in fact done so. At all times, Plaintiff has been working diligently to get straight answers and responses from Defendants, despite the fact that it is Defendants who have made that job extremely and unnecessarily difficult.

Defendants state the remand was unjustified. However, Plaintiff also filed a motion to remand in a companion age-discrimination case involving Plaintiff Irene Ferruccio, who named the same Defendants. That motion was granted by Magistrate Almond who concluded that Life Care had not proven that removal was appropriate, for a variety of reasons. Accordingly, Plaintiff certainly had a basis to file the same motion in this case. It was only after Defendants provided additional information to this Court, that the Court denied Plaintiff's motion for remand in this case. That information had not been previously provided to Plaintiff and once it was provided, Plaintiff agreed that the Ferruccio case should also be re-removed. Significantly, Defendants never moved for attorneys' fees and costs at that time.

Plaintiff did not unreasonably delay her deposition. The initial date was chosen by Defendants unilaterally. As is the case in many situations, it conflicted with a brief that was due in the First Circuit. Accordingly, Plaintiff's counsel asked for more time and Defendants agreed to provide it. At no time did Defendants indicate that the re-scheduling was a problem until now. Defendants' current position is especially surprising since Plaintiff has had to notice depositions



Case 1:06-cv-00108-ML-DLM Document 47 Filed 05/13/2007 Page 7 of 15

multiple times throughout discovery period because of Defense counsel's schedule or problems with Defendants' witnesses. For example, Defendant Steve Haase cancelled his deposition last minute (two days before it was scheduled for on February 13) and Defendants never gave Plaintiff another date for Haase until April 30, over two months later. Witness Joe Pereira's deposition was noticed for February 13,[5] and Defendants never made him available until May 3, nearly three months later. Pam Charron's deposition was noticed multiple times. Defendants ultimately agreed to February 26, but Plaintiff still did not have outstanding discovery, forcing Plaintiff to cancel since Defendants position was that they would not bring her back after further discovery was produced. Finally, Defendants agreed to April 6 for Charron's deposition but then said defense counsel could only stay until 4 p.m. This again, put Plaintiff in an impossible position since Defendants would refuse to allow her to come back if Plaintiff did not finish and would have required Plaintiff to start at 9 a.m. and take not a single break to finish the seven hours in one day and by 4 p.m. Accordingly, Plaintiff was forced to re-notice the Charron deposition for April 11 when it finally took place.[6]

During the final weeks of discovery, Plaintiff noticed the depositions of Celeste Harris,[7] Kate O'Connor and Deb Morang. Defendants refused to agree to any dates for these three

---

5 Pereira was originally noticed for 2/13, but when he was not available, Plaintiff noticed Steve Haase instead.

6 Defendants also allege that Plaintiff's counsel was needlessly combative during Pam Charron's deposition. The transcript speaks for itself and does show that it was defense counsel, not Plaintiff's counsel, whose constant interruptions, attempts at testifying, and inappropriate objections were the root of the problems at Pam Charron's deposition. In all events, it was the witness whose child-care obligations curtailed the deposition before the seven hours elapsed. Plaintiff had no problem accommodating that, but does insist that she return to finish.

7 Plaintiff had previously noticed Celeste Harris for March 23, but again, since no supplemental discovery had yet been provided, Plaintiff was compelled to cancel it and re-notice it for a time after the discovery was received.

witnesses, despite the fact that Plaintiff had given Defendants eight dates on which they sought to take depositions in April and May as early as April 13.[8]

Defendants also argue that Plaintiff unreasonably left the first day of her deposition. This is a total mischaracterization of events. As Plaintiff previously memorialized in a letter following the deposition to Defendants, defense counsel and Plaintiff's counsel had an off-the-record discussion at approximately 2:30 p.m. at which defense counsel agreed that the deposition could not be finished during that day and would question the witness on about one more document. See Exhibit A. Then, when the parties got back on the record, defense counsel acted as if this conversation had never occurred. Since Plaintiff had been testifying for several hours (9:30 a.m. to 2:30 p.m.) and was tired, Plaintiff insisted on sticking to the agreement. Plaintiff also had no problem promptly returning for Defendants to finish on a second day. Plaintiff has no idea what cost was incurred in having to conduct the deposition on two days and notes that it was Defendant who informed Plaintiff that he did not have all of the documents he wished to question Plaintiff about and accordingly, Defendants could not have finished in one day in all events.

