UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BARBARA ANTONUCCI, Plaintiff, v. LIFE CARE CENTERS OF AMERICA, INC., PAMELA CHARRON, in her personal and official capacity, and STEVE HAASE, in his personal and official capacity, Defendants. | C.A. No. 06-108-ML |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Life Care Centers of America, Inc. ("Life Care"), Pamela Charron, and Steve Haase (collectively "Defendants"), hereby move pursuant to Fed. R. Civ. P. 56 for summary judgment on Plaintiff's First Amended Complaint on the grounds that there are no material facts in dispute and Defendants are entitled to judgment as a matter of law. In support of their motion, Defendants submit the attached Memorandum In Support Of Defendants' Motion for Summary Judgment, Defendant's Rule 56 Statement Of Undisputed Facts, the Affidavit Of Christopher J. Campbell and the Affidavit of Madeline Horner.

Respectfully submitted,
Defendants,
LIFE CARE CENTERS OF AMERICA, INC.,
PAMELA CHARRON and
STEVE HAASE,
By their attorneys,

/s/ Christopher J. Campbell
Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

DATE: June 28, 2007

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on June 28, 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Patricia E. Andrews, Esquire
peandrews@verizon.net

and

Carly B. Iafrate, Esquire
ciafrate@verizon.net

/s/ Christopher J. Campbell
Jackson Lewis LLP

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BARBARA ANTONUCCI,<br>Plaintiff,<br><br>v.<br><br>LIFE CARE CENTERS OF AMERICA, INC.,<br>PAMELA CHARRON, in her personal and official capacity, and<br>STEVE HAASE, in his personal and official capacity,<br>Defendants. | C.A. No. 06-108-ML |

**MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Life Care Centers Of America ("Life Care"), Pamela Charron, and Steve Haase (collectively "Defendants"), submit this Memorandum in support of their Motion for Summary Judgment. Defendants also submit the Affidavits of Madeline Horner and Christopher J. Campbell, and Defendants' Rule 56 Statement of Undisputed Facts.

**INTRODUCTION and SUMMARY OF ARGUMENT**

This case is a straight-forward discharge claim in which a Scheduler for a nursing home was discharged for unsatisfactory job performance. Prior to her discharge, Plaintiff had been repeatedly counseled by Defendant Pamela Charron that the manner in which she was performing her job was not acceptable and needed to change. Plaintiff has claimed that her discharge was a result of age discrimination in violation of the Rhode Island Fair Employment Practices Act – R.I. Gen. Laws §28-5-1 et seq. (Count I); and the Rhode Island Civil Rights Act – R.I. Gen. Laws §42-112-1 et seq. (Count II).

As set forth more fully below, Defendants are entitled to summary judgment, because based on the undisputed facts, Plaintiff is unable to demonstrate that the reason for her discharge

– unsatisfactory performance – was pretextual. On the contrary, Plaintiff concedes that her performance had been addressed by Ms. Charron during the two month period that Ms. Charron supervised Plaintiff – both orally and in a detailed written Action Plan setting forth specific areas of needed improvement. Moreover, Plaintiff concedes that her discharge on October 4, 2004, was directly prompted by her submission of a weekend staffing schedule with a significant number of unfilled shifts. While Plaintiff steadfastly clings to her assertion that her performance did not warrant discipline or discharge, she fails to raise any material issue of fact as to whether *Defendants* believed that Plaintiff's performance was unsatisfactory. At bottom, Defendants are entitled to summary judgment, because there is no legitimate dispute between the parties that it was Defendants' assessment of Plaintiff's performance that resulted in the decision to terminate Plaintiff's employment.

Moreover, Plaintiff has not produced a shred of evidence that her age played any role the discharge decision. There are no age-related statements. There is no pattern of adverse treatment. There is no statistical evidence that would suggest age discrimination. Indeed, Plaintiff's claim that her age (and not her performance) was the cause of her discharge rests on nothing more than Plaintiff's unsupported speculation as to Defendants' motivation. As a result, as set forth more fully below, Defendants are entitled to summary judgment on Plaintiff's First Amended Complaint.

