# EXHIBIT A

# Competency-Based Position Description and Performance Review
## STAFFING COORDINATOR or SCHEDULER

Life Care Centers of America

Associate: Barbara Antonucci
Department: Staffing (Nursing)
Date of Review: 3/4/07
Exemption Status: Nonexempt
Risk Exposure Category 3 = may not involve exposure to blood/body fluids

Date of Hire: 2/25/1986
Supervisor: Celeste Harris
Purpose: ☐ Upon Hire ☐ 90-day eval ☑ Annual ☐ Other: ________

### POSITION SUMMARY

*The* STAFFING COORDINATOR *is responsible for daily, weekly and monthly work schedules for the nursing staff in accordance with all laws, regulations and LCC standards. Reports to Director of Nursing.*

### WORKING CONDITIONS

- Works in office as well as throughout facility (i.e., resident rooms, therapy rooms, dietary).
- Sits, stands, bends, lifts and moves intermittently during working hours.
- Subject to frequent interruptions.
- Involved with residents, associates, visitors, government agencies/personnel, etc. under all conditions and circumstances.
- Subject to hostile and emotionally upset residents, family members, etc.
- Works beyond normal working hours, on weekends and in other positions temporarily as necessary.
- Subject to falls, burns from equipment, odors, etc., throughout the work day.
- Possible exposure to infectious waste, diseases, conditions, etc., including exposure to the AIDS and Hepatitis B viruses.

### EDUCATION and EXPERIENCE

- Must be a high school graduate or equivalent.
- Must have basic computer skills.
- Prior staff scheduling in healthcare preferred.

### SPECIFIC REQUIREMENTS

- Must be able to read, write, speak and understand the English language.
- Must possess the ability to make independent decisions when circumstances warrant such action.
- Must be knowledgeable of scheduling practices and procedures as well as the laws, regulations and guidelines governing staffing functions in the long-term care facility.
- Must work harmoniously with other staff.

### PHYSICAL and SENSORY REQUIREMENTS
*(with or without the aid of mechanical devices)*

- Must be able to move intermittently throughout the work day.
- Must be able to cope with the mental and emotional stress of the position.
- Must possess sight/hearing senses or use prosthetics that will enable these senses to function adequately so that the requirements of this position can be fully met.
- Must be in good general health and demonstrate emotional stability.
- Must be able to lift, push, pull or transfer a minimum of 20 lbs.
- Must be able to assist in the evacuation of residents.

# POSITION DESCRIPTION and PERFORMANCE REVIEW

*The ratings of this performance review are based upon the following criteria:*

Unsatisfactory (1 point) = *Performance needs improvement. Requires a performance improvement plan.*
Inconsistent/Marginal (2 points) = *Performance needs improvement. Requires more than normal supervision.*
Satisfactory (3 points) = *Performs skillfully on the standard. Requires normal amount of supervision.*
Good Role Model (4 points) = *Goes beyond expectations on occasion. Requires little or no supervision.*
Consistently Outstanding (5 points) = *Consistently goes beyond expectations. Requires little or no supervision.*

| PART ONE: CORE COMPETENCIES | Rating (1,2,3,4,5) | COMMENTS |
|---|---|---|
| **Life Care Mission/Values & Work Ethic** | | |
| 1. Supports Life Care's mission and values. | 4 | |
| 2. Displays integrity and professionalism by adhering to Life Care's code of conduct. | 3 | |
| 3. Demonstrates dependability. | 4 | |
| 4. Takes pride in work. | 5 | |
| | | Score = 16 divided by 4 = 4 |
| **Communication Skills** | | |
| 1. Communicates effectively and professionally both in writing and verbally with all types of personalities. | 3 | |
| 2. Answers questions thoroughly and timely. | 5 | |
| 3. Attentive listener. | 3 | |
| | | Score = 11 divided by 3 = 3.6 |
| **Problem-solving Skills** | | |
| 1. Demonstrates ability to solve problems independently. | 4 | |
| 2. Displays ability to self-correct quickly. | 5 | |
| 3. Solves problems fairly. | ~~4~~ 5 | |
| | | Score = 14 divided by 3 = 4.6 |
| **Attention to Detail** | | |
| 1. Maintains organized systems. | 4 | |
| 2. Meets deadlines. | 5 | |
| | | Score = 9 divided by 2 = 4.5 |
| **Customer Focus** | | |
| 1. Treats all staff and residents with dignity and respect. | 3 | |
| 2. Seeks to accommodate staffing needs of associates while not compromising resident care needs. | 4 | |
| | | |
| | | Score = 7 divided by 2 = 3.5 |

## PART TWO: RESPONSIBILITIES, STANDARDS and COMPETENCIES

*Below is a description of basic job activities though other related duties and activities may become necessary as directed by the department head or supervisor.*

| Scheduling Responsibilities | Rating (1,2,3,4,5) | COMMENTS |
|---|---|---|
| 1. Staffs facilities at levels determined by Director of Nursing. | 5 | ✓ |
| 2. Utilizes overtime and agency only when approved by Director of Nursing or Assistant Director of Nursing. | 5 | |
| 3. Prepares nursing schedules and modifies as needed. | 4 | ✓ |
| 4. Distributes revised schedules to appropriate associates and posts at designated areas. | 5 | |
| 5. Processes requests for shift changes. | 5 | |
| 6. Maintains nursing assistant sign-in sheets on a daily basis. | N/A | |
| 7. Distributes the next day's assignment before the end of the shift. | 5 | ✓ |
| 8. Maintains one to two weeks of scheduling at all times. | 5 | ✓ |
| 9. Recommends and utilizes most appropriate scheduling option (i.e., Baylor, 12-hour shifts). | 5 | |
| 10. Maintains attendance and tardy records for all nursing services. | 4 | |
| 11. Corrects mis-punches on clock-ins daily. | N/A | |
| 12. Reviews and approves timesheets at end of each pay period. | 5 | |
| 13. Makes necessary corrections to timesheets and returns to payroll clerk (including bonus pay, paid-time off, etc). | 5. | |
| 14. Notifies Director of Nursing of trends noted in time-clock punches. | 4 | |
| 15. Tabulates SNF, ICF and agency hours daily and provides reports to appropriate managers. | 5 | |
| 16. Maintains current nursing roster with current home, cell and pager numbers. | N/A | |
| 17. Maintains current certification and licenses for nursing staff. | N/A | |
| 18. Schedules driver when needed for resident's medical appointments. | N/A | |
| 19. Maintains in-service log for all nursing staff. | N/A | |
| | | Score = 62 divided by ~~19~~ 13 = 4.7 |

