EXHIBIT P

INTELIUS
Live in the know

Member Status: Basic ciafrate@verizon.net [Sign Out] | Manage Account
Help: 425.974.6100 | View My Reports

Return to Home

**Purchase Receipt Information**

- Your credit card statement will reflect a charge from **Intelius.**
- Your transaction was successful. **$17.90** has been charged to your account.
- Your Order Number is **8661419**.
- Get **10% Off** on ALL purchases for **1 year** with **Club Intelius Membership!**
- You may contact our **Customer Support 425.974.6100** with any questions.

PEOPLE SEARCH REPORT

**What is a People Search Report?**

This section lists current and historical people search records that share the same name and state as your search subject. The People Search Summary can be helpful in providing a consolidated view of matching current and historical records for your subjects name across multiple public sources.

Click on the **NAME** or **BACKGROUND REPORT** Link for More Info.

| | NAME | ADDRESS / PHONE | PREVIOUS CITIES | |
|---|---|---|---|---|
| 1 | DAWN M MORANG (Age: 43)<br>**BIRTH DATE:** 07/15/1964<br>**RELATIVES:**<br>**BARRY W MORANG** | **ADDRESS 1:**<br>199 MADISON ST<br>WARWICK, RI 02888<br>(401) 438-4895<br>**ADDRESS 2:**<br>95 TAUNTON AVE<br>EAST PROVIDENCE, RI 02914<br>(401) 434-2825<br>**ADDRESS 3:**<br>227 SUTTON AVE<br>EAST PROVIDENCE, RI 02914 | WARWICK, RI<br>EAST PROVIDENCE, RI<br>RUMFORD, RI<br>PROVIDENCE, RI | Background Report |
| 2 | **DAWN ROBYNN MORANG** (Age: 40)<br>**BIRTH DATE:** 11/04/1966<br>**RELATIVES:**<br>**ROBYNN A MORANG** | **ADDRESS 1:**<br>7 DELMAR CT<br>NORWICH, CT 06360<br>(860) 885-1177<br>**ADDRESS 2:**<br>118 ASYLUM ST<br>NORWICH, CT 06360<br>**ADDRESS 3:**<br>3 SULLIVAN DR<br>NORWICH, CT 06360 | NORWICH, CT | Background Report |
| 3 | **DAWN MORANG**<br>**RELATIVES:**<br>**D MORANG** | **ADDRESS 1:**<br>MESHOPPEN, PA 18630<br>(570) 833-5372 | MESHOPPEN, PA | Background Report |
| 4 | **DAWN LYN MORANG** (Age: 41)<br>**BIRTH DATE:** 06/20/1966 | **ADDRESS 1:**<br>10551 WHITE RD<br>RAVENNA, MI 49451<br>(231) 853-2460<br>**ADDRESS 2:**<br>7065 ENSLEY RD<br>COOPERSVILLE, MI 49404<br>(616) 853-2460 | RAVENNA, MI<br>COOPERSVILLE, MI | Background Report |
| 5 | **DAWN M MORANG** (Age: 43)<br>**BIRTH DATE:** 07/1964 | **ADDRESS 1:**<br>10 BROOKFIELD RD<br>RIVERSIDE, RI 02915<br>**ADDRESS 2:** | RIVERSIDE, RI<br>EAST PROVIDENCE, RI | Background Report |

EXHIBIT Q

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

RECEIVED NOV 30 2005 FACILITIES REGULATION

NAME OF PROVIDER OR SUPPLIER: CHERRY HILL MANOR

STREET ADDRESS, CITY, STATE, ZIP CODE: 2 CHERRY HILL ROAD, JOHNSTON, RI 02919

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 000 | INITIAL COMMENTS<br><br>Cherry Hill Manor has ben found to be in substantial compliance with 42 CFR 483.70 (a), the Life Safety Code for Long Term Care. | F 000 | This plan of correction is submitted as a requirement of participation in the Medicare and Medicaid programs and does not constitute an admission of liability or agreement with the cited deficiencies. | |
| F 176 SS=D | 483.10(n) SELF ADMINISTRATION OF DRUGS<br><br>An individual resident may self-administer drugs if the interdisciplinary team, as defined by s483.20(d)(2)(ii), has determined that this practice is safe.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on staff and resident interviews and record review, it has been determined that the facility has failed to assess a resident's ability to self-administer medication for 1 of 26 sample residents (ID # 25) and 1 non-sample resident (ID # 27).<br><br>Findings are as follows:<br><br>1. During the initial tour of the facility on 5/16/05 at 6:30 AM, the charge nurse stated that resident ID # 25 self administers a Dulcolax suppository every other day. Interview with the resident on 5/19/05 at 1:45 PM, confirmed that he self administers the Dulcolax suppository every other day. Record review revealed a physician's order for Dulcolax 1 suppository rectally every other day in the AM -- may self administer. There is no documentation that self administration by the resident was determined to be safe by an interdisciplinary team.<br><br>2. Additionally on the initial tour, it was revealed that non sample resident ID # 27 self administers | F 176 | **F 176 Self Administration of Drugs**<br><br>**Immediate Corrective Action**<br><br>Resident # 25<br>The resident was assessed for safe self-administration of the Ducolax suppository.<br>Resident# 27<br>The resident was assessed for safe self-administration of the inhaler.<br><br>**Identification of other Residents**<br><br>A facility wide audit was conducted to identify if any other resident needed to be assessed for safe self-administration of medication.<br><br>**Measures to prevent reoccurrence**<br><br>All License Nurses have been re-inserviced on the facilities policy on Self -medication Administration.<br><br>**Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor for compliance with the self-medication administration policy.<br><br>The DNS will be responsible for the ongoing compliance. | 6/19/05 |

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE: [signature]    TITLE: Executive Director    (X6) DATE: 11/28/05

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

DEPARTMENT OF HEALTH AND HUM/ :ERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| TATEMENT OF DEFICIENCIES ND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____<br>B. WING ____ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 176 | Continued From page 1<br>Combivent Inhaler, twice a day. Interview with this resident on 5/19/05 at 3:00 PM confirmed that she self administers her inhaler twice a day. Record review revealed a physician's order for Combivent Inhaler 2 puffs by mouth twice a day, separate the puffs by 3-5 minutes - may self administer - may keep at bedside. There is no documentation that self administration by the resident was determined to be safe by an interdisciplinary team.<br><br>During interview with the Director of Nursing Services (DNS) on 5/20/05 at 9:00 AM, she could not provide evidence that these residents were evaluated by an interdisciplinary team for self administration of medications. | F 176 | | |
| F 253<br>SS=C | 483.15(h)(2) ENVIRONMENT<br><br>The facility must provide housekeeping and maintenance services necessary to maintain a sanitary, orderly, and comfortable interior.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on surveyor observation on all days of the survey, the facility has failed to maintain the floors and hallways in a homelike manner, on all floors in resident areas.<br><br>Findings are as follows:<br><br>The following areas requiring maintenance service were observed:<br>First floor: duct tape on the carpet seam immediately in front of the elevators.<br>Second floor: duct tape on carpet seams in several locations on both hallways. | F 253 | **F 253 Environment**<br><br>**Immediate Corrective Action**<br><br>The facility is in the process of removing the carpet from the first floor and second floor areas and replacing it with new carpet.<br><br>The broken cove molding near the third floor social services office has been removed and replaced.<br><br>The broken floor tiles on the third and fourth floor have been removed and replaced. | 7-19-05<br><br><br><br>6-19-05<br><br>6-19-05 |