It is also important to note that Defendant delayed its own discovery responses to Plaintiff, issued in October, until early December. When they finally responded, Defendants' objected to the majority of interrogatories (forcing Plaintiff to seek court intervention which ultimately produced a supplemental set of interrogatory answers) and produced only a small handful of

---

8 Defendants also note that Plaintiff noticed two depositions on the same date, which is somehow a problem. That was done because Plaintiff anticipated that Defendants might not make one or both of the witnesses available. Plaintiff was right, Defendants refused to make either witness available. In addition, Plaintiff noticed a deposition to take place on the same date as a settlement conference in the Ferruccio case. The notice (for Celeste Harris for the second time) was for 10 a.m. and the conference was at 2 p.m. Plaintiff has two attorneys that could split up this work. Defendants have an entire law firm behind them that surely has sufficient resources to do the same. Despite this, Defendants refused to produce Celeste Harris.

documents objecting to the majority of requests. This resulted in Plaintiff not getting a "complete" set of responses to the interrogatories and documents until April 2007, nearly seven months after the requests were issued.

In addition, when Defendants produced its initial response it came with only a handful of documents and indicated for the first time that in order to get the remaining documents, Plaintiff had to agree to a confidentiality order. Plaintiff had no problem doing so, but had Defendants raised the issue before December, it would have allowed Plaintiff to get the documents earlier and begin meaningful depositions.9 This was especially difficult situation since Defendants had produced no documents in its Rule 26 Initial Disclosure.

Significantly, although Plaintiff began Rule 37 discussions regarding Defendants initial discovery responses on or about January 15, Defendants never indicated (for the document request) with the exception of a single request, what documents, if any, it would produce as supplemental discovery until just prior to the hearing held on March 21. This resulted in a significant amount of time being wasted by Defendants' delay. This was especially troubling

---

9 It is very difficult for any Plaintiff to take depositions without all of the necessary documents. In most cases, if the Defendant agrees to allow witnesses to come back if more responsive documents are produced, it is typically not fatal. In this case, however, defense counsel insisted that all depositions be finished within the seven hours and one day provided by the federal rules. Accordingly, if Plaintiff did not have all the documents it put her in the impossible situation of not being able to take depositions or to take the deposition knowing that if she needed to have a witness back, she would be forced to file a motion. This also would not have been a huge problem if Defendants had fully complied and produced any documents with their Rule 26 initial disclosure.

Defendants also point out that the subpoena issued to Santeen was unreasonable because it was issued only several days prior to her deposition. Plaintiff was forced to do this since Defendants still had not produced responsive documents that were necessary for use during Santeen's deposition. Knowing that there were quite a few depositions to be taken, Plaintiff was forced to start taking at least some of them (Donna Sweeting and Rebecca Santeen) in early February even without the supplemental documents and interrogatories.

since Defendants then turned around and basically agreed to produce or supplement the majority of interrogatories and requests Plaintiff originally sought and the Court ordered Defendants to supplement on others.

Finally, because Plaintiff has been unable to finish the deposition of Pam Charron, and unable to take the remaining three depositions that is sought to take prior to the closure of the discovery period, Plaintiff was forced to issue some final discovery requests before the closure date. However, these requests are in sharp contrast to the interrogatories issued to Plaintiff which concern questions that Defendants already have the answers to from Plaintiff's deposition and/or should have been asked since Defendants chose to conclude the deposition short of seven hours and never asked Plaintiff to come back for a third time.

### *III. Conclusion.*

Based on the foregoing, it should be clear that both parties take vastly different views of much of the travel of this litigation. Despite this, there is no basis for an award of attorneys' fees because the situations Defendants claim issue with have been caused by their own behavior and any further discussion is a waste of the Court's time. At this point, once the remaining discovery issues are resolved both parties are better served by focusing on summary judgment, and not each other. Plaintiff respectfully requests that Defendants' motion be denied.