## ARGUMENT

### A. SUMMARY JUDGMENT SHOULD ENTER FOR DEFENDANTS BECAUSE THERE ARE NO MATERIAL FACTS IN DISPUTE AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-252 (1986).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence might be produced at trial. On issues where the non-movant bears the burden of proof, he or she must present definite, competent evidence to rebut the motion. See Anderson, 477 U.S. at 256-257; Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) ("'As to issues on which the summary judgment target bears the ultimate burden of proof, [he or she] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'" (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). This evidence "cannot be conjectural or problematic; it must have substance in that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

"Even in employment discrimination cases 'where elusive concepts such as motive or intent are at issue,'" summary judgment is appropriate where the party opposing judgment "rests merely upon conclusory allegations, improbable inferences and unsupported speculation." Feliciano De La Cruz v. El Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000) (quoting Medina-

Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 47 (1st Cir. 2002) (finding summary judgment for employer appropriate when plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred.").

**B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND II OF PLAINTIFF'S AMENDED COMPLAINT, BECAUSE PLAINTIFF HAS FAILED TO ESTABLISH THAT HER DISCHARGE WAS BASED ON AGE DISCRIMINATION**

Defendants are entitled to summary judgment on Counts I and II of Plaintiff's First Amended Complaint because, based upon the undisputed facts in the summary judgment record, Plaintiff is unable to establish that her discharge was based on age discrimination. Although Plaintiff has alleged age discrimination under both the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws §28-5-1 et seq. (Count I); and the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws §42-112-1 et seq. (Count II), the legal analysis under both of these statutes is "essentially identical" and follows the federal case law analyzing unlawful discrimination. Burdick v. Fuller Box Co., Inc., 2003 U.S. Dist. LEXIS 12932 at * 5 (D.R.I. July 16, 2003) (analysis under FEPA, RICRA and ADEA is essentially identical). Accordingly, Plaintiff's claims under Counts I and II are analyzed together.

Because Plaintiff has failed to allege any direct evidence of age discrimination, her claim is properly analyzed using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973). See Bartlett v. American Power Conversion Corp., 2006 U.S. Dist. LEXIS 72294 at * 12 (D.R.I. September 20, 2006)(delineating analysis of employment discrimination claim based on circumstantial evidence).

As set forth below, assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination, Defendants are nonetheless entitled to summary judgment, because they have

articulated a legitimate reason for Plaintiff's discharge, and Plaintiff has presented no evidence that the reason was pretextual. Rather, Plaintiff's claim rests on conclusory and legally irrelevant assertions that her performance did not warrant criticism. In addition, Defendants are entitled to summary judgment for the additional reason that Plaintiff has failed to allege any evidence that would allow a finding that age discrimination was the reason for Plaintiff's discharge.

### 1. Defendants Have Established That Plaintiff's Discharge Was A Result Of Ongoing Dissatisfaction With Plaintiff's Employment, And Plaintiff Has Failed To Demonstrate That The Articulated Reason Is Pretextual

Assuming *arguendo* that Plaintiff can establish a *prima facie* case of age discrimination, Defendants have rebutted any presumption of discrimination by articulating a legitimate, non-discriminatory reason for Plaintiff's discharge – Plaintiff's unsatisfactory performance. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The First Circuit has explained the employer's burden as follows:

> The defendant's burden to 'articulate' a legitimate reason is not a burden to persuade the court that he was in fact motivated by that reason and not by a discriminatory one. Rather, it is a burden of production -- i.e., a burden to articulate or state a valid reason . . . The defendant can accomplish this by introducing admissible evidence which would allow the trier of facts rationally to conclude that the employment decision had not been motivated by a discriminatory animus.

Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir.), cert. denied, 469 U.S. 1018 (1984) (citations omitted, emphasis original). In the instant case, Defendants have more than met their burden of demonstrating that Defendants disciplined Plaintiff and ultimately discharged Plaintiff, based on their concerns regarding Plaintiff's performance. The undisputed facts establish the following:

Prior to Ms. Charron commencing as Director of Nursing Services ("DNS"), Plaintiff had been warned for insubordinate and disrespectful behavior by the prior DNS, Celeste Harris.