| Resident Rights | Rating | COMMENTS |
|---|---|---|
| 1. Maintains confidentiality of all resident information. | 5 | |
| 2. Respects resident's personal and property rights at all times. | 5 | |
| 3. Reviews scheduling complaints and grievances and makes verbal/written reports to the Director of Nursing. | 5 | |
| 4. Demonstrates a positive disposition when entering a resident's room and is willing to adjust schedule to meet the individual expectations or requests of the residents. | N/A | |
| | | Score = 15 divided by ~~4~~ 3 = 5 |

| Safety and Sanitation | Rating | COMMENTS |
|---|---|---|
| 1. Follows established safety and sanitation procedures and policies. | 4 | |
| 2. Maintains a clean, safe working environment. | 4 | |
| | | Score = 8 divided by 2 = 4 |

**TOTAL SCORE** *(add all averaged scores from previous page):* 33.9

Maximum Score = 40

*Sample Pay Adjustment Table*

| *Score* | *Increase* |
|---|---|
| Up to 20 | 0% |
| 21 to 25 | 1% |
| 26 to 30 | 2% |
| 31 to 35 | 3% |
| 36 to 40 | 4% |

***NOTE***: *Should an "Improvement Plan" be initiated, any wage adjustment may be delayed until the performance is fully improved (please see following page).*

## PERFORMANCE REVIEW SUMMARY

**Goals met and improvements made during review period:**

1) More cooperative w/ supervisor in meeting scheduling needs than previously noted
2)
3)

**Top Three (3) Strengths:**

1) Knows likes/dislikes of staff related schedule
2) Maintains documentation for monthly billing & agency tracking
3)

**Areas for Improvement:**

1) Could improve on being a bit more receptive to change at times
2)
3)

| Status of Improvement Plan (if applicable) | Follow-up Date |
|---|---|
| ☐ New performance improvement plan initiated with this review | ☐ Annual Performance Review<br>☐ 90-day from Review Date<br>☐ Other ___/___/___ |
| ☐ Performance improvement plan **in progress** -- initiated ___/___/___ | ___/___/___ |
| ☐ Performance improvement plan **completed successfully** in review period. | Completed ___/___/___ |

**Wage Impact?** ___Yes ___ No
*This improvement plan should delay any wage adjustment until the performance is fully improved (see follow-up date above) and documented in the personnel file.*

**Career Development Opportunities**

| Goal/Objective: | Measurement: | Target Date: ___/___/___ |
|---|---|---|
| Goal/Objective: | Measurement: | Target Date: ___/___/___ |
| Goal/Objective: | Measurement: | Target Date: ___/___/___ |

Associate Comments:

Associate's Signature [illegible signature] Date 3/8/04

Supervisor's Signature [illegible signature] Date 3/4/04

EXHIBIT B

3. Life Care objects to the interrogatories insofar as they seek information that is protected from discovery by the attorney-client privilege, the work product doctrine, or any other applicable privileges.

4. Life Care objects to the definitions included in the interrogatories to the extent they seek to impose a duty of response beyond that required by the Federal Rules of Civil Procedure. Life Care will respond consistent with the definitions and obligations contained in the Federal Rules.

**RESPONSES**

Subject to and incorporating by reference the foregoing general objections and definitions, Life Care responds to the individual interrogatories as follows:

**INTERROGATORY NO. 21**

If in your Answer to Plaintiff's complaint, you have denied anything set forth in the Plaintiff's complaint, please set forth all facts in support of your denials.

**ANSWER NO. 21**

Defendant objects to this interrogatory on the grounds that it is vague and ambiguous, overbroad, unduly burdensome and not calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory on the grounds that it appears to seek opinions and mental processes of Defendant's counsel at this early stage of the litigation before discovery has concluded, and before Plaintiff's deposition has been conducted.

**SUPPLEMENTAL ANSWER NO. 21**

Defendant further objects to this interrogatory on the grounds that it appears to seek opinions and mental processes of Defendant's counsel and on the grounds that Plaintiff's interrogatory improperly seeks to shift the burden of proof in this case to Defendant. The factual allegations in

Plaintiff's Complainant are conclusory and self-serving – e.g. Plaintiff's claim that similarly situated younger employees were treated more favorably. Consequently, Plaintiff's request that Defendant identify facts which support Defendant's denial is akin to requesting that Defendant "prove a negative." Plaintiff's request is especially absurd, given that Plaintiff was unable to identify any such employees with particularity at her deposition. As to Plaintiff's unsatisfactory employment, Defendant refers Plaintiff to Defendant's initial discovery responses, the information and documents referenced in this letter, and to the information provided by Plaintiff the first day of her deposition on January 9, 2007. Defendants reserve the right to supplement this response as further facts are discovered in the course of discovery in this matter.

**FURTHER SUPPLEMENTAL ANSWER NO. 21**

The Court has required that Defendant provide the reasons why Plaintiff was disciplined and discharged. To supplement Defendant's answer to Paragraph 17 of Plaintiff's Complaint, Defendant provides the following information.

Ms. Charron first orally counsel Plaintiff because Plaintiff would not add new hires to the master schedule. This occurred within a week of Ms. Charron starting employment. Within the first two to three weeks of Ms. Charron's employment, Ms. Charron also counseled Plaintiff that she needed to more aggressively call the individuals on the staff lists, and not allow vacancies in the schedule to remain unaddressed until the end of the week when bonus dollars were needed.