DEPARTMENT OF HEALTH AND HUM/ SERVICES
CENTERS FOR MEDICARE & MEDICAIL SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| TATEMENT OF DEFICIENCIES ND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| JAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 253 | Continued From page 2<br>Third floor: broken cove molding on two corners of the wall by the Social Service office.<br>3 cracked floor tiles across the hallway by the restroom.<br>6 cracked floor tiles across the hallway by room #314.<br>6 cracked floor tiles the hallway at the fire doors.<br>Fourth floor:<br>4 cracked floor tiles across the hallway at the fire doors.<br>17 cracked floor tiles across the hallway in front of the nurses' station.<br>6 cracked floor tiles in area between room #425 and #426.<br>7 cracked floor tiles across the hallway near room #414.<br>Elevator floor: Rubber floor has two raised areas ( bubbles) in the surface.<br><br>Hand rails on all floors throughout the facility were scratched, marred and in need of re-painting. | F 253 | The rubber floor in the elevator that had raised, bubbled areas has been removed and replaced.<br><br>Handrails throughout the facility have been sanded and repainted.<br><br>**Identification of other areas that could be affected**<br><br>The facility conducted an audit of floor tiles, base cove, carpeting and handrails throughout the facility.<br><br>**Measures to prevent reoccurrence**<br><br>Maintenance staff will repair and or replace Damaged carpet, floor tiles, base cove and Hand rails during preventative maintenance Rounds.<br><br>**Monitoring** | 6-19-05 |
| F 274 SS=D | 483.20(b)(2)(ii) RESIDENT ASSESSMENT<br><br>Within 14 days after the facility determines, or should have determined, that there has been a significant change in the residents physical or mental condition. (For purpose of this section, a significant change means a major decline or improvement in the residents status that will not normally resolve itself without further intervention by staff or by implementing standard disease-related clinical interventions, that has an impact on more than one area of the residents health status, and requires interdisciplinary review or revision of the care plan, or both.) | F 274 | The Maintenance Director will present the Results of the preventative maintenance check list at the Performance Improvement Meeting. The Maintenance Director and the Executive Director is responsible for ongoing compliance. | 6-19-05 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______<br>B. WING ______ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 274 | Continued From page 3<br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to conduct a comprehensive assessment within 14 days after the facility determines that there has been a significant change in the resident's physical or mental condition for 3 of 26 sample residents (ID #'s 3, 4 and 17.)<br><br>Findings are as follows:<br><br>1. A review of the clinical record of resident ID #3 revealed a significant change Minimum Data Set Assessment (MDS) with an assessment reference date of 11/24/04. This requires completion within 14 days. The registered Nurse did not complete the assessment until 1/26/05.<br><br>2. A review of the clinical record of resident ID #4 revealed a significant change MDS with an assessment reference date of 3/30/05. This requires completion within 14 days. The Registered Nurse did not complete the assessment until 5/2/05.<br><br>3. A review of the clinical record of resident ID # 17 revealed a significant change MDS with an assessment reference date of 2/1/05. This requires completion within 14 days. The Registered Nurse did not complete the assessment until 4/29/05.<br><br>When questioned on 5/18/05 at 9:45 AM, the DNS stated that the assessments were completed late. | F 274 | **F 274 Resident Assessment**<br><br>**Immediate Corrective Action**<br><br>Resident # 3<br>The MDS was completed on 1/26/05<br>Resident # 4<br>The MDS was completed on 5/2/05<br>Resident # 17<br>The MDS was completed on 4/29/05<br><br>**Identification of other Residents**<br><br>A facility wide audit was conducted to identify any outstanding MDS's<br><br>**Measures to prevent reoccurrence**<br><br>The MDS coordinator reviewed the regulations<br><br>**Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor the compliance of the completion of the comprehensive assessment within 14 days.<br><br>The ED and DNS will be responsible for the ongoing compliance. | 6-19-05 |
| F 276 | 483.20(c) RESIDENT ASSESSMENT | F 276 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 276 SS=D | Continued From page 4<br><br>A facility must assess a resident using the quarterly review instrument specified by the State and approved by HCFA not less frequently than once every 3 months.<br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to assess a resident using the quarterly review instrument specified by the State and approved by HCFA not less that once every 3 months for 1 of 26 sample residents (ID #14.)<br><br>Findings are as follows:<br><br>A review of the clinical record of resident ID #14 revealed a quarterly MDS assessment completed on 9/22/04. A quarterly assessment with a reference date of 12/6/05 was not completed by the Registered Nurse until 2/5/05, and a quarterly MDS with a reference date of 2/25/05 was not completed by the Registered Nurse until 4/29/05. When questioned, the DNS stated that the quarterly MDS assessments were late. | F 276 | **F 276 Resident Assessment**<br><br>**Immediate Corrective Action**<br><br>Resident # 14<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to ensure that all MDS's are in regulatory compliance.<br><br>**Measures to prevent reoccurrence**<br><br>The MDS coordinator reviewed the regulations<br><br>**Monitoring**<br><br>A performance improvement indicator has been implemented to monitor for MDS regulatory compliance.<br><br>The ED and MDS coordinator will be responsible for the ongoing compliance. | 6-19-05 |
| F 280 SS=D | 483.20(k)(2) RESIDENT ASSESSMENT<br><br>A comprehensive care plan must be:<br><br>Developed within 7 days after the completion of the comprehensive assessment;<br><br>Prepared by an interdisciplinary team, that includes the attending physician, a registered nurse with responsibility for the resident, and other appropriate staff in disciplines as determined by the resident's needs, and, to the | F 280 | | |

DEPARTMENT OF HEALTH AND HUM SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______<br>B. WING ______ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 280 | Continued From page 5<br>extent practicable, the participation of the resident, the resident's family or the resident's legal representative; and<br><br>Periodically reviewed and revised by a team of qualified persons after each assessment.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on surveyor observation, record review and staff interview, it was determined that the facility failed to periodically review and revise the comprehensive care plan for 2 of 26 sample residents (ID #'s 3, and 17.)<br><br>Findings are as follows:<br><br>1. Resident ID #3 has a history of a pressure ulcer on her left outer heel. A review of the resident's clinical record revealed a current care plan specifying that a dry, protective dressing be applied to the resident's left outer heel daily and PRN (as needed.) On 5/18/05 at 10:10 AM and 5 /19/05 at 10:15 AM and 1:40 PM the surveyor observed the resident in bed without a protective dressing on the outer left heel. When questioned on 5/19/05 at 1:40 PM, the Unit Manager stated that the resident no longer needs the protective dressing, and that the care plan should have been revised to reflect the resident's current status.<br><br>In addition a review of the clinical record of resident ID #3 revealed a 5/11/05 physician's order for a Limited Concentrated Sweets, Ground Meat, Soft Diet. On 5/18/05 at 12:15 PM, the surveyor observed the resident being fed a Limited Concentrated Sweets, Puree Diet. When questioned on 5/18/05 at 12:25 PM, the Unit | F 280 | **F 280 Resident Assessment**<br><br>**Immediate Corrective Action**<br><br>Resident # 3<br>The care plan was revised and the protective dressing was discontinued. A physician order was obtained to clarify the resident diet order.<br><br>Resident # 17<br>The care plan was revised and the Intake and output was discontinued.<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to ensure that all care plans reflected all current intake and output residents and to ensure that all current protective dressing where care planed.<br><br>**Measures to prevent reoccurrence**<br><br>All License nurses were re-inserviced on up dating care plans.<br><br>**Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor:<br>• Revisions of the care plan regarding intake and output status.<br>• Revisions of the care plan regarding current protective dressing treatment status.<br>The DNS will be responsible for the ongoing compliance. | 6-19-05 |

DEPARTMENT OF HEALTH AND HU[MAN] SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| [ST]ATEMENT OF DEFICIENCIES [A]ND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____ B. WING ____ | C 05/20/2005 |