Plaintiff,
By her attorneys,

/s/ Carly Beauvais Iafrate

Patricia E. Andrews, #4321
Carly Beauvais Iafrate, #6343
129 Dyer Street
Providence, Rhode Island 02903
(401) 421-0966
(401) 421-0964 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on this 13th day of May 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Christopher J. Campbell, Esq.
campbelc@jacksonlewis.com

/s/ Carly Beauvais Iafrate

**EXHIBIT A**

Case 1:06-cv-00108-ML-DLM Document 47 Filed 05/13/2007 Page 13 of 15

*Law Office of*

Patricia E. Andrews

129 Dyer Street • Providence, Rhode Island 02903
Tel. 401-421-0966 • Fax 401-421-0964
E-mail Addresses: PEAndrews@verizon.net & Clafrate@verizon.net

*Admitted in RI and D.C.*

*Of Counsel*
Carly B. Iafrate
*Admitted in RI*

Case 1:06-cv-00108-ML-DLM Document 47 Filed 05/13/2007 Page 14 of 15

January 12, 2007

Christopher J. Campbell
Jackson Lewis, LLP
75 Park Plaza
Boston, MA 02116

*Re: Antonucci v. Cherry Hill, C.A. No. 06-108ML*

Dear Chris:

I was not in the office yesterday. However, I did receive two faxes this morning, one dated January 10 and one dated January 11. They both appear to have been faxed on January 11.

There are two issues raised by these letters. The first issue relates to your initial response to Plaintiff's Interrogatories. As you know, I had sent you a Rule 37 letter on January 5 and asked if we could discuss the issues within a week, so that I could determine, which, if any answers, you were willing to supplement. Then, I could determine, which, if any, answers we would need to have reviewed by the Court. I did not hear from you. When we met at Plaintiff's deposition on the 9th, I asked you if we could pick a mutually convenient time to discuss my letter over the phone. You refused to pick a time, but said we could talk sometime after the deposition. I then received your fax (this morning) claiming that you would be available at 11 a.m. yesterday to discuss the interrogatories and another fax (this morning) claiming that since I did not speak with you yesterday at 11 a.m. you would be presenting your supplement irrespective of a conversation. I do not appreciate you selecting an arbitrary time to discuss these issues. I was not even in the office yesterday. I am requesting that we have a Rule 37 conversation, in good faith, prior to you supplementing the interrogatories, unless you plan to supplement with everything I requested. I believe this makes sense because if you supplement the interrogatories without this discussion, we will end up before the Court not having a meaningful discussion which is a waste of everyone's time. I would be glad to talk to you about times where both of us are available to talk.

The second problem I have is with exactly what I anticipated you would do - mischaracterize the events that led to the end of the deposition. The record speaks for itself and I will not go into this event in great detail. However, I will make a few points. First, we had a discussion off the record during which started when I asked you about how much longer you had. You agreed you would not finish in one day, and that you would go through about one more document. This was a very friendly exchange and a typical exchange to have after my client had been testifying since 9:30 a.m., and it was approximately 2:30 p.m. She was tired and the reason I had asked you about how long you would go, was to get an idea of whether we should try to finish up quickly, or if it made sense to come back for another day. You seemed fine with my suggestion to suspend and come back another day. This was not a unilateral decision.

It was only after we were on the record, after having gone through a few additional documents, that you suddenly expressed surprise at my indication that the deposition would be suspended. What you said and did after that speaks for itself. It was unwarranted for several reasons. In all events, there is no additional expense of you having to come back to Providence to depose Ms. Antonucci. You have a Providence office, this is a Rhode Island case, and I can't imagine what costs you would incur other than what you would otherwise incur. It is a certainty that you would have had to return for a second session since there were additional documents outstanding, and I had a significant amount of questioning to do, as I indicated. There was no way the deposition was going to be concluded by 4 or 4:30 as you indicated.

Chris, I do not think that any of this is necessary. We have a case to work on together over the next few months. It does not make sense to have it be the kind of case where you are constantly trying to portray me as unreasonable, when it is belied by the facts. I would appreciate it if we could work at this together in a non-hostile manner without wasting each other's time. I am in Newport Superior Court most of the day today. I will call you on Monday in the hopes that we can have a conversation about the status of discovery including my Rule 37 letter, deposition dates for your clients and Ms. Antonucci.

I would very much appreciate your courtesy in this regard.

Very truly yours,

Carly Beauvais Iafrate