(Defendants' Rule 56 Statement of Undisputed Facts ("DSOF") ¶¶ 22-23). Within the first week or two of Ms. Charron commencing as DNS, Ms. Charron and Plaintiff clashed over Ms. Charron's directive that Plaintiff update the monthly schedule. (DSOF ¶ 30). Thereafter, Ms. Charron had ongoing discussions with Plaintiff regarding her concerns about Plaintiff's efforts in filling vacancies on the schedule. In particular, Ms. Charron addressed her concerns with the number of telephone calls Plaintiff was making to get staff to fill open shifts on the daily nursing schedules. (DSOF ¶¶ 33-34). Ms. Charron also addressed the need for Plaintiff to be less reliant on bonus dollars in filling the vacancies. (DSOF ¶ 37).

On August 23, 2004, as a result of concerns that Plaintiff would not comply with Ms. Charron's workplace directives, Ms. Charron and the Executive Director, Steve Haase, met with Plaintiff to clearly set forth Ms. Charron's expectations. (DSOF ¶¶ 38-39). Plaintiff was provided a detailed written Action Plan, setting forth particular areas in which Ms. Charron sought for Plaintiff to improve, including:

1. Will complete and maintain nursing monthly scheduling
2. Will not ignore requests by DNS
3. Will F/U [follow up] + complete duties as assigned
4. Review + sign updated job description (DSOF ¶ 39).

Following the Action Plan, Ms. Charron sent Plaintiff for training with a Scheduler at another Life Care facility, in order to have Plaintiff observe the manner in which the other Scheduler performed her position. (DSOF ¶ 41) Thereafter, the Scheduler reported to Ms. Charron that Plaintiff was unreceptive to suggestions, and she further reported that Plaintiff had expressed her unwillingness to make repeated telephone calls to employees to fill open shifts. (DSOF ¶ 43).

Ultimately, Plaintiff's discharge was a direct result of her work on a weekend schedule for October 2-3, 2004. (DSOF ¶¶ 51-53). In particular, at approximately 2 pm on Friday, October 1, 2004, Plaintiff provided Ms. Charron with a weekend schedule that contained a significant number of unfilled shifts, and indicated that she had done what she could do to fill the schedule. (DSOF ¶ 46). Ms. Charron had previously told Plaintiff that she needed to leave early that day in order to attend a funeral with the Executive Director, Steve Haase. (DSOF ¶ 45). As a result of the absences on the schedule, Ms. Charron completed the work on the schedule herself, causing her to miss the funeral. (DSOF ¶ 46). Ms. Charron, together with the assistance of one or two other employees, was able to fill the vacancies on the schedule. (DSOF ¶ 47).

Based on the events of October 1, 2004 – and in light of Plaintiff's prior record of performance deficiencies – Ms. Charron concluded that Plaintiff's performance was not acceptable. (DSOF ¶ 51). Ms. Charron consulted with her clinical supervisor, Joseph Pereira, and the Executive Director, Steve Haase, regarding her concerns as to Plaintiff's performance, and thereafter Defendants concluded that Plaintiff should be discharged from employment. (DSOF ¶ 51). As a result, on October 4, 2004, Plaintiff's employment was terminated. (DSOF ¶ 52).

Based on the foregoing, Defendants have met their burden of articulating a legitimate, non-discriminatory reason for Plaintiff's discharge. See, e.g., Benoit v. Technical Mfg. Corp., 331 F.3d 166, 174 (1st Cir. 2003)(persistent tardiness, frequent absences, and unwillingness to work cooperatively with supervisor is a legitimate, nondiscriminatory reason for employer's action); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20 (1st Cir. 1999) (unsatisfactory performance is a legitimate, nondiscriminatory reason for employer's action).