In a telephone conversation on August 19, 2004, Plaintiff continued to refuse to update and maintain the monthly schedule. As a result of this call and of prior disputes regarding Plaintiff's job duties, Ms. Charron met with Plaintiff on August 23, 2004, to explain precisely what Plaintiff's duties were, and to have Plaintiff agree to perform the duties. These duties were specifically listed

on Life Care's job description form (see Bates-stamped document DEF00035). Ms. Charron modified three or four of the seventeen duties ordinarily contained in Life Care's job description, to reflect more closely the tasks for which Plaintiff was responsible.

Ms. Charron provided the document to the Plaintiff, together with Mr. Haase at a meeting on August 23, 2004. Plaintiff read the job description and agreed, reluctantly, to comply. Plaintiff was also informed that her schedule was going to be changed from four days to five days per week, and that Plaintiff would have two weeks to transition to the new schedule. Plaintiff expressed her disappointment with the new schedule, and was argumentative with Ms. Charron and Mr. Haase regarding the need to re-define or clarify her job description or duties.

At the meeting, Plaintiff was also informed that she was to go for training with Rebecca Santin at the Life Care facility in Raynham, where Ms. Charron had previously worked. In response, Plaintiff indicated that she did not need any further training.

When Plaintiff went for the training in September 2004, Ms. Santin showed Plaintiff how she would call individuals several times a day, throughout the week, in order to have employees pick up open shifts. Plaintiff told Ms. Santin that she would only contact employees once, and if the employees said "no," or if the employee did not call back, Plaintiff would generally accept that the employee did not want to work the available shift. Ms. Santin also showed Plaintiff how to calculate PPD – a measurement of the staff-to-residents ratio – and Plaintiff showed no interest in learning this procedure from Ms. Santin. Ms. Santin communicated with Ms. Charron regarding the training, including Plaintiff's statement regarding her unwillingness to telephone staff more than once.

In the last week of September 2004, Ms. Charron approached Plaintiff at the beginning of the week, and asked her about the daily schedules, particularly for the upcoming weekend. In response,

Plaintiff indicated she was working on it. Ms. Charron told Plaintiff that she would be leaving early on Friday and that the schedule needed to be completed. As the week progressed, Ms. Charron asked Plaintiff about the schedule several more times. In response, Plaintiff was defensive and told Ms. Charron that she "knew what she was doing" and that she "was doing the best she could." Ms. Charron would remind Plaintiff that she would be leaving early on Friday to go to a funeral with Steve Haase, and that the schedule needed to be completed by the time Ms. Charron left.

On Friday, October 1, 2004, at approximately 2:00 p.m., Plaintiff gave Ms. Charron the schedule for the weekend. The schedule has a significant number of unfilled shifts. Within two or three hours, Ms. Charron, with the assistance of one or two other staff members, was able to fill all or substantially all of the open shifts.

Based on the number of absences on the schedule when it was give to Ms. Charron, the manner in which Plaintiff had failed to provide any ongoing information as the status of the vacancies throughout the week, the relatively straightforward and expedient manner in which Ms. Charron and others were able to fill the schedule, and Plaintiff's awareness of Ms. Charron's need to leave work, Ms. Charron concluded that Plaintiff's performance was not acceptable. Ms. Charron consulted with her clinical supervisor, Joseph Periera, and the Executive Director, Steve Haase. Both these individuals agreed with Ms. Charron that Plaintiff's conduct warranted discharge. As a result, on October 3, 2004, Plaintiff's employment was terminated.

As to Paragraph 19 of Plaintiff's Complaint, Ms. Sweeting was born on December 13, 1966. She worked as a CNA at Cherry Hill beginning on September 11, 2001, and assisted with staffing during part of that time. Ms. Sweeting was generally cooperative and demonstrated a willingness to take direction from Ms. Charron in a constructive fashion.

I, Pamela Charron, state under the penalty of perjury that: I have read the foregoing Defendant Life Care's Supplemental Answers To Plaintiff's First Set Of Interrogatories and know the contents thereof; that these answers were prepared with the assistance and advice of counsel; that the answers set forth herein, subject to inadvertent or undiscoverable errors, are based on and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of preparation of these answers; that I reserve the right to make any changes in the answers if it appears at any time that omissions or errors have been made there or that more accurate information is available; that subject to the limitations set forth herein these answers are true to the best of my knowledge; information and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th DAY OF April, 2007.

Pamela C. Charron

Pamela Charron

AS TO OBJECTIONS:

[signature]

Christopher J. Campbell, R.I. Bar No. 6611
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
617-367-0025

DATE: 4/6/07

EXHIBIT C

EXHIBIT Haade Plfs-23 4/30/07 Guh

Life Care Centers of America®

3001 Keith Street. NW/P O Box 3480/Cleveland Tennessee 37320-3480/(423) 472-9585

March 23, 2005

**VIA DHL OVERNIGHT**

Marlene Toribio, EEOC Project Director
Rhode Island Commission for Human Rights
180 Westminster Street
Providence, RI 02903

Re: **Barbara Antonucci v. Cherry Hill Manor**
**RICHR No. 05 EAG 151-22/22; EEOC No. 16JA500085**

Dear Ms. Toribio:

This information is submitted on behalf of Cherry Hill Manor ("Cherry Hill") in response to the Rhode Island Commission for Human Rights' request for a position statement. This letter and its contents are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including but not limited to 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e). *See also* 29 C.F.R. § 1610.18. The use, dissemination, or distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons who are neither employees nor officers of the Commission, is prohibited. In this regard, should the Commission receive any requests for access to the Commission's case file in connection with this charge, we should be promptly notified of each such request.

In responding, Cherry Hill does not waive any defenses, whether substantive or procedural, that it may have to the charge, all of which are expressly reserved. Additionally, by providing information, explanation or rebuttal, Cherry Hill does not waive any objection to the admissibility, materiality or relevance of such information in this or any other proceeding. Moreover, Cherry Hill reserves the right to supplement, correct, modify or change such information if it is later determined to be incomplete, inaccurate or erroneous. Furthermore, the information set forth in this letter is privileged, since it is submitted to the investigative agency in response to its request for information.