| [N]AME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 280 | [Co]ntinued From page 6<br>Manager stated that the resident's physician ordered the resident's diet changed to Limited Concentrated Sweets, Puree Diet on 1/26/05. The diet order change was not transcribed to subsequent physician's order sheets.<br><br>2. Resident ID #17 is at risk for Delerium related to changes in her medical status. A review of the resident's clinical record revealed a current care plan specifying to monitor the resident's I&O ( intake and output.) A review of the resident's record revealed that I&O records were not kept since 4/14/05. When questioned on 5/19/05 at 12 :40 PM, the Unit Manager stated that the resident's condition improved significantly in 4/05, and she no longer required monitoring of I&O. The resident's care plan was not revised to reflect her current status. | F 280 | | |
| F 282 SS=E | 483.20(k)(3)(ii) RESIDENT ASSESSMENT<br><br>The services provided or arranged by the facility must be provided by qualified persons in accordance with each resident's written plan of care.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on surveyor observation, record review and staff interview, it has been determined that the facility has failed to provide services by qualified persons in accordance with each resident's written plan of care for 5 of 26 sample residents (ID #'s 3, 5, 8, 14 and 19) and one non-sample resident ID #31 .<br><br>Findings are as follows: | F 282 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 282 | Continued From page 7<br><br>1. Resident ID # 19 was admitted to the facility on 2/11/05 with diagnoses including Diabetes Mellitus, Renal Failure and Hyperkalemia. Record review revealed a physician's order dated 3/3/05 to discontinue Glipizide ER 10 milligrams ( mg.) secondary to renal insufficiency. Review of the documentation on the Medication Administration Record (MAR) for March, 2005 indicated the facility continued to administer Glipizide 10 mg. daily through April 8, 2005.<br><br>Additionally, record review revealed this resident has a physician's order dated 2/16/05 for Avandia 8 mg. by mouth twice a day. Review of the MAR indicated the resident did not recieve 15 of 25 required doses from 02/16/05 to 02/28/05.<br><br>During interview with the DNS, on 5/19/05 at 9:30 AM, no further documentation could be provided as to why the Glipizide was not discontinued as ordered or why the Avandia was not administered as ordered.<br>2. Resident ID #3 has a history of injuring herself on the siderails of her bed. A review of the resident's clinical record revealed a current care plan specifying the use of seizure pads on the siderails for a documented problem of injury related to siderails. On 5/16/05 at 11:20 AM, 5/17/05 at 8:37 AM and 5/18/05 at 10:30 AM, the surveyor observed the resident in bed without seizure pads on the siderails. When questioned on 5/18/05 at 10:30 AM, the Unit Manager stated that the care plan for siderails was not followed.<br><br>In addition Resident ID #3 has a history of Urosepsis. A review of the resident's clinical record revealed a 4/12/05 physician's order for a urinalysis with culture and sensitivity. There was | F 282 | **F282 Resident Assessment**<br><br>**Immediate Corrective Action**<br><br>Resident # 19<br>The resident's physician was notified that the Glipizide was not discontinued and a clarification order was obtained on April 8th to continue with the Glipizide.<br>The physician was notified that the resident missed 15 dosages of Avandia.<br><br>Resident # 3<br>Seizure pads were obtained and placed on the siderails.<br>The Residents physician was notified on 5-18-05 that the urinalysis was not obtained<br><br>Resident # 8<br>The resident's physician was notified of the MAR's omissions regarding Novulin 70/30 and Lantus Insulin for 4/10, 4/16, 4/30, 5/8 and 5/6/05.<br><br>Resident # 5<br>The resident's physician was notified of the MAR's omissions regarding Ambien on 5/2, 5/3, 5/4, 5/7 and 5/8/05.<br><br>Resident # 14<br>The resident's physician was notified and a clarification order was obtained for the EPC cream<br><br>Resident # 31<br>The urine specimen was obtained on 4/16/05 | 6-19-05 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____<br>B. WING ____ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 282 | Continued From page 8<br>evidence that the laboratory tests were done as ordered. When questioned on 5/18/05 at 10:10 AM, the Unit Manager stated that the urinalysis and culture and sensitivity were not done because the nurse tried three times to catheterize the resident and was unable to obtain a urine sample.<br><br>3. Resident ID #8 has a diagnosis of Diabetes Mellitus. A review of the resident's clinical record revealed physician's orders for Novolin 70/30 Insulin 12 units (U) subcutaneous (SC) twice daily (BID) and Lantus Insulin 6 U SC at bedtime (HS.) A review of the resident's MAR revealed that the Novolin 70/30 Insulin was not administered on 4/10, 4/16, 4/30 and 5/8/05 at 6:30 AM. The Lantus Insulin was not administered on 5/6/05 at HS. When questioned on 5/18/05 at 12:10 PM, the Unit Manager was unable to produce evidence that the insulins were administered in accordance with the physician's orders.<br><br>4. Resident ID #5 has a physician order for Ambien 5 mg daily at HS. Review of the MAR revealed that the resident did not receive Ambien on 5/2/05, 5/3/05, 5/4/05, 5/7/05 and 5/8/05. On 5/18/05 at 8:45 AM, an interview with the charge nurse revealed that the Ambien was not given on these dates in accordance with the physician's order.<br><br>5.Resident ID # 14's has a physician's order dated 12/7/04 to apply EPC Cream to buttocks/coccyx after cleansing with antimicrobial cleanser every shift and as needed. This treatment was discontinued on 3/11/05 when a new treatment was started for Xenaderm ointment to be applied to the coccyx every shift. There is no order to discontinue the EPC Cream on 3/11/05. Interview with the charge nurse on 5/18/05 at 9:50 | F 282 | **Identification of other residents**<br><br>A facility wide audit was conducted to identify for other residents with Glipizide and Avandia orders to ensure compliance with the physician orders.<br><br>A facility wide audit was conducted to ensure that all residents that are care planned for seizure pads have pads in place (on the side rails).<br>A facility wide audit was conducted to ensure that there was no other outstanding urinalysis.<br>A facility wide audit was conducted to ensure that there were no other MAR omissions regarding the medication: Novulin 70/30, Lantus, and Ambien.<br>A facility wide audit was conducted to ensure that all residents receiving EPC cream for:<br>• It's clinical appropriateness<br>• A current Physicians order.<br><br>**Measures to prevent reoccurrence**<br><br>All License Nurses have been re-inserviced on:<br>• following the plan of care,<br>• the facilities policy regarding medication administration including the 5 rights of medication administration<br>• obtaining a urinalysis.<br>• Clinical appropriateness for EPC cream. | 6-19-05 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______<br>B. WING ______ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 282 | Continued From page 9<br>AM confirmed there was no physician's order to discontinue the EPC Cream.<br><br>6.Resident ID #31's has a telephone order obtained for a repeat urinalysis with culture and sensitivity on 4/1/05. There is no documentation in the chart that this specimen was obtained. During interview with the DNS on 5/20/05 at 1:15 PM, she stated the specimen ordered for 4/1/05 was obtained but not until 4/16/05. | F 282 | **Monitoring**<br><br>A performance improvement indicator has been implemented to monitor for:<br>• Compliance with seizure pads<br>• MAR omission relating to Novulin 70/30, Lantus, and Ambien.<br>• Timeliness of obtaining urinalysis.<br><br>The DNS will be responsible for the ongoing compliance. | 6-19-05 |
| F 309 SS=D | 483.25 QUALITY OF CARE<br><br>Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.<br><br>Use F309 for quality of care deficiencies not covered by s483.25(a)-(m).<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to provide each resident with the necessary care and services to attain or maintain the highest practicable physical well-being in accordance with the comprehensive assessment and plan of care for 1 of 26 sample residents (ID #5.)<br><br>Findings are as follows:<br><br>Resident ID #5 has a diagnosis of Diabetes Mellitus. A review of the resident's clinical record | F 309 | **F 309 Quality of Care.**<br><br>**Immediate Corrective Action**<br><br>Resident # 5<br>The resident physician was notified of the insulin omission for 4/26/05.<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to review all residents who have orders for insulin for MAR omissions. | 6-19-05 |

DEPARTMENT OF HEALTH AND HU N SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 10<br>revealed a physician's order for Lantus Insulin 100 U/ml 20 units SC every morning and Humalog 100U/ml 4 units every morning at 7:30 AM. There was no evidence on the resident's MAR that the Lantus and Humalog Insulins were administered on 4/26/05 at 7:30 AM. A Nurse's Note dated 4/26/05 on the 3-11 shift documented that the resident's blood sugar level was 364. The physician was notified regarding the elevated blood sugar level, and he ordered Regular Insulin 2 units to be administered SC. When questioned on 5/18/05 at 10:30 AM, the Unit Manager was unable to produce evidence that the resident received the insulins as ordered by the physician. | F 309 | **Measures to prevent reoccurrence**<br>All License nurses were re-inserviced on the facilities policy regarding medication administration, including the 5 rights.<br>**Monitoring**<br>A monthly performance improvement indicator has been implemented to monitor MAR omissions.<br>The DNS will be responsible for the ongoing compliance. | 6-19-05 |
| F 312 SS=D | 483.25(a)(3) QUALITY OF CARE<br>A resident who is unable to carry out activities of daily living receives the necessary services to maintain good nutrition, grooming, and personal and oral hygiene.<br>This REQUIREMENT is not met as evidenced by:<br>Based on surveyor observation, it was determined that the faclity failed to provide the necessary services to maintain good grooming and personal hygiene for 1 of 26 sample residents (ID #11.)<br>Findings are as follows:<br>Resident ID #11 is dependent on staff for all activities of daily living (ADLs.) On 5/18/05 at 8:46 AM, 5/19/05 at 12:18 PM and 5/20/05 at 11:30 AM, surveyor observation revealed that the resident's fingernails were elongated with brown matter under the nails. | F 312 | **F 312 Qaulity of Care**<br>**Immediate Corrective Action**<br>Resident # 11<br>The resident's nails were cleaned, trimmed and filed.<br>**Identification of other residents**<br>A facility wide audit was conducted to ensure that all residents had clean and well-manicured nails.<br>**Measures to prevent reoccurrence.**<br>All C.N.A's were re-inserviced on nail care. | 6-19-05 |
| | | F 312 | **Monitoring**<br>A monthly performance improvement indicator has been implemented to ensure at all resident nails are clean and nicely manicured. | 6-19-05 |
| | | | The DNS will be responsible for the ongoing compliance. | 6-19-05 |



11 of 18

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 315 SS=D | 483.25(d)(1) QUALITY OF CARE<br><br>Based on the resident's comprehensive assessment, the facility must ensure that a resident who enters the facility without an indwelling catheter is not catheterized unless the resident's clinical condition demonstrates that catheterization was necessary.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on observation, record review and staff interview, it was determined that the facility failed to ensure that the continued use of a catheter for 1 of 26 sample residents was clinically necessary, resident ID # 9.<br><br>Findings are as follows:<br><br>During the initial tour on 5/16/05 beginning at 6:45 AM resident ID # 9 was observed to have an indwelling foley catheter. A nurse explained that the resident had urinary tract stones and a decubitus ulcer, but the ulcer had healed. Record review indicated that the resident on 03/18/05 was determined to be free of urinary tract stones via an invasive procedure. Review of nursing documentation revealed that the resident's coccyx pressure sore healed on 05/06/05. There was no documentation indicating the medical necessity for the continued use of the catheter. Interview with the unit manager on 05/18/05 at 2:30 PM confirmed that there was no clinical reason for the continued use of the catheter. | F 315 | **F 315 QUALITY OF CARE**<br><br>**Immediate Corrective Action**<br><br>Resident #9<br>The resident's foley catheter was discontinued.<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to ensure that any resident with foley catheters had a medical necessity.<br><br>**Measures to prevent reoccurrence**<br><br>All License Nurses were re-inserviced on the appropriate medical diagnosis for foley catheters<br><br>**Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor for compliance with appropriateness of Foley catheters.<br><br>The DNS is responsible for ensuring ongoing compliance | 6-19-05 |
| F 323 SS=D | 483.25(h)(1) QUALITY OF CARE<br><br>The facility must ensure that the resident | F 323 | | |

DEPARTMENT OF HEALTH AND HU[illegible] SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|

**F 323** Continued From page 12

...environment remains as free of accident hazards as is possible.