**2. Plaintiff Has Failed To Demonstrate That Defendants' Articulated Reason For Her Discharge Is Pretextual**

Once the employer articulates a legitimate nondiscriminatory basis for its decision, "the presumption of discrimination drops out of the picture." Zapata-Matos, 277 F. 3d at 45. At that point, the plaintiff must come forward with sufficient admissible evidence that the articulated reason was more likely than not a pretext for discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Alvarez-Fonseca v. Pepsi Cola of Puerto Rico, 152 F.3d 17, 25 (1st Cir. 1998), cert. denied, 526 U.S. 1123 (1999) (employee bears final burden to demonstrate that employer's explanation is false, and that the real reason behind the defendant's actions was discriminatory animus).

In assessing whether the employer's reason is a pretext, the court's "focus must be on the perception of the decision-maker," i.e., whether the employer believed its proffered reason to be credible. See Griel v. Franklin Med. Ctr., 234 F.3d 731, 732 (1st Cir. 2000) ("the ultimate issue in a discrimination case is whether the hospital's *reason* for discharging [the nurse] was because it *believed* that she was not a safe nurse") (emphasis in original). Accord Mesnick v. General Electric Co., 950 F.2d 816, 824 (1st Cir. 1991) cert. denied, 504 U.S. 985 (1992).

In the instant case, Plaintiff has provided no evidence that Ms. Charron's critical assessment regarding Plaintiff's performance is pretextual. On the contrary, Plaintiff concedes that Ms. Charron addressed Plaintiff's performance throughout the two-month period she supervised Plaintiff. (DSOF ¶ 68). Plaintiff also concedes that Ms. Charron reduced her performance-related concerns to a Written Action plan, and addressed those concerns with Plaintiff in a meeting on August 23, 2004 with Cherry Hill's Executive Director, Mr. Haase. (DSOF ¶ 68). Plaintiff also concedes that she had been previously warned for insubordinate and disrespectful behavior by the prior DNS. (DSOF ¶ 22).

More importantly, Plaintiff concedes that her discharge was a *direct result* of the schedule she provided to Ms. Charron on October 1, 2004. Plaintiff testified as follows:

Q. And would you agree with me [providing the schedule on October 1, 2004] was the event that led Pam Charron to discharge you.

A. It's hard to believe, but **I believe that that's the incident**, because she wanted to work on the staffing, I guess. I don't know. It just seems very unfair that staffing is bad for a week and she gets all bent out of shape about it, when she had all week to address it. (Pl. Tr. 293)(emphasis added).

In addition to explicitly acknowledging the event which precipitated her discharge, Plaintiff's "evidence" of pretext is limited to her subjective belief that her work performance did not warrant discharge and that Ms. Charron only supervised her for a relatively short period of time. (DSOF ¶ 68-69). It is well-settled, however, that an employee may not create an issue of pretext by simply questioning the fairness or rationality of an employer's decision. See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 12-13 (1st Cir. 2001) (recognizing that whether the employer's criticisms of plaintiff were fair "is beside the point so long as they were not [sex] motivated."); Feliciano de la Cruz, 218 F.3d at 8 ("even if rational trier of fact could infer . . . that [employer's] decision to fire [plaintiff] was 'unfair' (because she continued to perform her job well), that proof is insufficient to state a claim under Title VII."); Mesnick, 950 F.2d at 825 ("Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions."); Webber v. International Paper Co., 326 F.Supp.2d 160, 166 (D.Me. 2004) (in order to create a question of fact as to pretext, plaintiff must do more than discredit the rationale behind his selection for the reduction in force; he must generate a genuine dispute about the honesty of the company's assertion).

Similarly, any attempt by Plaintiff to compare her performance to other employees is simply misplaced. At the outset, courts have plainly recognized that that an "employee is not

permitted to substitute [her] own judgment as to [her] qualifications." Webber, 326 F. Supp. 2d at 168, citing Shorette v. Rite Aid of Me., Inc., 155 F. 3d 8, 15 (1st Cir. 1998)("It is well-settled . . . that a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions").