This charge is predicated on claims of discrimination based upon age. More particularly, Barbara Antonucci alleges that she was terminated because of her age. This claim, and any other claim expressed or implied in Ms. Antonucci's charge of discrimination, is denied. Cherry Hill's position is that there is no basis for this charge of discrimination.

## I. Background

### A. Ms. Antonucci's Employment

Cherry Hill is a long-term care nursing facility. Ms. Antonucci was hired on or about February 25, 1986 as an administrative secretary.[1] In or around January 1999, Ms. Antonucci was promoted to staffing coordinator.[2]

As a staffing coordinator, Ms. Antonucci's duties included staffing the facility at levels determined by the director of nursing ("DON"); preparing nursing schedules (daily, weekly, and monthly) and modifying them as needed; distributing revised nursing schedules to the appropriate personnel and posting the schedules at designated areas; processing requests for shift changes after DON approval; recommending and utilizing the most appropriate scheduling options; and any other duties as assigned by her supervisor. (A copy of Ms. Antonucci's personnel file is attached as Exhibit A.) Pamela Charron, DON, last supervised Ms. Antonucci.

### B. Ms. Antonucci's Inappropriate Work Behavior

On or about July 25, 2004, Ms. Charron became the new DON at Cherry Hill. Because of concerns in the past related to quality of resident care at the facility, Ms. Charron immediately implemented an aggressive approach aimed at improving resident care, which included ensuring that the facility was staffed at the appropriate levels.[3]

During her first week as DON, Ms. Charron noticed that there were serious issues with Ms. Antonucci's ability to effectively staff the facility. Likewise, Ms. Charron also had concerns about Ms. Antonucci's willingness to accept direct supervision.

For example, the schedules prepared by Ms. Antonucci often did not have sufficient staff. Even when Ms. Charron instructed Ms. Antonucci to call every available LPN to fill the available slots, they remained vacant. Due to Ms. Antonucci's lack of effort, Ms. Charron had to complete this task herself. Ms. Antonucci reason for not filling the necessary slots was that she knew the likes and dislikes of staff related to scheduling and she didn't feel comfortable "badgering" those she knew would not pick up the shifts.

Another area of particular concern to Ms. Charron was Ms. Antonucci's over-reliance on paying bonuses to nurses who picked up extra shifts. Several staff members told Ms. Charron that one of the reasons they didn't pick up shifts when first asked is because they knew that they would get extra bonus dollars when the facility became desperate enough to fill the shift.[4]

---

[1] Ms. Antonucci was 45 when she was hired.

[2] Ms. Antonucci was 58 when she was promoted.

[3] Proper staffing is an issue of utmost concern to nursing homes, which are subject to strict state and federal regulation in this area. If a nursing home does not meet the staffing levels required by the state and federal governments, it faces significant liability, ranging from monetary penalties to loss of licensure.

[4] In July, Prior to Ms. Charron's appointment, Cherry Hill paid $6,000 to $9,000 per week in bonus dollars. Due to Ms.



DEF 00184

In spite of Ms. Charron's efforts to verbally address concerns with Ms. Antonucci regarding scheduling and her expectations regarding staffing, issues remained unresolved. In fact, Ms. Antonucci's response to Ms. Charron was that she had been doing the scheduling job for several years and she did not need to be told how to do her job.

On or around August 2, Ms. Charron requested that Ms. Antonucci put together the monthly staffing schedule so she could see what shifts were vacant for licensed and non-licensed staff. Ms. Antonucci responded by telling Ms. Charron it was not her job—that it was Ms. Charron's job, and that she would not follow her supervisor's direction.

Ms. Charron explained to Ms. Antonucci that monthly schedules were indeed Ms. Antonucci's responsibility, regardless of how things had been done in the past. Because Ms. Antonucci told Ms. Charron she had never done a monthly staffing schedule before, Ms. Charron provided her with additional time to complete the task.

On August 19, Ms. Antonucci called in to report her intentions of not working that day. Ms. Charron asked Ms. Antonucci about the monthly schedule, and Ms. Antonucci replied that she had not prepared the monthly schedule because it was not her responsibility to do so.

Due to Ms. Antonucci inability to effectively staff the facility and her resistance to direction from Ms. Charron, on August 23 Ms. Antonucci was placed on a two-week action plan.[5] Ms. Charron and Steve Haase, executive director of the facility, made this decision in an attempt to rehabilitate Ms. Antonucci's work performance. Ms. Antonucci was provided a list of performance expectations to meet and was told that if she failed to meet the established objectives she could be terminated.[6]

As part of the action plan, Ms. Antonucci was also provided another copy of her job description for review and acknowledgment.[7] To ensure better efficiency with the scheduling of staff, Ms. Antonucci's working hours were changed to a five day/eight hour workweek as opposed to her previous five day/ten hour workweek. Ms. Charron also arranged for Ms. Antonucci to receive two days of training at one of Cherry Hill's sister facilities.

---

Charron's efforts, the amounts dropped to $400 to $2,700 per week. (See Exhibit B.)

[5] This was not the first time Ms. Antonucci had received disciplinary action related to staffing and insubordination. On December 8, 2004 Ms. Antonucci was counseled for being insubordinate to the prior DON. Apparently, Ms. Antonucci became infuriated when her request for vacation was denied and made several inappropriate comments to her supervisor in a loud and disrespectful voice. The reason her request was denied was because at that time there were a significant number of vacancies on the schedule that Ms. Antonucci needed to help fill.

Furthermore, the prior DON had noted on Ms Antonucci's performance evaluation in March 2004 that she was resistant to supervision and there was also indication that there had been prior concerns regarding Ms. Antonucci not meeting scheduling needs. (A copy of the disciplinary action and performance evaluation are included as part of Exhibit A.)

[6] These expectations included (i) completing and maintaining monthly nursing schedules, (ii) not ignoring requests from her supervisor, the DON, and (iii) following up and completing duties as assigned.