This REQUIREMENT is not met as evidenced by:

Based on surveyor measurement of water temperatures, it was determined that the facility has failed to ensure that the resident environment remains as free of accident hazards as possible on the east side of the nursing units for 1 of 5 days.

Findings are as follows:

On 5/16/05, water temperature readings measured by surveyors with facility staff members on the East side of the nursing units on the second, third and forth floor were at hazardous levels that could scald or harm residents.

**F 324 SS=D** 483.25(h)(2) QUALITY OF CARE

The facility must ensure that each resident receives adequate supervision and assistance devices to prevent accidents.

This REQUIREMENT is not met as evidenced by:

Based on record review and staff interview, it was determined that the facility failed to ensure that each resident receives adequate supervision and assistance devices to prevent accidents for 1 of 26 sample residents (ID # 20.)

1. Resident ID #4 was admitted on 3/7/05. A review of the clinical record revealed that the

---

**F 323**

**F 323 Quality of Care**

**Immediate Corrective Action** — 6/19/05

The facility repaired the hot water heater and boiler system during the survey. The facility toured the Department of Health Survey Team Leader throughout the building. Water temperatures were taken in various locations on all patient units. All water temperatures registered between 100 and 110 degrees Fahrenheit. Two mixing valves were rebuilt. A new circulator pump, check valve and pressure reduce valve were installed.

**Identification of other areas**

Maintenance routinely check water temperatures throughout the facility.

~~F 324~~

Areas found out of compliance during routine inspections are adjusted. — 6/19/05

**Measures to prevent reoccurrence**

Maintenance staff perform water temperature checks as part of our Preventative Maintenance program. Water temperatures found out of compliance will be addressed during preventative maintenance rounds.

**Monitoring**

The Maintenance Director will discuss the results of his Preventative Maintenance rounds at the facility Performance Improvement Meeting.

The Maintenance Director and the Executive Director will be responsible for ongoing compliance.

DEPARTMENT OF HEALTH AND HU' I SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 324 | Continued From page 13<br>resident fell on 3/11/05 sustaining a fracture of her left clavicle. After the fall on 3/11/05, an intervention specifying that staff encourage the resident to remain in a supervised area was added to the care plan. On 4/9/05, the resident fell when a CNA left her unattended in the bathroom. On 4/24, 5/2, 5/6, and 5/8, staff found the resident on the floor. The resident's current care plan specifies that dycem and a sensor pad be applied to her wheelchair, a personal alarm be applied and the resident be kept in a supervised area. On 5/17/05 at 10:45 AM, the surveyor observed the resident in the dining room. The Activities Assistant had left the dining room to obtain milk for another resident. The resident rose from her wheelchair, and her personal alarm did not sound. There was no dycem nor sensor pad in the wheelchair. The surveyor notified the Activities Assistant that the resident was attempting to ambulate. The surveyor summoned the nurse, and she confirmed that the dycem and sensor pad were not in the wheelchair. The facility did not provide the assistance devices nor supervision in accordance with plan of care. | F 324 | **F 324 Quality of Care**<br><br>**Immediate Corrective Action**<br><br>Resident # 4<br>The sensor pad and dycem were obtained<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to ensure that all residents who have safety devices care planned have them in place.<br><br>**Measures to prevent reoccurrence.**<br><br>All License Nurses and C.N.A.'s were inserviced on resident safety devices and following the plan of care.<br><br>**Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor the compliance of safety devices.<br><br>The DNS will be responsible for the ongoing compliance. | 6/19/05 |
| F 329 SS=D | 483.25(l)(1) QUALITY OF CARE<br><br>Each resident's drug regimen must be free from unnecessary drugs. An unnecessary drug is any drug when used in excessive dose (including duplicate therapy); or for excessive duration; or without adequate monitoring; or without adequate indications for its use; or in the presence of adverse consequences which indicate the dose should be reduced or discontinued; or any combinations of the reasons above.<br><br>This REQUIREMENT is not met as evidenced by : | [redacted] | | |

DEPARTMENT OF HEALTH AND HU  N SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 14<br><br>Based on record review and staff interview it was determined that the facility failed to ensure that each resident's drug regimen is free from any unnecessary drugs for 1 of 26 sample residents ( ID #5.)<br><br>Findings are as follows:<br><br>Resident ID #5 was readmitted to the facility on 4/14/05. A review of the resident's clinical record revealed a physician's order for Ambien 5 mg daily at HS. Documentation on the resident's MAR revealed that he received the Ambien 14 times in 4/05 and 8 times from 5/1 through 5/15/05. There was no documentation of indications for the use of Ambien. Interview with the charge nurse on 5/18/05 at 11:45 AM revealed that the resident was not assessed for the cause of insomnia. | F 329<br><br><br><br><br><br><br>F 329 | **F 329 Quality of Care**<br><br>**Immediate corrective action**<br><br>Resident# 5<br>The resident is no longer at the facility.<br><br>**Identification of other Residents**<br><br>A facility wide audit was conducted to ensure that all or any resident on Ambien has a medical indication for its use.<br><br>**Measures to prevent reoccurrence.**<br><br>All License Nurses were re-inserviced on the need for medical indication for the use of Ambien.<br>The pharmacy consultant will be conducting monthly audits to ensure compliance. | 6-19-05<br><br><br><br><br><br><br>6-19-05 |
| F 367 SS=D | 483.35(e) DIETARY SERVICES<br><br>Therapeutic diets must be prescribed by the attending physician.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on surveyor observation and record review, it was determined that the facility failed to provide a therapeutic diet prescribed by the attending physician for 1 of 26 residents (ID #5.)<br><br>Fidings are a s follow:<br><br>Resident ID #5 has a diagnosis of Congestive | F | **Monitoring**<br><br>A monthly performance improvement indicator has been implemented to monitor the appropriate administration of Ambien .<br>The DNS will be responsible for ongoing compliance. | |

DEPARTMENT OF HEALTH AND HU[illegible] SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 367 | Continued From page 15<br>Heart Failure and has edema of his left arm and leg. A 2 gram sodium diet was ordered by the physician on 4/14/05. On 5/19/05 at 12:30 PM the surveyor observed the resident eating lunch in his room with double portions on the tray in front of him. When questioned on 5/19/05 at 1:30 PM, the dietitian stated that the resident was receiving double portions secondary to his complaints of hunger. The double portions served to the resident provided more than 2 grams of sodium daily. | F 367 | **F367 Dietary Services**<br><br>**Immediate corrective action**<br><br>Resident #5<br>The resident was discharged home on 5/19/05. The physician was notified prior to the discharge.<br><br>**Identification of other residents**<br><br>A facility wide audit conducted on all residents with double portions and 2 GM sodium to ensure compliance with the therapeutic diet.<br><br>**Measures to prevent reoccurrence**<br><br>All License Nurses and Dietary staff have been inserviced on the facilities policy regarding double portions. | 6-19-05 |
| F 425 SS=D | 483.60 PHARMACY SERVICES<br><br>The facility must provide routine and emergency drugs and biologicals to its residents, or obtain them under an agreement described in s483.75(h) of this part. The facility may permit unlicensed personnel to administer drugs if State law permits, but only under the general supervision of a licensed nurse.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to provide routine drugs and biologicals to 2 of 26 sample residents (ID #'s 8 and 22.)<br><br>Findings are as follows:<br><br>1. Resident ID #22 has a diagnosis of Diabetes Mellitus. A review of the resident's clinical record revealed a physician's order for Novolin 70/30 Insulin 26 U SC at 7:30 AM. A review of the resident's MAR revealed documentation that the resident did not receive the insulin on 5/19/05 because it was not available. When interviewed | F 367 | **Monitoring**<br><br>A monthly performance improvement indicator has been implemented to ensure compliance with double portions.<br><br>The ED will be responsible to ensure the ongoing compliance. | 6-19-05 |

DEPARTMENT OF HEALTH AND HUM/ 'ERVICES
CENTERS FOR MEDICARE & MEDICAIL ƎERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A BUILDING ______ B WING ______ | C 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 425 | Continued From page 16<br>on 5/20/05 at 9:15 AM, the nurse stated that the resident's insulin was unavailable for administration on 5/19/05 at 7:30 AM. He stated that the insulin was not delivered to the facility until 12:00 PM.<br><br>2. Resident ID #8 is at risk for pressure ulcers. A review of the resident's clinical record revealed a current physician's order for Resource Arginaid 1 pack twice daily (BID.) A review of the resident's MAR revealed that the resident did not receive the Resource Arginaid 8 times from 5/1 through 5 /17/05. When questioned on 5/17/05 at 11:30 AM, the Unit Manager stated that the Resource Arginaid was unavailable for administration. | F 425 | **F425 Pharmacy Services**<br><br>**Immediate Corrective Action**<br><br>Resident #22<br>The Resident's physician was notified of the insulin omission.<br><br>Resident #8<br>Resource Arginaid was obtained and administered as ordered. The resident's physician was notified of the omissions.<br><br>**Identification of other residents**<br><br>A facility wide audit was conducted to ensure that all resident who have an order for Novulin 70/30 and Resource Arginaid had no omissions.<br><br>**Measures to prevent reoccurrence**<br><br>All licensed nurses were inserviced on the facilities policy related to: Medication Not Available. | 6-19-05 |
| F 514 SS=D | 483.75(l)(1) ADMINISTRATION<br><br>The facility must maintain clinical records on each resident in accordance with accepted professional standards and practices that are complete; accurately documented; readily accessible; and systematically organized.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on surveyor observation, record review and staff interview, it was determined that the facility failed to maintain clinical records on each resident in accordance with accepted professional standards that are complete and accurately documented for 1 of 26 sample residents (ID #3.)<br><br>Findings are as follows:<br><br>A review of the clinical record of ID #3 revealed that the resident's physician ordered a urinalysis and culture and sensitivity on 4/12/05. When | F 425 | **Monitoring**<br><br>A monthly performance improvement has been implemented to monitor compliance with medication administration.<br><br>The DNS will be responsible for ensuring compliance. | 6-19-05 |