In addition, Plaintiff cannot establish pretext by claiming that her successor, Ms. Sweeting, was treated more favorably (i.e. that she had difficulty scheduling employees but was not disciplined or discharged), because – unlike Plaintiff – Ms. Sweeting did not have a history of performance issues. (DSOF ¶ 67). In contrast, it is undisputed that Ms. Charron had discussions with Plaintiff regarding her performance, and that Plaintiff received a written warning for insubordination and a written Action Plan with multiple tasks identified that needed improvement. (DSOF ¶¶ 22, 30, 33, 37, 39, 68). In addition, even if Plaintiff could establish that Ms. Sweeting had difficulty filling the schedule, there no evidence that Ms Sweeting presented Ms. Charron with a schedule with approximately 20 unfilled slots on a Friday afternoon. It is fundamental "that '[a] claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects.'" Rodriguez-Cuervos, 181 F.3d at 20-21 (citations omitted). See also Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) cert denied, 514 U.S. 1108 (1995) (recognizing that employees cannot be characterized as similarly situated if there are "differentiating or mitigating circumstances that would distinguish their situations."); Perkins c. Brigham & Women's Hosp. 78 F. 3d 747, 751 (1st Cir. 1996)(holding that the individuals with whom plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the employer's treatment of

them); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) (plaintiff cannot establish pretext based upon disparate treatment unless plaintiff can prove that persons similarly situated "*in all relevant aspects were treated differently*") (emphasis added). In the instant case, Plaintiff's disciplinary history, combined with the particular circumstances of October 1, 2004 (i.e. presenting a schedule with significant vacancies, late in the afternoon, without sufficient prior notice on a day when Ms. Charron was scheduled to attend a funeral) obviate any attempt by Plaintiff to compare herself to Ms. Sweeting. By the same token, any attempt by Plaintiff to compare herself to Rebecca Santin, the Scheduler with whom she trained, is also misplaced, because Ms. Santin did not have a documented history of performance problems. (DSOF ¶ 41).

In addition, the reason articulated for Plaintiff's discharge is consistent with the concerns expressed by Ms. Charron throughout her supervision of Plaintiff's employment *and before*, and with the testimony elicited during discovery. See Webber, 326 F. Supp. 2d at 168 (plaintiff failed to create an issue of fact, where the employer's articulated reasons for discharge were consistent throughout the case). In particular, there is copious evidence in the record that Defendants were concerned that Plaintiff was unwilling to perform her position in accordance with the wishes of her supervisor. Prior to Ms. Charron, Ms. Harris was required to give Plaintiff a written warning for insubordinate behavior. (DSOF ¶¶ 22-23). Ms. Charron had to counsel Plaintiff to update the Master Schedule within a week or two of commencing supervision of Plaintiff, and then had to further counsel Plaintiff regarding the number of calls Plaintiff was making, as well as Plaintiff's tendency to be over-reliant on bonus payments. (DSOF ¶¶ 22, 30, 33, 37, 39, 68). In the August 23, 2004 Action Plan, Ms. Charron specifically noted that Plaintiff was required to comply with requests from her superior, and that she was to follow through on

completing the requests. (DSOF ¶¶ 38-39). Each of these facts is consistent with the reason given for Plaintiff's discharge – unsatisfactory performance.

Moreover, Ms. Charron's concern regarding the manner in which Plaintiff performed her duties is consistent with other record evidence. For instance, Plaintiff told at least one other employee (Rebecca Santin) that Plaintiff would *not* call individuals on multiple occasions, despite the need to do so. (DSOF ¶ 43). Mr. Haase and Ms. Sweeting also testified as to Plaintiff's resistance to aggressively making telephone calls to fill open shifts. (DSOF ¶¶ 35, 51). As a result, Plaintiff has failed to demonstrate pretext, because the record evidence is fully consistent with the reason articulated for Plaintiff's discharge. Zapata-Matos, 277 F. 3d at 47 (no finding of pretext where testimony at deposition, and documents and statements made at termination were not contradictory and were consistent with reason for discharge).