[7] This is the same job description that was in place when Ms Antonucci received her performance evaluation from the prior DON. (A copy of the job description is included as part of Exhibit A.)

Instead of rising to the challenge and meeting her job expectations, Ms. Antonucci's work performance still did not improve. On Friday, October 1 there were at least twenty-one vacancies on the weekend schedule as of 3:00 that afternoon. Ms. Antonucci told Ms. Charron that she felt that she had done all she could in trying to fill the positions. Ms. Charron and another associate were able to fill the vacancies within an hour.

On October 4, 2004 a decision was made to terminate Ms. Antonucci due to her inability to perform her job duties to meet Cherry Hill's expectations.

## II. <u>Law and Argument</u>

In order to prevail on her claim of age discrimination, Ms. Antonucci must first establish a *prima facie* case. *Rivera-Aponte v. Restaurant Metropol #3, Inc.*, 338 F.3d 9, 11 (1st Cir. 2003). However, if Cherry Hill produces evidence that it had a legitimate, nondiscriminatory reason for its employment action, the *prima facie* case is defeated. *Id.*

Assuming *arguendo* that Ms. Antonucci has established a *prima facie* case of age discrimination, she cannot prevail on his claim because Cherry Hill terminated her for a legitimate nondiscriminatory reason—her failure to adequately perform her job duties, even after an opportunity to correct her performance—as outlined above.[8] For this reason, Cherry Hill requests that the Rhode Island Commission for Human Rights issue a finding of "no cause" with respect to Ms. Antonucci's charge.

Sincerely,

Alison Shaw
Corporate Legal Counsel

cc: Steven Haase, Executive Director
Carly B. Iafrate, Esq.
Barbara Antonucci

[8] Cherry Hill currently employs 120 employees who are forty or older, and fifteen employees who are sixty or older

EXHIBIT E

Cherry Hill Manor

Nursing Department/ Bonus Form

Indicate clearly which type of Bonus is applicable for this sheet (select only one per sheet):

~~$1.00 per hour extra~~ (Orientation/Preceptor, Meds or Charge Nurse)
~~$3.00 per hour extra~~
~~$12.50 per hour extra~~

100.00 bonus per shift

| | Total Applicable Hours | Employee Name | 9/26 | 27 Monday | 28 Tuesday | 29 Wednesday | 30 Thursday | 10/1 Friday | 10/2 Sat |
|---|---|---|---|---|---|---|---|---|---|
| | | Khammixay | | $100 | ✓ | | 11-7 | | |
| | | Hou Ling | | $100 | ✓ | | | 11-3A | |
| | | Manzillo | | $100 | ✓ | | | | 3-7P |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | 50.00 bonus | | | | | |
| | | Martinez RN | | $50 | | | | | 7-11P |
| | | McLaughlin | | $50 | | | | | 7A-11A |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

CONFIDENTIAL

Fri 11-7 10/1
Connelly LN
Sat 3-11
Connelly 10/2

Word (BonusForm) 04/16/01

DeCosta ✓ 200.00 bon

DEF001597

Cherry Hill Manor

Nursing Department/ Bonus Form

Indicate clearly which type of Bonus is applicable for this sheet (select only one per sheet):

~~$1.00 per hour extra~~ (Orientation/Preceptor, Meds or Charge Nurse)
~~$9.00 per hour extra~~
$~~12.50 per hour extra~~

~~[illegible]~~ 100.00 Bonus

| | Total Applicable Hours | Employee Name | 10/3 Sun. | 4 Monday | 5 Tuesday | 6 Wednesday | 7 Thursday | 8 Friday | 9 Sat |
|---|---|---|---|---|---|---|---|---|---|
| | | Tg | 2-11 | $100 | ✓ | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | 50.00 | | | | |
| | | Ly | 3-7P | $50 | ✓ | | | | |
| | | Ajayo | 7-11P | $50 | ✓ | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

CONFIDENTIAL

Word [BonusForm] 04/16/01

200.00 bonus per shift

Delesta 7-3/3-11 $400 ✓
Felion 11-7 $200 ✓
Khammohong 11-7 $200 ✓
[illegible] 7-3 $200 ✓

DEF001598

√

# CHERRY HILL MANOR DAILY SCHEDULE

AA Carol Perfetto LPN
DNS Pam Charron RN
ADN ~~D. Oswald, RN~~
DSD
CCC
MDS Deb Hughes RN
MDS J Ritchie LPN
MDS

DATE Monday 9/27/04

DRIVER

MEDICAL RECORDS

REHABILITATION AIDES
L. Rickett
L. [illegible]

ON CALL(PHONE/PAGER)
L. Norden 581-6771

| DAYS | EVENINGS | NIGHTS |
| --- | --- | --- |
| **7-3 Subacute Unit 2nd Floor DAYS** | **3-11 Subacute Unit 2nd Floor EVES** | **11-7 Subacute Unit 2nd Fl NIGHTS** |
| DeCosta LPN<br>Macauley LPN<br>Messier LPN<br>Martins CNT | Manzolillo RN<br>DeCosta LPN<br>G. Deguire CNT 4-11 | Russell RN<br>Crowley RN |
| 1 Deshaies<br>2 Gomes<br>3 Merserau 7-12 / Benson 12-3<br>4 Moore 8-2<br>5<br>6 Aguinaldo<br>L. Marinello 9-5<br>Secretary | 1 Diaz<br>2 Gonidu<br>3<br>4 DiMeo<br>5 Benson<br>Volcy<br>Day<br>(P) CNA to 3rd | 1 Ouellette<br>Moreira<br>3 Morey |
| **7-3 Third Floor (3rd) DAYS** | **3-11 Third Floor (3rd) EVES** | **11-7 Third Floor (3rd) NIGHTS** |
| Addessi LPN<br>Foford RN<br>L. Norden Salisbury | Hawkins LPN<br>Addessi LPN<br>DeCosta LPN | Norton LPN |
| 1 Granetta<br>2 Pimental<br>3 Webb<br>4 Rojas<br>5 Alves<br>6 Torres | 1 Bonilla<br>2 DeMa from 2nd<br>3 Orelipe<br>4 Segrain<br>5 | 1 Jessen<br>2 Martin<br>3 M Deguire |
| **7-3 Fourth Floor (4th) DAYS** | **3-11 Fourth Floor (4th) EVES** | **11-7 Fourth Floor (4th) NIGHTS** |
| Lefebvre LPN<br>Beauvoit LPN | Conneally RN<br>Dillsa CNT 5-1030<br>Moreira CNT 4-11 | Agosto LPN |
| 1 Gray<br>2 Ansdle<br>3 Massey<br>4 DeJesus<br>5 Dahier 1 30-2 30<br>6 Kizekai 12-3 out | 1 Sullivan<br>2 Messier<br>3 Plonsackar<br>4 Angell 3 30-9 30<br>5 Kizekai 3-6 out<br>Messier 3-3 | 1 Manzano<br>2 Bureau<br>3 Olson |