DEPARTMENT OF HEALTH AND HU[illegible]N SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 11/23/2005
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
| --- | --- | --- | --- |
| | 415053 | A. BUILDING ______<br>B. WING ______ | C<br>05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
| --- | --- |
| CHERRY HI[illegible] MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
| --- | --- | --- | --- | --- |
| F 514 | C[illegible]ntinued From page 17<br>q[illegible]stioned on 5/18/05 at 8:45 AM regarding the re[illegible]ults of the urinalysis, the Unit Manager stated that the urinalysis was not done. Staff made 3 unsuccessful attempts to catheterize the resident to obtain the urine sample. There was no documentation of the unsuccessful attempts to catheterize the resident.<br><br>"You are hereby formally notified that where the above listed deficiencies also constitute non-compliance with applicable provisions of the 'Rules and regulations for Licensing of Nursing Facilities' they are deficiencies under State Regulations and grounds for licensure sanctions." | F 514 | **F514 Administration**<br><br>**Immediate Corrective Action**<br><br>Resident # 3<br>The resident physician was notified that the urine was not obtained.<br><br>**Identification of other residents**<br>A facility wide audit was conducted to ensure that that there was no other outstanding urinalysis orders.<br><br>**Measures to prevent reoccurrence**<br><br>All License nurses were re-inserviced on physician notification when a urinalysis is unable to be obtained.<br><br>**Monitoring**<br><br>A performance improvement indicator has been implemented to monitor the timeliness of obtaining a urinalysis.<br><br>The DNS will be responsible for the ongoing compliance. | 6-19-05 |

PRINTED: 05/31/2005
FORM APPROVED

RI Department of Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 699 | A. BUILDING ____ B. WING ____ | 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| M 560 | RESIDENT CARE SERVICES 19.1 Resident Care Policies<br><br>PART III RESIDENT CARE SERVICES<br>Section 19.0 Resident Care Policies<br>19.1 Each facility shall have written resident care policies to govern the continuing nursing care and related medical or other services provided.<br><br>This Requirement is not met as evidenced by:<br>Based on surveyor observation and review of the facilities policy and procedure for wound dressing changes, it has been determined that the facility failed to ensure resident care policy and procedures relating to clean dressing change techniques are implemented for 1 non-sample residents (ID# 34).<br><br>Findings are as follows:<br><br>A review of the facility's policy and procedure "Basic Infection Control Procedure for Wound Care" revealed; ". 4. Put on gloves and position the resident to expose area to be treated. 5. Remove soiled dressing using no-touch technique and place in bag for disposal. Remove gloves and discard. 6. Wash hands or use antiseptic hand cleaner. 7. Apply new gloves. 8. Cleanse wound as directed. 9. Remove gloves and discard in disposable bag. 10. Wash hands or use antiseptic hand cleaner. 11. Apply new gloves and perform wound care as ordered. Secure dressing with tape or retention bandage, if indicated, that has date and initials. 13. Remove gloves and discard in disposable bag."<br><br>Resident ID # 34 has a stage II pressure sore on the coccyx. On 5/19/05 at approximately 11:30 AM, the surveyor observed the nurse with gloved hands remove a dirty (yellow-tannish dressing) from the resident's coccyx. He then cleansed the | M 560 | **M 560 Resident care services 19.1 Resident Care Policies**<br><br>**Immediate Corrective Action**<br><br>The nurse responsible for the dressing change was re-inserviced<br>On the facility's policy for non-sterile dressing changes.<br><br>**Identification of other residents**<br><br>The nurse responsible for the dressing change was re-inserviced<br>On the facility's policy for non-sterile dressing changes.<br><br>**Measures to prevent reoccurrence**<br><br>All licensed nursing staff were re-inserviced on the facility's policy, non-sterile dressing changes.<br><br>**Monitoring**<br><br>Monthly random non-sterile dressing change competencies have been implemented to ensure compliance.<br><br>The DNS will be responsible for the ongoing compliance. | 6-19-05 |

Facilities Regulation

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE

PRINTED: 05/31/2005
FORM APPROVED

RI Department of Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 699 | A. BUILDING ____<br>B. WING ____ | 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| M 560 | Continued From page 1<br>wound with normal saline and applied a sterile dressing. Without changing gloves he then placed a clean 2 X 2 dressing with Santyl ointment on the wound and secured it with tape. He failed to remove dirty gloves, re-apply new gloves and wash hands throughout the procedure and did not comply with the facility's policies and procedures. | M 560 | | |
| M1300 | PHYSICAL PLANT 47.1 Water Supply<br><br>Section 47.0 Water Supply<br>47.1 Water shall be distributed to conveniently located taps and fixtures throughout the building and<br>shall be adequate in volume and pressure for all purposes including fire fighting.<br>a) In resident areas, hot water temperatures shall not be less than 100 degrees Fahrenheit nor exceed 110 degrees Fahrenheit (plus or minus two degrees). Thermometers (accuracy of which can be plus or minus two degrees) shall be provided in each nursing unit to check water temperature periodically on that unit and at each site where residents are immersed or showered.<br>b) Thermostatic or pressure balanced mixing valves are required at each site or fixture used for immersion or showering of residents. Thermometers and tactical (skin sense) method shall be used to verify the appropriateness of the water temperature prior to each use.<br>c) After 1 July 1991, in addition to temperature regulating devices controlling the generation of domestic hot water, hot water supply(ies) to resident care areas shall be regulated by anti-scalding, water tempering or mixing valves (approved by the director or his/her designee) in order to maintain the temperature standards of 47.1 a). | M1300 | **M1300 Physical Plant 47.1 Water Supply**<br><br>**Immediate Corrective Action**<br><br>The facility repaired the hot water heater and boiler system during the survey. The facility toured the Department of Health Survey Team Leader throughout the building. Water temperatures were taken in various locations on all patient units. All water temperatures registered between 100 and 110 degrees Fahrenheit. Two mixing valves were rebuilt. A new<br><br>circulator pump, check valve and pressure reduce valve were installed.<br><br>**Identification of other areas**<br><br>Maintenance routinely check water temperatures throughout the facility.<br><br>Areas found out of compliance during routine inspections are adjusted. | 6-19-05 |

PRINTED: 05/31/2005
FORM APPROVED

RI Department of Health

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 699 | A. BUILDING ______<br>B. WING ______ | 05/20/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| M1300 | Continued From page 2<br><br>This Requirement is not met as evidenced by:<br>Based on surveyors' observation it was determined that the facility failed to maintain water temperatures between 100 degrees Fahrenheit (F.) and 110 degrees F. plus or minus 2 degrees for 2 of 5 days on the East side of the facility in various portions on all floors.<br><br>Findings are as follows:<br><br>On 5/16/05 between 8:00 AM and 10:45 AM water temperatures were between 124 degrees F. and 144 degrees F. in the resident bathroom hand sinks and shower room.<br><br>Room #205- 144 degrees F.<br>Room #208- 142 degrees F.<br>Room #210- 140 degrees F.<br>Room East Shower Rm Sink 128 degrees F.<br>Room East Shower Rm Shower 120 degrees F.<br><br>Room #305- 135 degrees F.<br>Room #309- 135 degrees F.<br><br>Room #405- 140 degrees F.<br>Room #409- 126 degree F.<br>Room #410- 126 degrees F.<br><br>On 05/18/05 between 2:30 PM to 3:30 PM water temperatures were between 84 degrees F. and 112 degrees F. in the resident bathroom hand sinks.<br><br>Room #431- 84 degrees F. | M1300 | **Measures to prevent reoccurrence**<br><br>Maintenance staff perform water temperature checks as part of our Preventative Maintenance program. Water temperatures found out of compliance will be addressed during preventative maintenance rounds.<br><br>**Monitoring**<br><br>The Maintenance Director will discuss the results of his Preventative Maintenance rounds at the facility Performance Improvement Meeting.<br><br>The Maintenance Director and the Executive Director will be responsible for ongoing compliance. | 6-19-05 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____<br>B. WING ____ | R-C<br>07/01/2005 |