Plaintiff also attempts to attack Defendants' legitimate, non-discriminatory reason, by claiming that she never exhibited the performance deficiencies for which she was warned (i.e. refusing to comply with Ms. Charron's directives). Plaintiff's suspect denials, however, do not create a dispute of fact as to whether the expressed concerns were pretextual. Hoeppner v. Crotched Mountain Rehabilitation Center, 31 F. 3d 9, 17 (1st Cir. 1994).

In Hoeppner, the plaintiff, a classroom teacher, was provided a written counseling, placed on probation, and ultimately discharged, because of difficulties in managing her classroom, and because of complaints from the Teaching Assistants ("TAs") assigned to her classroom. 31 F. 3d at 11. Thereafter, the plaintiff alleged that her discharge was a result of complaints she had made regarding sexual harassment. Id. In support of her claim, the plaintiff provided evidence that she was a good teacher and that she did not have problems in her classroom or with TAs – or at least that any such problems were a result of the TAs' misconduct. Id., at 17. Thus, the plaintiff

argued, the problems alleged were not only "untruthful and inaccurate but also fabricated." Id. In upholding summary judgment for the defendant-school, the court held:

> As we have held on previous occasions, evidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question. [The plaintiff] cannot establish [the defendant's] reasons for discharging her were a pretext for impermissible retaliation solely by contesting the objective veracity of the employer's actions. Rather, [the plaintiff] must provide **some additional evidence to indicate that the complaints were purposefully fabricated** with the intent of [chilling plaintiff's sexual harassment complaints] (emphasis added)(internal quotations and citations omitted) Id.

Like the plaintiff in Hoeppner, Plaintiff's assertions that she never resisted Ms. Charron's directives are simply insufficient to establish a jury question as to whether Ms. Charron's discipline of Plaintiff was pretextual.

Second, even accepting *arguendo* that Plaintiff did not *directly* refuse to comply with Ms. Charron's directives to call employees more frequently, there is no dispute that Ms. Charron was informed of Plaintiff's intractable approach through conversations with others. For instance, Rebecca Santin told Ms. Charron that, during the training, Plaintiff made it clear that she would not call employees more than once. (DSOF ¶ 43). As a result, Plaintiff cannot create an issue of fact by simply denying the underlying conduct. Ronda-Perez v. Banco Bilboa, 404 F. 3d 42, 45 (1st Cir. 2005):

> While plaintiff denied the alleged misconduct, Frias deemed all his informants credible. The question is not whether plaintiff's or his fellow employees' version is the true one, but whether Frias and his superiors believed what he had been told by those he interviewed. See .... Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) ("[T]he issue is not whether [the employer's] reasons . . . were real, but merely whether the decisonmakers . . . believed them to be real."). **Plaintiff's plea that his denials establish triable issues of fact foreclosing summary judgment would, if accepted, spell the end of summary judgment."** (emphasis added).

Moreover, like the witnesses in Ronda Perez, there is no allegation here that Ms. Santin harbored a discriminatory motive or reason to fabricate Plaintiff's statements to her. Id. at 45-46

(noting that plaintiff did not assert any adverse motive or bias on the part of witnesses who provided evidence adverse to the plaintiff).

Plaintiff has also alleged that her failure to complete the October 2-3, 2004 schedule was not her fault, but was the result of a lack of nurses employed by the facility. (DSOF ¶ 53). At the outset, Plaintiff's excuse is unsupported, given that there is no record evidence that the ongoing shortage of nurses was particularly acute at that time (i.e. that there was a recent spate of resignations). Nonetheless, even accepting Plaintiff's assertions as accurate, she has still failed to demonstrate that the reason is pretextual, because there is no evidence calling into question *Ms. Charron's* belief that Plaintiff's performance warranted discharge. On the contrary, given that Ms. Charron was able to fill the schedule after receiving it from Plaintiff (DSOF ¶ 47), the undisputed evidence supports the legitimacy of Ms. Charron's belief. In any event, the objective merit of Ms. Charron's decision is simply irrelevant to the question of pretext. Rather, the "focus must be on the perception of the decision-maker, that is whether the employer believed its stated reason to be credible." Mesnick 950 F. 2d at 824. In the instant case, it is undisputed that Ms. Charron was upset when she saw the incomplete condition of the weekend schedule, and that Plaintiff's discharge was a direct result of the event. (DSOF ¶ 49-50). Accordingly, Plaintiff has clearly failed to meet her burden of demonstrating pretext, and summary judgment should be entered for Defendants on both counts of Plaintiff's First Amended Complaint.