# CHERRY HILL MANOR DAILY SCHEDULE

AA Carol Perfetto LPN
DNS Pam Charron RN
ADN ~~D. Oswald, RN~~
DSD
CCC
MDS Deb Hughes RN
MDS J Ritchie LPN
MDS

DATE Tuesday 9/28/04

DRIVER

MEDICAL RECORDS

REHABILITATION AIDES
L. Rickett
L. Ables

ON CALL(PHONE/PAGER)
C. Mulcahy 581-0155

## DAYS

### 7-3 Subacute Unit 2nd Floor DAYS

DeCosta LPN
Messier LPN
Macaulay LPN
Martins CMT

1. M Lambert
2. Deshaies
3. Seastrom
4. Moore 7-3
5. Akinsulere
6. Devoz $6^{30}$-$2^{30}$

L. Mammolito 9-5
Secretary

### 7-3 Third Floor (3rd) DAYS

Toland RN
Oliveira RN

1. Paquette
2. W Kelly [illegible]
3. R King
4. Wilson ② CNAs to 4th
5. Ross
6. Viveiros

Dulac

### 7-3 Fourth Floor (4th) DAYS

Lefebvre LPN
Clark LPN

1. Agakos
2. Gray
3. Angell A. Brown 7-3
4. ① CNA from 3rd
5. ① CNA from 3rd
6. DeJesus

## EVENINGS

### 3-11 Subacute Unit 2nd Floor EVES

Brillon RN
G. Dagon CMT
DeCosta LPN

1. Martins
2. Gonsalves
3. Voley
4. Day
5. Benson

Diaz ② CNA #12 to 4th
M. Lambert 3-10 ① 10-11 to 3rd

### 3-11 Third Floor (3rd) EVES

DiCenzo LPN
Rizzo RN

1. Dalpe 3-9
2. Chiiso
3. Maines [illegible]
4. Rojas 3-10
5. Webb 3-10

Segrain ① 10-11 from 2nd

### 3-11 Fourth Floor (4th) EVES

Khemmahavong LPN
Lefebvre LPN / Mulcahy RN 3-7, 7-11

Dunn CMT 3-11

1. Sullivan
2. ① CNA from 2nd
3. Angell
4. ① CNA from 2nd
5. Kizekai 3-10

## NIGHTS

### 11-7 Subacute Unit 2nd Fl NIGHTS

McLaughlin LPN
Russell RN

1. Piedade
2. Ouellette
3. Morey

### 11-7 Third Floor (3rd) NIGHTS

Crowley RN

Martin
2. Doran
3. Ardenne
Soriano

### 11-7 Fourth Floor (4th) NIGHTS

Agosto LPN

1. Marzano
2. Nakes
3. Brodeur

# CHERRY HILL MANOR DAILY SCHEDULE

AA Carol Perlitto LPN
DNS Pam Charron RN
ADN ~~D. Oswald, RN~~
DSD
CCC
MDS Deb Hughes RN
MDS J Ritchie LPN
MDS

DATE Wednesday 9/29/04

DRIVER

Class 6-8P

MEDICAL RECORDS

REHABILITATION AIDES
L. Richett
L. Ables

ON CALL(PHONE/PAGER) M. DeCosta 581-0081

| DAYS | EVENINGS | NIGHTS |
|---|---|---|
| **7-3 Subacute Unit 2nd Floor DAYS** | **3-11 Subacute Unit 2nd Floor EVES** | **11-7 Subacute Unit 2nd Fl NIGHTS** |
| DeCosta LPN<br>Messier LPN<br>Marouleu LPN<br>Akinsulere CMT | Ly RN<br>Monzolillo RN<br>DeCosta LPN | Ly RN<br>McLaughlin LPN |
| 1 Gomes<br>2 Mersereau<br>3 Seastrom<br>4 Moore 8-2<br>5 CNA from 3rd<br>6 DCNA from 3rd<br>L. Marinello 9-5<br>Secretary | 1 DeMeo<br>2 Martinez<br>3 Benson moved 3-8<br>4 Day<br>5 Diaz<br>Lebron 3-9<br>Dodge 5:30-11 pull | 1 Piedade<br>2 Ouellette<br>3 Davies |
| **7-3 Third Floor (3rd) DAYS** | **3-11 Third Floor (3rd) EVES** | **11-7 Third Floor (3rd) NIGHTS** |
| Aldrussi LPN<br>DiCenzo LPN | Khemmakhong LPN<br>Felion LPN | Norton LPN |
| 1 Arquette<br>2 Almental<br>3 Wibb (2 CNAs to 2nd)<br>4 Gomes<br>5 Ross<br>6 Viveiros Torres<br>Dalpe | 1 Baillo out<br>2 Cruso<br>3 Gray 3-8<br>4 Viveiros 3-9<br>5 Senaia 3-11<br>DCNA from 2nd 3-11 | 1 Martin out<br>2 Ndiaye<br>3 Nelsen<br>Oredipe |
| **7-3 Fourth Floor (4th) DAYS** | **3-11 Fourth Floor (4th) EVES** | **11-7 Fourth Floor (4th) NIGHTS** |
| Lefebvre LPN<br>Boisvert LPN | Lefebvre LPN 3-4<br>Vanasse RN<br>Osiana CMT 3-11<br>Nina Dasrin CMT 4-11 | Russell RN |
| 1 Oaakes<br>2 A Lambert<br>3 Arais c alfred brown<br>4 Andal<br>5 Mabrey<br>6 | 1 Massey 6-11<br>2 Santo Padre<br>3 Sullivan<br>4 Messier<br>5 Santos<br>DCNA from 2nd | 1 Davis<br>2 Brodeur<br>3 Sullivan |