NAME OF PROVIDER OR SUPPLIER: CHERRY HILL MANOR

STREET ADDRESS, CITY, STATE, ZIP CODE: 2 CHERRY HILL ROAD, JC

This plan of correction is submitted as a requirement of participation in the Medicare and Medicaid programs and does not constitute an admission of liability or agreement with the cited deficiencies.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 246 SS=D | 483.15(e)(1) QUALITY OF LIFE<br><br>A resident has the right to reside and receive services in the facility with reasonable accommodations of individual needs and preferences, except when the health or safety of the individual or other residents would be endangered.<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on surveyor observation, record review and staff interview, it was determined that the facilty failed to accomodate the individual needs of 1 of 16 sample residents (ID #6).<br><br>Findings are as follows:<br><br>Resident ID #6's annual MDS done in 6/05 documents the resident's vision as severely impaired and her communication/hearing as limited to simple, direct communication. Record review revealed a care plan specifying that the resident wear a hearing aid daily. A 3/05 Interdisciplinary Documentation note documented that the resident's hearing aid was "recently lost." When interviewed on 6/30/05 at 1:45 PM, the Director of Nursing Services (DNS) stated that the facility was responsible for the loss of the hearing aid. She stated that the resident was fitted for a new hearing aid in 3/05. A 3/17/05 Nurse's Note confirmed her statement. When questioned regarding progress toward the resident receiving a hearing aid, the DNS stated that the facility was awaiting approval from the resident's insurance coverage. She was unable to produce evidence that the facility tried to expedite the delivery of the device or provide an interim alternate device (eg. headphones and | F 246 | **Immediate Corrective Action:**<br><br>Resident # 6: The resident was provided with amplified headphones.<br>The resident was re-fitted for a Hearing Aid. Expected delivery of the Hearing Aid is 7 to 10 working days.<br><br>**Identification of other Residents:**<br><br>A facility wide audit was conducted to ensure any resident with Hearing Aids had them available.<br><br>**Measures to Prevent Reoccurrence:**<br><br>Hearing Aides are to be monitored by Nursing for both insertion and removal of the devices. Any missing devices will be reported to management immediately and replaced accordingly.<br>**Monitoring:**<br><br>A monthly Performance Improvement monitor is conducted by a member of the Nursing Management team to assure Hearing Aids are available as indicated.<br>The ED and DNS will be responsible for ongoing compliance. | 7/15/05<br>7/18/05 |

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE: Pamela G. Clanton, RN DNS — TITLE — (X6) DATE: 7/15/05

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

EPARTMENT OF HEALTH AND HUMAN SERVICES
ENTERS FOR MEDICARE & MEDIC SERVICES

FORM APPROVED
OMB NO. 0938-0391

| TEMENT OF DEFICIENCIES PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | R-C 07/01/2005 |

| ME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| HERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 246 | Continued From page 1<br>amplifier). | F 246 | **F 279 Resident Assessment**<br>**Immediate Corrective Action:** | |
| F 279<br>SS=D | 483.20(k) RESIDENT ASSESSMENT<br><br>The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.<br><br>The care plan must describe the following:<br>The services that are to be furnished to attain or maintain the resident's highest practicable physical, mental, and psychosocial well-being as required under s483.25; and<br><br>Any services that would otherwise be required under s483.25 but are not provided due to the resident's exercise of rights under s483.10, including the right to refuse treatment under s483.10(b)(4).<br><br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to develop a comprehensive care plan that meets the resident's medical and nursing needs for 1 of 16 sample residents (ID #1).<br><br>Findings are as follows:<br><br>Resident ID # 1 had a care plan for falls requiring a gait belt with ambulation. The resident is nonambulatory requiring a hoyer lift transfer, and has never required a gait belt for transfers. Interview with the DNS on 6/28/05 at 2:20 PM | F 279 | Resident # 1: The care plan was reviewed and updated to include individualized approaches reflecting the current status of the resident.<br><br>**Identification of other residents:**<br><br>A facility wide audit was conducted to ensure that all Falls Prevention Care Plans are individualized.<br><br>**Measures to Prevent Reoccurrence:**<br><br>All Licensed Nurses and the Interdisciplinary Team were inserviced on writing individualized Care Plans that reflect the current status of the resident.<br>**Monitoring:**<br><br>All At Risk resident care plans are reviewed during Incident Management Meetings to ensure the plans are individualized and reflect the current status of the resident.<br>The ED and MDS Coordinator will be responsible for ongoing compliance. | 7/15/05<br>7/18/05 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 415053 | (X2) MULTIPLE CONSTRUCTION A. BUILDING ____ B. WING ____ | (X3) DATE SURVEY COMPLETED R-C 07/01/2005 |
|---|---|---|---|

OMB NO. 0938-0391

NAME OF PROVIDER OR SUPPLIER: CHERRY HILL MANOR

STREET ADDRESS, CITY, STATE, ZIP CODE: 2 CHERRY HILL ROAD, JOHNSTON, RI 02919

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 279 | Continued From page 2<br>confirmed that the resident's care plan for falls was not individualized to meet this resident's needs. | F 279 | | |
| {F 280} SS=D | 483.20(k)(2) RESIDENT ASSESSMENT<br><br>A comprehensive care plan must be:<br><br>Developed within 7 days after the completion of the comprehensive assessment;<br><br>Prepared by an interdisciplinary team, that includes the attending physician, a registered nurse with responsibility for the resident, and other appropriate staff in disciplines as determined by the resident's needs, and, to the extent practicable, the participation of the resident, the resident's family or the resident's legal representative; and<br><br>Periodically reviewed and revised by a team of qualified persons after each assessment.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on record review and staff interview, it was determined that the facility failed to periodically review and revise the comprehensive care plan for 2 of 16 sample residents (ID #'s 6 and 8).<br><br>Findings are as follows:<br><br>1. Resident ID #6 is at risk for weight loss. Review of the resident's clinical record revealed a current physician's order to weigh the resident weekly on the 3-11 shift. Review of the resident's Weight Audit form revealed that the resident was weighed monthly. When interviewed on 6/30/05 | {F 280} | **F 280 Resident Assessment**<br><br>**Immediate Corrective Action:**<br><br>**Resident # 6:** A physician's order was obtained to conduct monthly weights. The Care Plan was updated to reflect the current physician order.<br><br>Resident # 9: The care plan was revised to reflect the physician order.<br><br>**Identification of Other Residents:**<br><br>A facility wide audit was conducted to ensure that any resident with an order for daily or weekly weights is accurately reflected in the Care Plan.<br><br>**Measures to Prevent Reoccurrence:**<br><br>All License Nurses and the Interdisciplinary Team were re-inserviced on updating and individualizing care plans. | 7/15/05<br>R 7/18/05 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | IDENTIFICATION NUMBER: | A. BUILDING / B. WING | COMPLETED |
|---|---|---|---|
| | 415053 | | R-C 07/01/2005 |