**3. Defendants Are Entitled To Summary Judgment For The Independent Reason The Plaintiff Has Failed To Provide Any Evidence That Age Discrimination Played A Role In Her Discharge From Employment**

In addition to her failure to demonstrate pretext, Plaintiff has not demonstrated any evidence that age animus was a factor in the termination decision. Case law in the First Circuit clearly establishes that, to survive a motion for summary judgment, the plaintiff must point to specific evidence in the summary judgment record that establishes that the employer's reason is a

pretext *for discrimination.* "A plaintiff must offer some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn Rule 56 motion. In other words, a plaintiff must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." Bartlett v. American Power, 2006 U.S. Dist. LEXIS 72294 at * 16 (internal citations omitted).

Accordingly, even assuming *arguendo* that Plaintiff's claim as to her "excellent performance" (or denials of the conduct for which she was counseled) could allow some minimal showing of pretext, Plaintiff's must still come forward with specific evidence of age animus to avoid summary judgment. Feliciano, 218 F. 3d at 9 (upholding summary judgment for employer, despite showing of pretext, where the record was devoid of evidence that unlawful animus was the reason for plaintiff's discharge); Zapata - Matos, 277 F.3d at 47 (upholding summary judgment for employer appropriate when plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred").

In the instant case, Plaintiff has failed to identify any probative evidence of age discrimination. On the contrary, the undisputed facts indicate that Plaintiff's age was *not* a factor in her discharge. At the outset, the ages of employees compiled shortly after Plaintiff's discharge demonstrates that a majority of the employees at Cherry Hill were in the protected age category. (DSOF ¶ 56). In particular, of the 233 employees, 120 are over the age of 40 and only 113 are under the age of 40. Id. In addition, 13 of the then current employees were in their 60s. Id. Similarly, since Ms. Charron commenced as DNS in late July 2004, roughly equal numbers of employees over the age of 40 (approximately 11 out of 131) and under the age of 40 (approximately 9 out of 122) were involuntarily separated. (DSOF ¶ 57). Moreover, none of the

other employees aged 63 (Plaintiff's age at discharge) or *older* were discharged during this period. Id. Given this information, Plaintiff's claim that Defendants targeted her because of her age is unsupported.

Steve Haase's participation in Plaintiff's discharge is further evidence that Plaintiff's age did not play a role in her discharge from employment. As Plaintiff concedes, in the limited interactions Plaintiff had with Mr. Haase, he was generally pleasant to Plaintiff and never did anything that caused Plaintiff to conclude that Mr. Haase did not like her. (DSOF ¶ 61). Plaintiff also fails to allege that Mr. Haase made any age-related comments toward Plaintiff. Ultimately, Plaintiff concedes that she has "no idea" why Mr. Haase went along with the decision to terminate Plaintiff. (DSOF ¶ 63). In contrast, Mr. Haase testified that, consistent with the documentation, Plaintiff's discharge was a result of her poor performance. (DSOF ¶63).[1] At bottom, Plaintiff's failure to ascribe an unlawful motive to Mr. Haase is further evidence that her discharge was not a result of age discrimination.