Y. Mecauley
A. Boisvert
B. Hawkins
M. Khammahavong
~~B. Harris~~
~~D. Aldrice~~
B. Addison
D. Lefebvre
~~M. Agosto~~ vac.
Sue Clark
~~B. Gates~~
M. Brillon

CHEF...

MEDICAL RECORDS

AA Carol Pistitte LPN

DNS Pam Charron RN

ADN ~~D. Oswald, RN~~

DSD

CCC

MDS Deb Hughes RN

MDS J Ritchie LPN

MDS

Thursday 9/30/04

DRIVER

REHABILITATION AIDES

L. Richett

L. Ables

ON CALL (PHONE/PAGER)

R. Ferruccio 235 8638

## DAYS

## EVENINGS

## NIGHTS

| 7-3 Subacute Unit 2nd Floor DAYS | 3-11 Subacute Unit 2nd Floor EVES | 11-7 Subacute Unit 2nd Fl NIGHTS |
| --- | --- | --- |
| DelCosta LPN<br>Macauley LPN<br>McLaughlin LPN 7-11<br>Martino CMT<br>Alemajulire CMT 11-3 | Ly RN<br>Connelly RN<br>DelCosta LPN | Russell RN<br>McLaughlin LPN |
| 1 Deshaies<br>2 Gomes<br>3 Mersereau<br>4 Skarstrom<br>5 Akinsulire 7-11 11-3 CMT<br>6 Moore<br>L. Marinello 9-5<br>Secretary | 1 Januario<br>2 Benson<br>3 Foley<br>4 Day<br>5 Dias<br>Martinez<br>① CNA to 4th | 1 Lisbale<br>2 Ouellette<br>3 Moreira<br>Morey<br>① CNA to 3rd |

| 7-3 Third Floor (3rd) DAYS | 3-11 Third Floor (3rd) EVES | 11-7 Third Floor (3rd) NIGHTS |
| --- | --- | --- |
| Addessi LPN<br>Rizzo RN | Khammahavong LPN<br>N Dasrio CMT 10-11<br>Orfalipe CMT 3-11 | Khammahavong LPN 11-6A<br>Norden RN 6-7A<br>N. Dasrio CMT |
| 1 Arquette<br>2 Olmestal<br>3 Wilson<br>4 Vinieris<br>5 Dalge<br>6 Torres | 1 Sesson<br>2 Chuso<br>3 Wihle 3-10<br>4 Rosa 3-10<br>5 Kizekai 5-11<br>Maine ill | 1 ① CNA from 2nd<br>2 Blamo<br>Orfalipe |

| 7-3 Fourth Floor (4th) DAYS | 3-11 Fourth Floor (4th) EVES | 11-7 Fourth Floor (4th) NIGHTS |
| --- | --- | --- |
| Lebreux LPN<br>Clark LPN | Hawkins LPN<br>K. Ashton LPN<br>Alfreda Brown 10-3 | Felion LPN |
| 1 Jacobs<br>2 A Lambert<br>3 Gray<br>4 Onsell<br>5 DeJesus<br>6 Critso 9-3 | 1 Santapolice<br>2 McGuire<br>3 Daloo 3-9<br>4 ① CNA from 2nd<br>5 A. Lambert 3-6 | 1 Marzano<br>2 Dellis<br>3 Brodeur |

# CHERRY HILL MANOR DAILY SCHEDULE

AA Carol Lafitte LPN
DNS Pamela Charron RN
ADN
DSD
CCC
MDS Debra Hughes RN
MDS J Ritchie LPN
MDS

DATE Friday 10/1/04

DRIVER

MEDICAL RECORDS

REHABILITATION AIDES Richett

ON CALL (PHONE/PAGER) Dawn Conneally 581-0082

## DAYS

**7-3 Subacute Unit 2nd Floor DAYS**

DeCosta LPN
Bouvier LPN
McLaughlin LPN 7-11A / Ly RN 1-3
Martens CMT

1 Deshaies
2 Gomes
3 Meisereau
4 Seastrom
5 DT-3 from 3rd
6 Moore
Lisa Marinelli 9-5
Secretary

**7-3 Third Floor (3rd) DAYS**

Oddessi LPN
Rizzo RN

1 Webb D 3
2 Rosa
3 Wilson
4 Vieiros
5 Dao
6 Cruise

**7-3 Fourth Floor (4th) DAYS**

Asamoah CMT 7-3
Akinsuliro CMT
Clamsh LPN

1 Agbos
2 A Lombert
3 Massey
4 Benson
5 Davies 6[30]-2[30]
6 DeJesus

## EVENINGS

**3-11 Subacute Unit 2nd Floor EVES**

Mengeldillo RN
Ly RN
DeCosta LPN

1 Bizekas 4-8
2 Phidjee
3 Volcy
4 Mattine
5 Benson

**3-11 Third Floor (3rd) EVES**

Hawkins LPN
Sp Khemmakhamma LPN
Rizzo 3-5p

1 Bonilla
2 Segwin
3 Daine N/S
4 Pimental 4-11
5 Richett 3-7

**3-11 Fourth Floor (4th) EVES**

Conneally RN
Deguin CMT
[illegible] CMT 3-7 / Massey 7-11
1 Santoradie
2 Sullivan
3 Mbalien CMT 7-11
4 Pennacchia
5 Ojao