NAME OF PROVIDER OR SUPPLIER: CHERRY HILL MANOR

STREET ADDRESS, CITY, STATE, ZIP CODE: 2 CHERRY HILL ROAD, JOHNSTON, RI 02919

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| {F 280} | Continued From page 3<br>at 12:10 PM, the unit supervisor stated that the resident no longer required weekly weights. She stated that the care plan should have been revised to reflect the change from weekly weights to monthly weights.<br><br>2. Resident ID #9 has a documented cardiac history. Review of the resident's clinical record revealed a current physician's order to weigh the resident daily. Review of the resident's care plan addressing potential for alteration in nutrition status indicated a monitor weekly weight approach. Review of the weight record indicated weekly weight recordings rather than daily. When interviewed on 6/30/05 at 10 AM, the unit supervisor stated that the resident no longer needed daily weights. She stated that the physician should have been contacted "a while ago" to change the order to weekly weights. | {F 280} | **Monitoring:**<br><br>A monthly Performance Improvement monitor is conducted by a member of the Nursing Management team to ensure the Care Plan reflects the current order for obtaining weights.<br><br>The DNS is responsible for the ongoing compliance. | |
| F 386 SS=D | 483.40(b)(1)-(3) PHYSICIAN SERVICES<br><br>The physician must review the resident's total program of care, including medications and treatments, at each visit required by paragraph (c) of this section; write, sign, and date progress notes at each visit; and sign and date all orders.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on record review and staff interview, it was determined that the faclity failed to ensure that the physician review the resident's total program of care including treatments for 1 of 16 sample residents (ID #8).<br><br>Findings are as follows: | F 386 | **Immediate Corrective Action:**<br><br>Resident # 8: The resident's physician was notified and a clarification order was obtained.<br><br>**Identification of Other Residents:**<br><br>A facility wide audit was conducted to identify other residents who were re-admitted in the last 30 days, to ensure treatment orders were verified with the physician on re-admission. | 7/15/05<br>R 7/18/05 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____<br>B. WING ____ | R-C<br>07/01/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD<br>JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 386 | Continued From page 4<br><br>A review of the clinical record of resident ID #8 revealed a Treatment Record documenting Mycolog cream administered to peri area on the 11-7 shift from 6/26 through 6/30/05. The current Physician Order sheet did not include an order for the Mycolog Cream treatment. When interviewed at 8:40 AM on 7/1/05, the unit manager indicated that the resident was recently readmitted to the facility after a hospitalization. She stated that a physician's order to resume Mycolog cream was not obtained on readmission.<br><br>"You are hereby formally notified that where the above listed deficiencies also constitute non-compliance with applicable provisions of the 'Rules and regulations for Licensing of Nursing Facilities' they are deficiencies under State Regulations and grounds for licensure sanctions." | F 386 | **Measures to Prevent Reoccurrence:**<br><br>All License Nurses have been re-inserviced on the policy for verification of treatment orders on re-admission, to include obtaining an order prior to implementing a treatment.<br><br>**Monitoring:**<br><br>A random Performance Improvement monitor is conducted monthly by a member of the Nursing Management team to assure treatment orders are verified on re-admission.<br><br>The DNS is responsible for ongoing compliance. | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 699 | A. BUILDING ____ B. WING ____ | R-C 07/01/2005 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| CHERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| M 0 | INITIAL COMMENTS<br><br>A follow up survey to the annual State and Federal survey (1HJO11 - 5/20/05), a complaint investigation/state interim survey (1THE11 - 7/1/05) were conducted at this facility. | M 0 | | |
| M 790 | RESIDENT CARE SERVICES 25.8 Dietetic Services<br><br>25.8 All menus including alternate choices shall be planned at least one week in advance, to meet the standards for nutritional care in accordance with reference 12 and to provide for a variety of foods, adjusted for seasonal changes, and reflecting the dietary preferences of residents.<br>a) Menus shall indicate nourishments offered to residents between evening meal and bedtime.<br>b) Menus shall be posted in a conspicuous place in the dietary department and in resident areas.<br>c) Records of menus actually served shall be retained for thirty (30) days.<br><br>This Requirement is not met as evidenced by:<br>Based on surveyor observation, record review and interview with staff it was determined that the facility failed to post planned menus indicating nourishments offered to residents between the evening meal and bedtime on all nursing units.<br><br>Findings are as follows:<br><br>On 6/28/05 at 10:00 AM, surveyor observation revealed that the planned menus posted on all nursing units did not indicate nourishments offered to residents between the evening meal and bedtime. When interviewed on 6/28/05 at 10:30 AM, the Food Service Supervisor stated that the nourishments are not posted on the preplanned menus. | M 790 | **M 790 Resident Care Services.**<br><br>**Immediate Corrective Action:**<br><br>A list of HS Nourishments was posted on each unit.<br><br>**Identification of Other Residents:**<br><br>All residents with p.o. diet orders.<br><br>**Measures to Prevent Reoccurrence:**<br><br>The Food Service Director and Dietary Staff were inserviced on the Regulation for posting of HS Nourishments and the system for complying with the regulation.<br><br>**Monitoring:**<br><br>A monthly Performance Improvement monitor is conducted by a member of the Dietary Staff to assure a list HS Nourishments are posted on a daily basis.<br><br>The ED/Food Service Director are responsible for ongoing compliance. | 7/15/05<br>7/18/05 |

...ties Regulation

Pamela C. Chan..., RD

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE

TITLE DNS

(X6) DATE 7/15/05

:ARTMENT OF HEALTH AND HUMAN SERVICES
:TERS FOR MEDICARE & MEDICAID SERVICES

FORM APPROVED
OMB NO. 0938-0391

| :MENT OF DEFICIENCIES LAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ____ B. WING ____ | R 08/03/2005 |

| E OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| :) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 282 SS=E | 483.20(k)(3)(ii) RESIDENT ASSESSMENT<br><br>The services provided or arranged by the facility must be provided by qualified persons in accordance with each resident's written plan of care.<br><br>This REQUIREMENT is not met as evidenced by :<br><br>Based on surveyor observation, record review and staff interview, it was determined that the facility failed to provide services in accordance with each resident's written plan of care for 3 of 16 sample residents (ID #'s 3, 6 and 14) and 1 non-sample resident (ID #17).<br><br>Findings are as follows:<br><br>1. Resident ID #3 has a diagnosis of CVA ( Cardiovascular Accident) with left sided Hemiparesis. A review of the resident's clinical record revealed a current care plan for impaired physical mobility specifying that the resident sit on a foam cushion in the wheelchair. On 8/2/05 at 1:45 PM, the surveyor observed the resident seated in a wheelchair without a foam cushion in place. When questioned immediately following the observation, the Unit Manager stated that the resident should have been seated on the foam cushion in the wheelchair.<br><br>2. Resident ID #6 has had a recent significant weight loss. A review of the resident's clinical record revealed a 7/22/05 physician's order to obtain a psychiatric consultation. There was no evidence that the psychiatric consultation was obtained. The psychiatrist made rounds in the facility on 8/2/05, but he did not see the resident. When questioned on 8/2/05 at 1:30 PM, the charge nurse produced a list of all resident's | F 282 | F282<br><br>**IMMEDIATE CORRECTIVE ACTION**<br><br>**RESIDENT # 3:** The Care Plan was updated to reflect the current status and Staff were inserviced on the plan of care. The appropriate cushion was placed in the W/C.<br><br>**RESIDENT # 6:** The Psych Consult was conducted on 8/3/05.<br><br>**RESIDENT # 14:**<br><br>The body alarm was applied. An interdisciplinary team meeting held on August 10th, to review residents safety devices and the body alarm was discontinued<br><br>**RESIDENT # 17:**<br><br>The body alarm was applied. Staff were inserviced on the Resident's plan of care.<br>**IDENTIFICATION OF OTHER RESIDENTS**<br><br>A facility wide audit was conducted to assure appropriate cushions are in place. | |

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE [signature] (X6) DATE 8/10/05

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM APPROVED
OMB NO. 0938-0391

.RTMENT OF HEALTH AND HUMAN S 'VICES
'ERS FOR MEDICARE & MEDICAID SE..VICES

| ENT OF DEFICIENCIES .N OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | R 08/03/2005 |

| OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| RRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| 282 | Continued From page 1<br>needing psychiatric consultation in 7/05 and 8/05. The resident's name was not on either list.<br><br>3. Resident ID #14 has a history of falls. A review of the resident's clinical record revealed documentation of a fall from bed on 7/8/05 and a 7/8/05 physician's order for a body alarm at all times. On 8/3/05 at 8:35 AM, the surveyor observed the resident in bed without a body alarm in place. When the surveyor questioned the CNA (Certifed Nursing Assistant) assigned to the resident immediately following the observation, she stated that the resident should have a body alarm. She checked the resident and found no body alarm in place.<br><br>4. Resident ID #17 has a history of falls. A review of the resident's clinical record revealed a current care plan specifying the use of a body alarm at all times. On 8/3/05 at 9:05 AM, the surveyor observed the resident in the dining room . The resident was attempting to rise from her chair. A CNA standing at the nurses' desk observed the resident, proceeded to assist her and called the nurse for assistance. There was no body alarm in place. | F 282 | A facility wide audit was conducted to assure all recommendations for Psych Consults were followed through.<br><br>A facility wide audit was conducted to assure all body alarms are in place as ordered.<br>**MEASURES TO PREVENT REOCCURENCE**<br><br>Nursing Staff were inserviced on new process for Shiftily Safety Checks as well as following the Resident's individual plan for chair cushions.<br><br>Licensed Nurses were inserviced on the process for follow through of a physician's order for a Psych Consult.<br><br>**MONITORING OF CORRECTIVE ACTION** | |
| F 329 SS=D | 483.25(l)(1) QUALITY OF CARE<br><br>Each resident's drug regimen must be free from unnecessary drugs. An unnecessary drug is any drug when used in excessive dose (including duplicate therapy); or for excessive duration; or without adequate monitoring; or without adequate indications for its use; or in the presence of adverse consequences which indicate the dose should be reduced or discontinued; or any combinations of the reasons above. | F 329 | Ongoing random Performance Improvement monitors are are conducted by a member of the Interdisciplinary Team to assure cushions and body alarms are in place as ordered. | |

FORM APPROVED
OMB NO. 0938-0391

ARTMENT OF HEALTH AND HUMAN ?VICES
:TERS FOR MEDICARE & MEDICAID S..:VICES

| 'MENT OF DEFICIENCIES _AN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
| --- | --- | --- | --- |
| | 415053 | A. BUILDING ______ B. WING ______ | R 08/03/2005 |

| :E OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
| --- | --- |
| :ERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| 4) .D .EFIX AG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
| --- | --- | --- | --- | --- |
| : 329 | Continued From page 2<br>This REQUIREMENT is not met as evidenced by:<br><br>Based on record review and staff interview, it was determined that the facility failed to ensure that each resident's drug regimen is free from unnecessary drugs, i.e., any drug used without adequate monitoring for 1 of 16 sample residents (ID #10).<br><br>Findings are as follows:<br><br>Resident ID #10 has diagnoses including Depression and Anxiety. A review of the clinical record revealed a 2/2/05 physician's order from the primary care physician for Risperdal 0.5 mg ( miligrams) at HS (hour of sleep) and a psychiatric consultation. A 2/8/05 psychiatrist's note documented a diagnosis of Psychotic Disorder NOS (not otherwise specified). Additionally, the psychiatrist documented that "musical hallucinations can be associated with seizures and temporal lobe pathology." His recommendations included: If symptoms continue would check EEG (Electroencephalogram) and head CT (Computerized Tomography); Continue Risperdal 0.5 mg QHS; Consider decreasing pain medications; check Blood Pressure; Audiology consult. A 2/15/05 psychiatric nurse's consult note documented that the resident was occasionally hearing noises/music and that staff was initiating treatment for impacted earwax. On 2/19/05, the treatment for impacted earwax was completed. There was no documentation regarding the impact of the treatment for earwax removal on the resident's hallucinations. There was no evidence that the resident's hallucinations were monitored from 2/15/05 through 8/3/05. There was no documentation that the continued use of Risperdal was clinically appropriate for the | F 329 | In addition, a monitor is conducted monthly by Nursing Managment to assure all recommendations for Psych consults are followed through.<br><br>The Director of Nursing and Executive Director are responsible for ongoing compliance.<br><br>**F 329**<br><br>**IMMEDIATE CORRECTIVE ACTION**<br><br>**RESIDENT # 10:** A reduction in the dose of Risperdal was initiated on 8/4/05.<br><br>**IDENTIFICATION OF OTHER RESIDENTS**<br><br>A facility wide audit was conducted to validate appropriate use of Antipsychotics. | 8/10/05 |