Moreover, while Plaintiff claims that Ms. Charron was motivated by age, she fails to support her assertion with any evidence. For instance, Plaintiff does not claim that Ms. Charron ever made any comments that reflected age animus. (DSOF ¶¶ 58-59, 64-65). See Feliciano, 218 F. 3d at 9 (noting the absence of any discriminatory comments and granting summary judgment based on the lack of evidence of national origin discrimination). Similarly, Plaintiff fails to provide any evidence that Ms. Charron targeted older individuals or treated older individuals unfavorably, especially given that the number of involuntary discharges of younger

---

[1] Additionally, Plaintiff never complained to Mr. Haase (or anyone else at Life Care) that she was subjected to age discrimination, despite acknowledging that Mr. Haase was available to address employment-related concerns. (DSOF ¶ 62).

and older individuals was roughly equal during Ms. Charron's employment as DNS. Id. (noting absence of pattern of firing individuals in protected category).[2]

By the same token, the mere fact that Ms. Sweeting is younger than Plaintiff does not support an inference establish that Plaintiff's discharge for performance deficiencies was based on age. At the outset, replacement by a person outside of the protected category is generally only relevant to a *prima facie* case. See e.g. Bartlett v. American Power, at *13-14, 17 (while the fact that plaintiff's replacement was 30 years younger established plaintiff's *prima facie* case, it was not considered by this Court to be evidence that her discharge for insubordination was a pretext for age discrimination). In addition, the reasoned basis for offering Ms. Sweeting the position (i.e. that she was already performing the job on a per diem basis), obviates any inference of discrimination based on the difference in age between Ms. Sweeting and Plaintiff. See Zapata-Matos, 277 F. 3d at 46-47 (reasoned basis for non-Puerto Rican replacement did not allow a rational inference of discrimination).

Rather than set forth evidence of age discrimination, Plaintiff's claim is based on her conclusory allegations – "That's just what I feel…" – that Ms. Charron was friendlier toward Ms. Sweeting than she was toward Plaintiff. (DSOF ¶ 65). It is well-settled law, however, that an unsubstantiated "feeling" of discrimination is simply not competent evidence sufficient to survive summary judgment. Feliciano, 218 F. 3d at 5 (summary judgment is appropriate where the party opposing judgment "rests merely upon conclusory allegations, improbable inferences

---

[2] In addition, Ms. Charron's attempts to remedy Plaintiff's performance deficiencies, negate any inference of bias. For instance, Ms. Charron sent Plaintiff for training in order to improve Plaintiff's job performance. (DSOF ¶ 41). Ms. Charron also provided Plaintiff with a detailed written Action Plan explicitly setting forth Ms. Charron's expectations. (DSOF ¶ 39). If, as Plaintiff alleges, Ms. Charron sought to get rid of Plaintiff because of her age, Ms. Charron would not have exerted these efforts to assist Plaintiff in improving her performance.

and unsupported speculation.") Rather, "the evidence must permit a factfinder to reasonably infer that unlawful discrimination was a determinative factor in the employer's decision." Id., at 8. Cf. Alexis v. McDonalds, 67 F. 3d 341, 347 (1st Cir. 1995) (witness's conclusion that defendant was motivated by race was properly excluded from consideration at summary judgment because it lacked an evidentiary foundation for an inference of unlawful discrimination); O'Connell v. Bank of Boston, 924 F. 2d 1169, 177-1178 (1st Cir. 1991) (witness's opinion that plaintiff was subject to discrimination was not probative, because it was not supported by adequate evidentiary foundation).

At bottom, Plaintiff has failed to meet her burden of providing probative evidence that her age was considered by Defendants in her discharge. This constitutes a separate and independent reason for finding that Defendants are entitled to summary judgment on Counts I and II of Plaintiff's First Amended Complaint.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment on Counts I and II of Plaintiff's First Amended Complaint.

Respectfully submitted,

LIFE CARE CENTERS, INC.,
By its attorneys,

/s/ Christopher J. Campbell

Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

Dated: June 28, 2007

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically on June 28, 2007, and is available for viewing and downloading to the ECF registered counsel of record:

Via Electronic Service/ECF:

Patricia E. Andrews, Esquire
peandrews@verizon.net

and

Carly B. Iafrate, Esquire
ciafrate@verizon.net

/s/ Christopher J. Campbell
Jackson Lewis LLP