## NIGHTS

**11-7 Subacute Unit 2nd Fl NIGHTS**

McLaughlin LPN
Crowley RN 11-3A
3rd 3-7A
Davis CMT 3-7A

1 Pidade
2 Moreira CMT 2nd 3-7A
Massey

**11-7 Third Floor (3rd) NIGHTS**

Crowley RN 3-7
Hawkins LPN 11-3

1 Dossen left sick 3am
2 Oredina CMT 3-7A
3 M. Deguin

**11-7 Fourth Floor (4th) NIGHTS**

Conneally RN

1 Davis CMT 3-7
2 Ajao
3 Biamo

# CHERRY HILL MANOR DAILY SCHEDULE

AA ______
DNS ______
ADN ______
DSD ______
CCC ______
MD ______
MD ______
MDS ✓

DATE *Saturday 10/2/04*

DRIVER ______

MEDICAL RECORDS ______

REHABILITATION AIDES *L Rickett*

ON CALL(PHONE/PAGER) *Dawn Connolly 581-1082*

| DAYS | EVENINGS | NIGHTS |
|---|---|---|
| **7-3 Subacute Unit 2nd Floor DAYS** | **3-11 Subacute Unit 2nd Floor EVES** | **11-7 Subacute Unit 2nd Fl NIGHTS** |
| Brillon RN<br>Macauley LPN<br>McLaughlin LPN 7-4/A<br>DeCosta LPN 12-8 | Brillon 3-7 RN / Ng RN 7-11<br>DeCosta 3-11<br>G. DeGRIN CNT 3-11<br>Oreape CNT 3-11 | Lee RN<br>Russell RN |
| 1 M Lambert<br>2 Deshores<br>3 Benson<br>4 Martinez 7-12 / Volcy 12-3<br>5 J Messier 8-3<br>6 ✓<br>Lisa Marinelli 9-5<br>Secretary | 1 Diaz<br>2 Nirelo<br>Benson<br>4 Volcy<br>~~Doiz~~ out<br>(1) 3rd fl 7P-11P | 1 Ouellette<br>2 Morey<br>3 Biamd |
| **7-3 Third Floor (3rd) DAYS** | **3-11 Third Floor (3rd) EVES** | **11-7 Third Floor (3rd) NIGHTS** |
| Clarie LPN<br>Johnson LPN | Felion LPN<br>Manzolillo RN 3-7 / Norton LPN 7-11 | Norton LPN |
| 1 Viveiros<br>2 Webb<br>3 Ross<br>4 Torres<br>5 Cruso<br>6 ✓ | 1 Gearain<br>2 Viveiros 3-5 / Martin 5-11<br>3 Torres 3-7 / ~~7-11~~ 2nd<br>4 Rokos 3-9<br>5 Ganyu 7-11 | 1 Dassens<br>2 Oredepe<br>3 Martin |
| **7-3 Fourth Floor (4th) DAYS** | **3-11 Fourth Floor (4th) EVES** | **11-7 Fourth Floor (4th) NIGHTS** |
| Lefebvre LPN<br>Akinsulire CNT<br>Oseinno CNT | McCabe RN<br>Connolly | Marino, RN |
| 1 Gray<br>2 O'Neill<br>3 Masters<br>4 DeJesus<br>A. Brown<br>6 | 1 Sullivan<br>2 Ganyu 3-5<br>3 McLambert 3-7<br>4 Missey 3-11<br>5 DeJesus 3-7 / Ogo 7-11 | 1 Ogo<br>2 Brodeur<br>3 Sullivan |

# CHERRY HILL MANOR DAILY SCHEDULE

DATE: Sunday Oct 3, 2004

MEDICAL RECORDS: ______

AA: ______
DNS: ______
ADN: ______
DSD
CCC: ______
MDS: ______
MDS: ______
MDS: ______

DRIVER: ______

REHABILITATION AIDES: Rickett

ON CALL (PHONE/PAGER): D. Connolly 581-0082

## DAYS

**7-3 Subacute Unit 2nd Floor DAYS**

Macauley LPN
DeCosta LPN
Martins 7-1 CMT
Moreira 8-2 CMT

1. Lambert
2. Deshaies
3. Pimentel
4. Gelsoon ML
5. Benson
6. Martinez

**7-3 Third Floor (3rd) DAYS**

Boivert
CMT D'Allo 8-D CMT
Davis CMT 7-3
Norden 7-11AM

1. Ouellette
2. Webb
3. Russo
4. Cardoso
5. Torres
6.

**7-3 Fourth Floor (4th) DAYS**

Lebrasie LPN
Brown RN

1. Massey
2. Gray
3. Angell
4. DeJesus
5. Dalpe 9-3
6.

## EVENINGS

**3-11 Subacute Unit 2nd Floor EVES 1-11**

Brillon 3-7 RN / Amyo RN
Dix
DeCosta, CM

1. G. Dagan 3-11
2. Neimeo 3rd
3. Benson
4. Valcey
5. Day
Diaz

C.N.A. 3rd

**3-11 Third Floor (3rd) EVES**

McCabe RN
Khammavong LPN

1. Jean
2. DeNAbram 2nd
3.
4. Webb 3-10
5. Marston 5-11
Rosa 3-5

**3-11 Fourth Floor (4th) EVES**

K Feliciano LPN
[illegible] RN

1. Sullivan
2. M. Lambert 3-10
3. Gonzalez 5-11
4. A. Brown 3-11
5. Gray 3-7

## NIGHTS

**11-7 Subacute Unit 2nd Fl NIGHTS**

Lin RN
Ridesell RN

1. Ouellette
2. Morey
3. Moore 11-6A

**11-7 Third Floor (3rd) NIGHTS 11-7**

Khammavong
Norden 7

1. N. Jossin
2. Dearden
3. Martin

**11-7 Fourth Floor (4th) NIGHTS**

Silvia 11-6:30 AM
Ferruccio 6 AM RN

1. Alva
2. Diello out
3. Brodeur