PRINTED: 08/05/2005
FORM APPROVED
OMB NO. 0938-0391

PARTMENT OF HEALTH AND HUMAN SERVICES
NTERS FOR MEDICARE & MEDICAID SERVICES

| EMENT OF DEFICIENCIES PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 415053 | A. BUILDING ______ B. WING ______ | R 08/03/2005 |

| E OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ERRY HILL MANOR | 2 CHERRY HILL ROAD JOHNSTON, RI 02919 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 329 | Continued From page 3<br>resident. When questioned on 8/3/05 at 8:50 AM, the charge nurse was unable to produce evidence that the target behavior (hallucinations) for the continued use of Risperdal was monitored.<br><br>"You are hereby formally notified that where the above listed deficiencies also constitute non-compliance with applicable provisions of the 'Rules and regulations for Licensing of Nursing Facilities' they are deficiencies under State Regulations and grounds for licensure sanctions." | F 329 | **MEASURES TO PREVENT REOCCURENCE**<br><br>Nursing Staff were educated on the appropriate use of Antipsychotics; and documentation requirements to support continued use of the Antipsychotic.<br><br>**MONITORING OF CORRECTIVE ACTION**<br><br>A Performance Improvement monitor is conducted at least monthly by Nursing Management, to assure appropriate documentation and use of Antipsychotics.<br><br>The Director of Nursing is responsible for ongoing compliance. | 8/10/05 |

EXHIBIT R

Life Care Centers of America
3001 Keith Street, NW/P.O. Box 3480/Cleveland, Tennessee 37320-3480/(423) 472-9585

April 27, 2005

**VIA DHL OVERNIGHT**

Marlene Toribio, Senior Compliance Officer
Rhode Island Commission for Human Rights
180 Westminster Street
Providence, RI 02903

**Re: Irene Ferruccio v. Cherry Hill Manor**
**RICHR No. 05 EAG 179; EEOC No. 16JA500107**

Dear Ms. Toribio:

This information is submitted on behalf of Cherry Hill Manor ("Cherry Hill") in response to the Rhode Island Commission for Human Rights' request for a position statement. This letter and its contents are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including but not limited to 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e). *See also* 29 C.F.R. § 1610.18. The use, dissemination, or distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons who are neither employees nor officers of the Commission, is prohibited. In this regard, should the Commission receive any requests for access to the Commission's case file in connection with this charge, we should be promptly notified of each such request.

In responding, Cherry Hill does not waive any defenses, whether substantive or procedural, that it may have to the charge, all of which are expressly reserved. Additionally, by providing information, explanation or rebuttal, Cherry Hill does not waive any objection to the admissibility, materiality or relevance of such information in this or any other proceeding. Moreover, Cherry Hill reserves the right to supplement, correct, modify or change such information if it is later determined to be incomplete, inaccurate or erroneous. Furthermore, the information set forth in this letter is privileged, since it is submitted to the investigative agency in response to its request for information.

This charge is predicated on claims of discrimination based upon age. More particularly, Irene Ferruccio alleges that she was terminated because of her age. This claim, and any other claim expressed or implied in Ms. Ferruccio's charge of discrimination, is denied. Cherry Hill's position is that there is no basis for this charge of discrimination.

## I. Background

### A. Ms. Ferruccio's Employment

Cherry Hill is a long-term care nursing facility. Ms. Ferruccio was originally hired by Cherry Hill on April 29, 2002 as a registered nurse ("RN"). On August 25, 2003 Ms. Ferruccio resigned her position to accept employment elsewhere. Ms. Ferruccio was rehired by Cherry Hill on May 4, 2004 as a unit manager.[1]

The unit manager is an administrative nursing position that requires knowledge of nursing practices and procedures as well as the laws, regulations and guidelines governing nursing functions. A unit manager is held to a higher standard than her subordinates, because she is responsible for setting the standards for quality resident care and for ensuring compliance with all state, federal and facility regulations.

As a unit manager, Ms. Ferruccio's primary duties included conducting rounds; assessing and evaluating residents; administering resident medications as ordered by the physician; reporting all discrepancies noted concerning physician's orders, diet changes, charting errors, etc.; attending management meetings; directing the day-to-day functions of the nursing assistants; completing quarterly reviews and monthly summaries; responding to requests related to running the unit; and any other duties as assigned by her supervisor. (A copy of Ms. Ferruccio's personnel file is attached as Exhibit A.) Pam Charron, director of nursing ("DON"), last supervised Ms. Ferruccio.

### B. Ms. Ferruccio's Poor Work Performance

On or about July 25, 2004, Ms. Charron became the new DON at Cherry Hill. Because of concerns related to quality of resident care at the facility, Ms. Charron immediately implemented an aggressive approach aimed at improving resident care.

On November 7, Ms. Ferruccio received a disciplinary action for failing to administer medication to four residents as documented on the medication administration record ("MAR").[2] Ms. Ferruccio was reminded to check the MAR at the end of the shift to ensure that all residents received their medication as prescribed by the physician or that there was a recorded reason why the medication was not administered. (A copy of the disciplinary action acknowledged by Ms. Ferruccio is included as part of Exhibit A.)

Ms. Ferruccio received another disciplinary action on December 13. There were several noted deficiencies regarding Ms. Ferruccio's work performance, such as (i) consistently failing to monitor the completion of nursing notes; (ii) failing to follow up on missing resident skin checks; (iii) being unable to identify concerns with residents on her unit, including being unprepared at management meetings with a lack of knowledge pertaining to resident status; and (iv) consistently displaying a

---

[1] Ms. Ferruccio was 56 when she was rehired.

[2] If for some reason the medication is not administered as ordered by the physician, the nurse is suppose to record the reason why and then circle her initials on the MAR.

negative attitude with regard to her job. (A copy of the disciplinary action acknowledged by Ms. Ferruccio is included as part of <u>Exhibit A</u>.)

Due to the serious nature of the concerns, which compromised resident care, Ms. Ferruccio was asked to prepare an action plan by December 17 to identify corrective measures for the noted deficiencies. During the counseling session Ms. Ferruccio never voiced any concerns regarding age discrimination.

Ms. Ferruccio did not submit her action plan as requested by Ms. Charron. On or about December 28, Ms. Ferruccio told Ms. Charron that she needed to take a leave of absence due to medical complications related to stress. Ms. Ferruccio requested medical leave from December 28 until January 24, 2005, which was later approved for extension until February 8.

During Ms. Ferruccio's leave of absence, the facility became aware of additional issues with her job performance, including (i) the discovery of several expired therapy orders in Ms. Ferruccio's office;[3] (ii) lack of follow up as to residents with significant weight variances, along with several resident charts with no recorded weights;[4] (iii) lack of follow up as to absence of skilled nursing notes;[5] (iv) lack of follow up as to incomplete skin checks (this issue had been previously addressed with Ms. Ferruccio); and (v) lack of follow up as to psychiatric and pharmaceutical recommendations for residents.

Thus, due to Ms. Ferruccio's poor performance and her lack of leadership skills the decision was made to terminate her employment as of February 9, 2005.

## II. <u>Law and Argument</u>

In order to prevail on her claim of age discrimination, Ms. Ferruccio—who was 56 when she was rehired by Cherry Hill—must first establish a *prima facie* case.[6] *Rivera-Aponte v. Restaurant Metropol #3, Inc.*, 338 F.3d 9, 11 (1st Cir. 2003). However, if Cherry Hill produces evidence that it had a legitimate, nondiscriminatory reason for its employment action, the *prima facie* case is defeated. *Id.*

Assuming *arguendo* that Ms. Ferruccio has established a *prima facie* case of age discrimination, she cannot prevail on her claim because Cherry Hill terminated her for a legitimate nondiscriminatory reason—her failure to adequately perform his job duties, as outlined above. For this reason Cherry Hill requests that the Rhode Island Commission for Human Rights issue a finding of "no cause" with respect to Ms. Ferruccio's charge.

[3] In other words, therapy had been recommended for several residents and Ms. Ferruccio failed to follow through.

[4] Drastic weight changes can indicate serious medical issues.

[5] Without skilled nursing notes, the facility cannot bill Medicare for certain services.

[6] Cherry Hill currently employs 120 employees who are forty or older, and 52 employees who are fifty or older.



3

Sincerely,

Alison Shaw
Corporate Legal Counsel

cc: Steven Haase, Executive Director
Carly B. Iafrate, Esq.
Irene Ferruccio